IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA,
TAMPA DIVISION

| | |
|---|---|
| Scottsdale Capital Advisors Corporation and Alpine Securities Corporation,         Plaintiffs,<br><br>v.<br><br>Financial Industry Regulatory Authority, Inc.,         Defendant,<br><br>United States of America,         Intervenor Defendant. | ) ) ) ) ) ) ) ) ) ) ) )<br><br>Case No. 8:22-cv-02347-MSS-TGW<br><br>**OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION** |

Defendant Financial Industry Regulatory Authority, Inc. ("FINRA") submits this opposition to the Motion for Preliminary Injunction filed by Plaintiff Alpine Securities Corporation ("Alpine" and, together with Scottsdale Capital Advisors Corporation, "Plaintiffs").

## I.      INTRODUCTION

Alpine's motion for a preliminary injunction seeks to prevent FINRA from carrying out its vital mission to "protect investors and the public interest."  15 U.S.C. § 78o-3(b)(6).  Its motion should be denied for several independent reasons.

First, Alpine cannot satisfy its heavy burden to "'clearly establis[h]'" a "substantial likelihood of success on the merits."  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).  As a threshold matter, this Court lacks personal jurisdiction over FINRA because there is no connection between Alpine's allegations and FINRA's Florida contacts.  Venue, which Alpine's motion entirely ignores,

also constitutes a bar to this proceeding. Finally, even if the Second Amended Complaint could survive these procedural defects, Alpine's motion would still fail because its constitutional claims are legally baseless. An unbroken line of precedent holds that FINRA is a private corporation, not a government agency subject to constitutional requirements, which is fatal to most of Alpine's claims. And Alpine's First Amendment claim fails because it does not identify any protected First Amendment associational interest.

The remaining preliminary injunction requirements confirm this result. Alpine's claims of urgency and supposed irreparable harm are overstated because it can ask the SEC to stay any sanction that FINRA issues, obviating the need for a ruling on Alpine's motion before this Court considers FINRA's pending motion to dismiss, which identified multiple, independent legal barriers to this suit. An injunction would also impair FINRA's ability to discharge its regulatory duties and undermine the public interest by halting FINRA's enforcement proceeding against Alpine—leaving Alpine free to continue inflicting the intentional and egregious investor harm that prompted FINRA to issue the cease-and-desist order that Alpine is accused of violating. The Court should permit FINRA to move forward with its critical enforcement activities to protect investors.

## II. BACKGROUND

FINRA—a not-for-profit Delaware corporation headquartered in the

2

District of Columbia, *see* SAC ¶ 31—is a registered national securities association and self-regulatory organization ("SRO") under the Securities Exchange Act. *See* D.E. 51 at 3. FINRA exercises regulatory authority over its member firms, which operate as broker-dealers in the national securities markets. *Id.*

FINRA is a private corporation. It was formed in 2007, when its predecessor, the National Association of Securities Dealers ("NASD"), consolidated its regulation and enforcement functions with the similar functions of the New York Stock Exchange. D.E. 51 at 3.[1] The government does not appoint any FINRA board members, officers, or employees. *See* SAC ¶ 58 ("FINRA's Board is selected by FINRA's members."). Nor does FINRA receive any state or federal funding; it is funded by fees charged to its members. *See id.* ¶¶ 51–52.

Alpine is a broker-dealer member of FINRA, SAC ¶ 29, and has been disciplined multiple times for violating FINRA rules. Most recently, in a March 2022 "Hearing Panel Decision," a panel of FINRA adjudicators found that Alpine engaged in "intentional and egregious" misconduct, including that Alpine "converted [*i.e.*, stole] and misused customer funds and securities, engaged in unauthorized trading," charged unreasonable fees, and "made an unauthorized capital withdrawal." Extended Hearing Panel Decision, Disciplinary Proceeding No.

---

[1] The NASD was formed in 1939 and approved by the SEC as the first national securities association. *See* 4 Fed. Reg. 3564 (Aug. 9, 1939). NYSE registered as a national securities exchange on October 1, 1934. *See Exchange Reveals Registration Data*, N.Y. Times, Oct. 2, 1934.

2019061232601, at 1, 78 (Mar. 22, 2022), bit.ly/3p9Qlw3 (attached as Exhibit A). Based on that pervasive misconduct and a "high[ ] likel[ihood]" of future violations, the panel found that "expulsion is an appropriate sanction and the only alternative for protecting the investing public." *Id.* at 78. The panel also imposed a permanent cease-and-desist order to prevent further public harm. *Id.* at 84–85.

Although the panel's expulsion order is stayed pending Alpine's appeal, its cease-and-desist order remains in force and binding on Alpine. *See* FINRA Rule 9311(b). According to FINRA's Department of Enforcement, Alpine has nevertheless violated the cease-and-desist order more than 35,000 times by charging customers millions of dollars in unreasonable, unfair, and unlawful fees and commissions. The Department of Enforcement therefore initiated the "New Alpine Proceeding" to expel Alpine from FINRA membership, halt Alpine's ongoing misconduct, and obtain restitution for Alpine's customers. The petition (omitting exhibits of fees and accounts) is attached as Exhibit B.

## III. LEGAL STANDARD

This Court may grant injunctive relief only if Alpine shows "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." *Siegel v.*

*LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (en banc).  A preliminary injunction "is an extraordinary and drastic remedy not to be granted unless the movant clearly established the burden of persuasion as to each of the four prerequisites."  *Id.* (internal quotation marks omitted).  "Failure to show any of the four factors is fatal." *ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009).

## IV.    ARGUMENT

### A.    Alpine Has No Substantial Likelihood Of Success On The Merits.

### 1.    The Court Lacks Personal Jurisdiction Over FINRA.

The first insurmountable obstacle to Alpine's success on the merits is this Court's lack of personal jurisdiction.  Alpine concedes that to justify the extraordinary relief of a preliminary injunction, it must "establish 'a reasonable probability of ultimate success upon the question of jurisdiction.'"  *SEC v. Unique Fin. Concepts, Inc.*, 196 F.3d 1195, 1198 (11th Cir. 1999); Mot. 14.  Personal jurisdiction "must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment."  *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009).  Alpine cannot satisfy those standards.

**a.**    FINRA is an out-of-state corporation that is not subject to general personal jurisdiction in Florida.  Florida's general-jurisdiction statute "extends to the limits on personal jurisdiction imposed by the" Constitution.  *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204 (11th Cir. 2015) (internal quotation marks

omitted) (citing Fla. Stat. § 48.193(2)).  And the Constitution permits general juris-diction only where a defendant's contacts with the forum State "are so 'continuous and systematic' as to render [it] essentially at home" there.  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (citation omitted).  For a corporation like FINRA, the "par-adigm" forums are its "formal place of incorporation" and "principal place of busi-ness," *id.* at 137, 139 n.19—neither of which is in Florida.  Rather, "FINRA is a Delaware corporation with its principal place of business in Washington, D.C." *Webb v. FINRA*, 889 F.3d 853, 856 (7th Cir. 2018); *accord* SAC ¶ 31.

Only in an "exceptional case" could a corporation like FINRA be deemed "'essentially at home'" where it is not incorporated or headquartered.  *Daimler*, 571 U.S. at 139 & n.19.  Here, Alpine cannot meet its "heavy burden of establishing such an exceptional case" by showing, for example, that FINRA's "leadership was based in Florida or that the company otherwise directed its operations from Flor-ida." *Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1317–18 (11th Cir. 2018).

Alpine merely alleges that "FINRA maintains offices and conducts business throughout the United States," including "one" regional office in Florida.  SAC ¶¶ 19, 31; *see also id.* ¶¶ 15–26; Mot. 16.  Those allegations are insufficient because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 571 U.S. at 139 n.20.

**b.**    FINRA is also not subject to specific personal jurisdiction because

Alpine's claims have no connection to FINRA's alleged contacts with Florida.

*First*, Alpine alleges no facts bringing FINRA within Florida's specific-jurisdiction statute. Alleging that FINRA maintains "an office" in Florida, SAC ¶ 15, Alpine invokes Fla. Stat. § 48.193(1)(a)(1), covering claims "arising from . . . having an office or agency in this state." *See* Mot. 15–16. But under Florida law, "although the term 'arising from' is broad, it nevertheless requires a 'direct affiliation,' 'nexus,' or 'substantial connection' to exist between the basis for the cause of action and the business activity." *Melgarejo v. Pycsa Panama, S.A.*, 537 F. App'x 852, 860 (11th Cir. 2013) (some internal quotation marks omitted).

Accordingly, the mere "presence and operation of an office in Florida" is "not dispositive" of whether the statute applies. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir. 2005). There still must be a connection between a plaintiff's claims and a defendant's Florida office.[2]

Here, Alpine alleges *no* connection between its claims and FINRA's Florida office. In fact, Alpine alleges that its claims are "collateral to" *any* specific FINRA action. SAC ¶ 33. That includes the New Alpine Proceeding, which Alpine does not allege as being conducted in Florida and admits has no connection to Florida.

---

[2] *See, e.g.*, *Interlink Grp. Pro. Servs., Inc. v. ClearOne, Inc.*, No. 16-cv-24338, 2017 WL 10187646, at *4 (S.D. Fla. Oct. 11, 2017) ("[N]o one from that [Florida] office has had contact with Plaintiff, thereby making it immaterial to the analysis."), *report and recommendation adopted*, 2017 WL 10187641 (S.D. Fla. Nov. 17, 2017); *Scharrer v. Fundamental Admin. Servs., LLC*, No. 8:12-cv-1854, 2013 WL 12169308, at *4 (M.D. Fla. Sept. 10, 2013) (Scriven, J.) ("[T]he contacts that [the defendant allegedly] made with Florida . . . are not related to Plaintiffs' claim in this case").

*Id.* ¶ 13; *see id.* ¶¶ 7–11, 126–135. Because nothing that FINRA allegedly did in Florida "had anything to do with" Alpine's claims, FINRA is not subject to specific jurisdiction under Florida's long-arm statute. *Melgarejo*, 537 F. App'x at 861.

*Second*, even if Alpine could satisfy the long-arm statute, it still would not meet the "separate" and "'more restrictive requirement'" of constitutional due process, *Melgarejo*, 537 F. App'x at 859–60 (citation omitted), including the require-ment that "the plaintiff's claims 'arise out of or relate to' one of the defendant's contacts within the forum state." *Tufts v. Hay*, 977 F.3d 1204, 1211 (11th Cir. 2020) (citation omitted). Because Alpine's claims have nothing to do with FINRA's al-leged Florida contacts, Alpine "fail[s] to establish that [its] claims arise out of or relate to [FINRA's] contacts in Florida." *Waite*, 901 F.3d at 1313.[3]

Nor would exercising jurisdiction comport with fair play and substantial justice. "The burden on [FINRA] of defending this suit in Florida would be more than minimal"; "Florida has little interest in adjudicating this action because no party resides" here; and "suing in Florida is not convenient for" (non-resident) Plaintiffs either. *Madara v. Hall*, 916 F.2d 1510, 1519 (11th Cir. 1990).

**c.** Alpine's counterarguments fail. Mot. 14–16. First, Alpine argues that personal jurisdiction is appropriate under Section 27 of the Exchange Act, 15

---

[3] That one Plaintiff (Scottsdale) is alleged to have a branch office in Florida (SAC ¶ 28) is consti-tutionally irrelevant because "'minimum contacts' analysis looks to *the defendant's contacts* with the forum State itself, not the defendant's contacts with persons who reside there" or otherwise have contacts there. *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (emphasis added).

U.S.C. § 78aa, which addresses jurisdiction in suits to "enforce" a "liability or duty" under the Act or its implementing regulations—*i.e.*, suits that "'aris[e] under' the Exchange Act," *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 578 U.S. 374, 380 (2016). Alpine, however, alleges only "constitutional violations." SAC ¶ 33. Thus, none of Alpine's claims "rises or falls on [its] ability to prove the violation of" a duty imposed by the Exchange Act or associated regulations. *Manning*, 578 U.S. at 383. This case is therefore unlike *Turbeville v. FINRA*, 874 F.3d 1268 (11th Cir. 2017), where the plaintiffs sued FINRA "for violating [its] internal rules," which required the court to "interpret FINRA's internal rules to determine whether FINRA's conduct . . . complied with those rules," *id.* at 1275; *see* Mot. 15.

Under these circumstances, "it is clear that § 27 of the [Exchange] Act does not provide a basis for personal jurisdiction." *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180, 182 (1979). Moreover, even if Section 27 were relevant, it could not expand the constitutional limits on this Court's personal jurisdiction, which preclude personal jurisdiction over FINRA in this case. *See supra* Section IV.A.1.b.

Alpine's reliance on 28 U.S.C. § 1391(e)(2)—which it describes as "provid[ing] for nationwide service of process for claims against an agency of the United States," Mot. 15—is equally misplaced because, as addressed further below and as Alpine concedes, "FINRA is a Delaware not-for-profit corporation," not a government agency. SAC ¶ 31; *see also infra* Section IV.A.3.

Finally, Alpine emphasizes that its claims concern FINRA's alleged "unconstitutional operation and structure, including operations that occur in" Florida. Mot. 16. To establish personal jurisdiction, however, "the defendant's *suit-related* conduct must create a substantial connection with the forum State," *Walden*, 571 U.S. at 284 (emphasis added)—free-floating allegations of unconstitutional conduct by the defendant are not sufficient. And, as discussed, FINRA's alleged Florida "operations" are irrelevant for jurisdictional purposes because Alpine does not contend that FINRA has directed any of its Florida activities toward Alpine. The two cases that Alpine cites here did not even involve constitutional claims and thus do not support any special jurisdictional rule for such cases.[4]

### 2.    Venue Is Improper In This District.

Alpine's claims also fail for another, threshold reason that is unaddressed in its motion: improper venue under Rule 12(b)(3). Under the venue statute, this action should have been brought (if at all) in a judicial district where FINRA resides, 28 U.S.C. § 1391(b)(1), which is where FINRA is subject to personal jurisdiction, *id.* § 1391(c)(2). Because this Court lacks personal jurisdiction over FINRA, *see supra* Section IV.A.1, venue is improper here as well.[5]

---

[4] *See Del Valle v. Trivago GMBH*, 56 F.4th 1265 (11th Cir. 2022) (claims under the Helms-Burton Act); *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021) (product-liability claims).

[5] Even if FINRA were subject to personal jurisdiction in Florida based on its Florida office, venue would only be proper in the Southern District of Florida, where FINRA's Southeast Regional Office is located. *See* SAC ¶ 19; FINRA, Southeast Regional Office Guide, bit.ly/3yc2PV6. The Southern District of Florida would be the only "district in th[e] State within which [FINRA's]

10

In the Second Amended Complaint, Alpine alternatively seeks to establish venue under 28 U.S.C. § 1391(e).  SAC ¶ 27.  But that provision is inapplicable because it governs "[a]ctions where [a] defendant is . . . an agency of the United States."  28 U.S.C. § 1391(e)(1).  FINRA is not an agency of the United States.  *See infra* Section IV.A.3.  But even if Section 1391(e) applied to FINRA, it would not establish venue in this district.  Section 1391(e) allows venue for suits against the government only where (A) a defendant resides, (B) the events underlying the claim occurred, or (C) the plaintiff resides.  None of those conditions is satisfied.

### 3.     Alpine Fails To State A Plausible Claim For Relief.

Even if this case were properly before the Court, Alpine would still be unable to show likelihood of success because its claims fail as a matter of law.

**a.**     Alpine's claims under the separation of powers, Appointments Clause, and Fifth and Seventh Amendments fail at the outset because FINRA is a private company, not a government actor subject to constitutional scrutiny.  *Contra* Mot. 6–14.[6]  Courts nationwide have uniformly rejected similar attempts to treat FINRA and its predecessor the NASD as government actors in a variety of constitutional challenges.  *E.g.*, *Desiderio v. NASD, Inc.*, 191 F.3d 198, 206–07 (2d Cir. 1999) ("The NASD is a private actor, not a state actor."); *see also* D.E. 51 at 16–17.

---

contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State" and thus the only district in which venue would be proper.  28 U.S.C. § 1391(d).

[6] Alpine has waived its nondelegation claim for purposes of this motion, *see* SAC ¶¶ 158–161, by failing to mention it.  Regardless, that claim also fails.  *See* D.E. 51 at 21–23.

Alpine's allegations do not meet the stringent criteria for treating FINRA, a private company, as a government actor. In *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995), the Supreme Court recognized a narrow, exceptional category of corporations—in that case, Amtrak—that constitute government actors because the corporation was "create[d]" by the government "for the furtherance of governmental objectives" and the government "retains for itself permanent authority to appoint a majority of the directors of that corporation." *Id.* at 400.

That exception does not apply to FINRA. Alpine concedes that *Lebron* supplies the "well established" governing standard, Mot. 7, but does not allege that FINRA possesses any of the unusual characteristics that made Amtrak a state actor. Nor could it. FINRA was not created by the government, *see* D.E. 51 at 3; its board of directors is not government-appointed, *see* SAC ¶ 58; and FINRA is not funded or otherwise controlled by the government, *see id.* ¶¶ 51–52; *Desiderio*, 191 F.3d at 206–07. Thus, "*Lebron* is clearly distinguishable" because there "is no commonality between [FINRA] and Amtrak." *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 138 (2d Cir. 2002) (discussing the NASD).

The Supreme Court recognized FINRA's private status in *Free Enterprise Fund v. Public Company Accounting Oversight Board*, 561 U.S. 477 (2010), contrasting "private self-regulatory organizations" like FINRA with the PCAOB, which was "'part of the Government'" because, "*[u]nlike the self-regulatory organizations, . . .*

12

the [PCAOB] is a Government-created, Government-appointed entity." *Id.* at 484–86 (emphasis added).  Alpine can cite no case departing from that consensus.

Alpine argues that the Tenth Circuit held otherwise in *Rooms v. SEC*, 444 F.3d 1208 (10th Cir. 2006), but that is wrong.  *Contra* Mot. 6 n.6, 12 n.13.  The issue in *Rooms* was whether "*the SEC* violated [the plaintiff's] due process rights"—not FINRA.  444 F.3d at 1210 (emphasis added).  The court's passing reference to "[d]ue process," *id.* at 1214, was at most dicta, as the First Circuit concluded in *Cody v. SEC*, 693 F.3d 251, 257 n.2 (1st Cir. 2012).  A more recent Tenth Circuit opinion confirms that *Rooms* did not decide the state-actor issue.  *See McCune v. SEC*, 672 F. App'x 865, 870 (10th Cir. 2016) (declining to "resolve whether constitutional mandates apply" to FINRA).  This subsequent authority also makes clear that the Eleventh Circuit's unpublished opinion in *Busacca v. SEC*, 449 F. App'x 886 (11th Cir. 2011) (per curiam), spoke imprecisely when, in passing, it described *Rooms* as reaching a "conflicting holding[ ] on this question" from the Second Circuit (a question *Busacca* itself did not decide, making this dicta).  *Id.* at 890–91.

Alpine also questions the uniform body of cases upholding FINRA's structure because the cases supposedly "predate[ ] critical changes in FINRA's role." Mot. 12; SAC ¶ 76.  But Alpine does not cite a single amendment to the Exchange Act altering the fundamental features that have led courts unanimously to conclude that FINRA is not a state actor:  It is privately created, privately funded, and

13

governed by a privately appointed board.  S*ee* D.E. 51 at 19–20.

Nor is FINRA sufficiently "entwined" with the government for its activities to be treated as state action.  *Contra* Mot. 7.  Private conduct may be deemed state action where the government is "pervasive[ly] entwin[ed]" with a private entity's "composition and workings."  *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001).  But FINRA bears no resemblance to the "nominally private" school athletic association in *Brentwood.*  The Supreme Court emphasized that (1) 84% of the association's membership comprised public schools represented by public officials acting in their official capacities, (2) state board of education members served on the association's board, and (3) the association's employees were eligible for the state's retirement system.  *See id.* at 299–300.

By contrast, FINRA's personnel are private employees hired, employed, and paid by a private entity.  *See* Mot. 20; SAC ¶¶ 90, 106.  And public officials have no involvement in or control over FINRA's board of directors.  *See* SAC ¶ 58.  That makes this case more like the pre-*Brentwood* case on which Alpine principally relies, Mot. 7, 8, 10, where the Eleventh Circuit held that foster parents were *not* sufficiently "'intertwined'" with the government to qualify for the "'rare circumstances'" sufficient to make a private party a state actor — even though the government regulated foster parenting and "arguably ha[d] a symbiotic relationship" with the parents, *Rayburn v. Hogue*, 241 F.3d 1341, 1347–48 (11th Cir. 2001).

That decision also confirms that FINRA's private, nongovernmental status is not altered by FINRA's entitlement to absolute immunity when it is performing regulatory functions. *Contra* Mot. 13–14. The foster parents in *Rayburn* also received immunity under state law, but the Eleventh Circuit concluded that "extending governmental tort liability and immunity rules to foster parents does not transform [them] into State actors" and is too "nebulous" a connection to establish state action. 241 F.3d at 1348–49. Indeed, the standard for affording regulatory immunity—which turns on "whether [the] specific [challenged] acts and forbearances were incident to the exercise of regulatory power," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 98 (2d Cir. 2007)—is entirely different from the standard for determining whether a private entity should be deemed a state actor. *See* D.E. 51 at 20 n.9.

Nor can the Fifth Circuit's dicta in *Intercontinental Industries, Inc. v. American Stock Exchange*, 452 F.2d 935 (5th Cir. 1971), bear the weight Alpine places on it, Mot. 11–12. In *Intercontinental Industries*, the court declined to decide whether the Due Process Clause applied to an exchange's delisting proceedings because the court concluded that, either way, the exchange had afforded the delisted company due process. *See* 452 F.2d at 940–41 ("rather than decide those points here, we merely make it clear that our decision does not cast our imprimatur on these arguments"). Thus, the court's suggestion that the exchange's "intimate involvement" with the SEC warranted constitutional scrutiny is dicta. *Id.* at 941 (citing

*Burton v. Wilmington Parking Auth.*, 365 U.S. 715 (1961)).  That dicta, moreover, has been undercut by subsequent Supreme Court precedent that "refined" and curtailed "the vague" state-action test on which *Intercontinental Industries*' dicta relied. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 57–58 (1999) (citing *Burton*).

In sum, endorsing Alpine's attempt to treat FINRA as a state actor would be contrary to law, subject broad swaths of private enterprise to constitutional constraints, and "thwart Congress's repeated determination to retain the system of private self-regulation" for the securities industry.  SEC Br. 41, *All. for Fair Bd. Recruitment v. SEC*, No. 21-60626, 2022 WL 585351, at *42 (5th Cir. Feb. 18, 2022).

**b.**      Alpine's First Amendment claim targeting the requirement that broker-dealers join a national securities association, *see* 15 U.S.C. §§ 78o(a)(1), (b)(1), fails because it identifies no constitutionally protected associational interest.

No precedent supports a First Amendment right for broker-dealers "not to associate" with FINRA when practicing their chosen profession—a theory that falls well outside the two recognized types of freedom-of-association claims.  *Contra* Mot. 21.  First, Alpine does not allege that the business operations of broker-dealers constitute "'intimate human relationships'" protected by the First Amendment.  *Dallas v. Stranglin*, 490 U.S. 19, 24 (1989).  Second, Alpine does not allege any burden on "the sort of expressive association that the First Amendment has been held to protect," such as "'the exercise of religion.'"  *Id.*

16

Instead, Alpine repackages its criticisms of FINRA's structure and enforcement operations—objecting to FINRA's "enforcement staff" and administrative "tribunals." Mot. 23. But the First Amendment does not guarantee broker-dealers or other professionals the right to refrain from joining mandatory professional organizations that pay salaries or employ enforcement procedures with which they may disagree. Nor does Alpine's allegation that FINRA's employee compensation payments are "unrelated" or not "germane to FINRA's stated purpose" implicate the First Amendment. Mot. 21; SAC ¶ 167. In *Keller v. State Bar of California*, 496 U.S. 1 (1990), the Supreme Court held that a state bar may "constitutionally fund activities germane" to the organization's goals from mandatory dues, but may not "fund activities *of an ideological nature* which fall outside of those areas of activity." *Id.* at 13–14 (emphasis added). Alpine does not allege that FINRA uses membership fees to fund ideological activities, which distinguishes the only two First Amendment cases it cites. *See Romero v. Colegio De Abogados De Puerto Rico*, 204 F.3d 291, 293 (1st Cir. 2000) ("ideological" objections); *Mulhall v. UNITE HERE Loc. 355*, 618 F.3d 1279, 1285 (11th Cir. 2010) (objections to "political campaign").

**B.    The Remaining Requirements Weigh Heavily Against An Injunction.**

Where, as here, the "movant is unable to show a substantial likelihood of success on the merits, the court need not consider the other preliminary injunction requirements." *Indigo Room, Inc. v. City of Fort Myers*, 710 F.3d 1294, 1299 (11th Cir.

2013) (citing *Bloedorn v. Grube*, 631 F.3d 1218, 1229 (11th Cir. 2011)).  Nevertheless, the other requirements confirm that Alpine's motion should be denied.

### 1.      Alpine Has Not Shown Irreparable Harm.

Alpine fails to demonstrate that it would suffer irreparable harm absent an injunction.  Of course, if the Court rejects Alpine's constitutional arguments, then its claim of irreparable constitutional harm from being subjected to an ongoing FINRA disciplinary proceeding would necessarily fail.

But even if the Court finds the constitutional question to be a close one, Alpine's claim of urgency and imminent irreparable harm from the upcoming May 31 FINRA hearing would still be overstated.  In particular, Alpine is incorrect that the hearing officer's decision will become "*immediately* effective without any review." Mot. 21.  Before issuing a decision in an expedited proceeding like the New Alpine Proceeding, the hearing officer must present the decision to the Review Subcommittee of FINRA's National Adjudicatory Council ("NAC").  *See* FINRA Rule 9559(o)(2).  The NAC's Review Subcommittee decides whether to call for review of the proposed decision, or to decline review, in which case the hearing officer issues the decision. *See* FINRA Rule 9559(o)(2), (q).  Moreover, Alpine has the right to appeal any adverse decision to the SEC and seek an immediate stay. *See* FINRA Rule 9559(r); SEC Rules of Practice 17 C.F.R. § 201.401(d).

Accordingly, prior to the FINRA hearing—or, at a minimum, before the

effective date of any ruling by the hearing officer—this Court will have the opportunity to rule on FINRA's pending motion to dismiss, which will be fully ripe for decision after Plaintiffs file their opposition on May 26 (or earlier, if they choose or this Court orders). That motion presents multiple independent grounds to dismiss Plaintiffs' case and, if granted, would moot Alpine's request for injunctive relief. Courts rejecting prior challenges filed against FINRA by Plaintiffs and affiliated businesses have ruled on FINRA's motion to dismiss in lieu of a pending motion for a preliminary injunction. For example, in *Alpine Securities Corp. v. FINRA*, the district court granted FINRA's motion to dismiss while Alpine's motion for a preliminary injunction was pending. *See Alpine Sec. Corp. v. FINRA*, No. 2:20-cv-794, 2021 WL 4060943 (D. Utah Sept. 7, 2021); Docket Text Order, D.E. 47, No. 2:20-cv-794 (D. Utah Sep. 7, 2021) ("denying as moot" preliminary-injunction motion).[7] Considerations of judicial economy weigh in favor of the same course here.

### 2.  The Equities And Public Interest Favor FINRA.

The balance of equities and strong public-interest considerations further weigh against injunctive relief. The Exchange Act requires FINRA "to protect investors and the public interest." 15 U.S.C. § 78o-3(b)(6). FINRA issued the cease-and-desist order at issue in the New Alpine Proceeding—which Alpine is accused

---

[7] *See also* Hearing Tr., D.E. 27 at 3, *Scottsdale Cap. Advisors Corp. v. FINRA*, No. 16-cv-860 (D. Md. Apr. 26, 2016) (combined hearing on Scottsdale's preliminary-injunction motion and FINRA's motion to dismiss); Order, D.E. 24, *Scottsdale Cap. Advisors Corp. v. FINRA*, No. 16-cv-860 (D. Md. Apr. 26, 2016) (granting FINRA's motion to dismiss the same day).

of violating *35,000 times*, and continuing to violate on an ongoing basis, by charging its customers exorbitant fees and commissions—for the specific purpose of protecting the public from Alpine's pernicious conduct. *See supra* Section II. A preliminary injunction would impair FINRA's pursuit of its regulatory mandate and undermine the public interest by barring FINRA from enforcing the terms of the cease-and-desist order and facilitating Alpine's continued assessment of unreasonable and unfair fees and commissions. That outcome is impossible to reconcile with the equitable principles that inform this Court's consideration of requests for injunctive relief.

## V. CONCLUSION

The Court should deny Alpine's Motion for Preliminary Injunction.

Dated: May 15, 2023

Respectfully submitted,

/s *Amir C. Tayrani*

Amir C. Tayrani (*pro hac vice*)
Ryan C. Stewart, FL Bar No. 1024100
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
T: (202) 887-3692
F: (202) 530-9645
ATayrani@gibsondunn.com
RStewart@gibsondunn.com

*Attorneys for Defendant Financial Industry Regulatory Authority, Inc.*

## CERTIFICATE OF SERVICE

I CERTIFY that a true and correct copy of the foregoing was furnished to all counsel via filing with this Court's CM/ECF system on May 15, 2023.

/s Amir C. Tayrani
Amir C. Tayrani (*pro hac vice*)