UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


SCOTTSDALE CAPITAL ADVISORS
CORPORATION and ALPINE
SECURITIES CORPORATION,

    Plaintiffs,

v.                                **Case No: 8: 22-cv-2347-MSS-TGW**

FINANCIAL INDUSTRY
REGULATORY AUTHORITY, INC.

    Defendant,

UNITED STATES OF AMERICA,

    Defendant-Intervenor

_____

<u>ORDER</u>

**THIS CAUSE** comes before the Court for consideration of Plaintiff Alpine Securities Corporation's ("Alpine") Emergency Motion for Preliminary Injunction ("Motion"), (Dkt. 45), the Response in Opposition thereto filed by Defendant Financial Industry Regulatory Authority, Inc. ("FINRA") (Dkt. 53), and the Reply to the Response in Opposition filed by Plaintiff Alpine. (Dkt. 59) On May 22, 2023, the Court held a hearing on the Motion. Upon consideration of the arguments made at the hearing, all relevant filings, case law, and being otherwise fully advised, the Court

hereby **TRANSFERS** this matter to the United States District Court for the District of Columbia.

## I.    BACKGROUND

Plaintiff Alpine is a broker-dealer. (Dkt. 43 at ¶ 28) Alpine's principal office is in Salt Lake City, Utah. (Id.) Alpine is also a registered member of and is regulated by Defendant FINRA. (Id.) Co-Plaintiff Scottsdale Capital Advisors ("SCA") is also a broker-dealer with its principal office in Scottsdale, AZ, and an office in the Middle District of Florida. (Dkt. 43 at ¶ 28) SCA is a registered member of and is regulated by FINRA. [1] (Id.) FINRA is a national securities association registered with the Securities Exchange Commission ("SEC") pursuant to Section 27 of the Securities Exchange Act. ("Exchange Act") (Id. at ¶ 30); see 15 U.S.C. § 78s. FINRA is a Delaware not-for-profit corporation with its principal place of business in Washington, D.C. (Id. at ¶ 31) FINRA is authorized under the Exchange Act to enforce provisions of the Exchange Act, the SEC's rules and regulations, and its own rules. (Id.) FINRA maintains offices and conducts business throughout the United States, including in the State of Florida. (Id. at ¶ 31)

On October 12, 2022, Plaintiffs Alpine and SCA filed a Complaint against FINRA, alleging that the structure and operation of FINRA violated the Constitution. (Dkt. 1) Thereafter, Plaintiffs filed an Amended Complaint on February 3, 2023, in response to Defendant FINRA's Motion to Dismiss. (Dkt. 27) On April 28, 2023, the

---

[1] Unlike Alpine, SCA is not seeking a preliminary injunction against FINRA.

Court granted Plaintiffs leave to file a Second Amended Complaint in light of a recent Supreme Court decision, Axon Enterprise Inc. v. FTC, 143 S. Ct. 890 (2023), which Plaintiffs alleged made it clear that this Court, a district court, had subject matter jurisdiction to hear their constitutional claims against FINRA. (Dkt. 43 at 4)

In the Second Amended Complaint, Plaintiffs reiterate their challenge to the constitutionality of FINRA and seek a declaration from the Court to "check FINRA's powers." (Dkt. 43) Specifically, Plaintiffs allege that FINRA claims to be a private corporation and self-regulatory organization ("SRO"), not subject to the limits of the Constitution, but it nevertheless wields massive governmental power and authority over the securities broker-dealer industry and the financial markets. (Id. at 1) Plaintiffs allege that FINRA's operation and its implementation of responsibilities delegated to it by the SEC and the Maloney Act violate the separation of powers; FINRA's hierarchy and its use of in-house tribunals violate the Appointments Clause; FINRA no longer functions as a "self" regulatory organization because it is no longer controlled by members of the industry; FINRA is a state actor but fails to adhere to the constitutional principles of due process and right to a trial by jury; and FINRA's mandatory membership requirement violates the First Amendment rights of broker-dealers who do not want to associate with FINRA, but are nonetheless compelled to do so. (Id. at 10-26)

Plaintiffs also contend that the unconstitutional hierarchy and structure of FINRA have harmed their members and investors, including Plaintiffs. (Id. at 26-27) Plaintiffs further complain that FINRA has unfairly targeted entities like them because

they operate in the microcap market industry. (Id.) Finally, Plaintiffs argue that because "[t]he claims asserted in this case challenge the constitutionality of FINRA's structure and operations," Plaintiffs' claims are "collateral to any administrative proceeding involving Plaintiffs, any administrative review process, and the administrative review structure set forth in Section 15A of the Exchange Act." (Id. at 7) According to Plaintiffs, "[t]he claims asserting constitutional violations are beyond the expertise of FINRA and are appropriately before this Court." (Id.)

## II.    MOTION FOR PRELIMINARY INJUNCTION

On May 22, 2023, the Court held a hearing on Alpine's Emergency Motion for Preliminary Injunction. By way of background, in March 2022, FINRA issued a decision expelling Alpine from the securities industry after it alleged Alpine engaged in conduct that harmed its customers and/or investors. (See Dkt. 53-1) Alpine appealed that decision to FINRA's appellate tribunal, the National Adjudicatory Council ("NAC"). The appeal is still pending. FINRA's March 2022 decision also issued a permanent cease and desist order against Alpine, which ordered Alpine to cease from engaging in the activity that led to its expulsion from the industry. (See Dkt. 53-1) On April 19, 2023, five days after Axon was decided, FINRA filed an Expedited Proceeding against Alpine, alleging Alpine had repeatedly violated the permanent cease and desist order.[2] (Dkt. 53-2) The Expedited Proceeding is scheduled

---

[2] While an appeal to NAC operates as a stay of FINRA's initial decision until NAC issues a final decision, "any such appeal . . . will not stay a decision, or that part of a decision, that imposes a permanent cease and desist order." FINRA Rule 9311(b).

for May 31, 2023. (Dkt. 45 at 2) If successful in that Expedited Proceeding, FINRA would essentially sidestep the NAC appeal and terminate Plaintiffs from membership in FINRA, rendering them ineligible to continue to operate in the securities field. While an appeal from the Expedited Proceeding is theoretically possible and could be requested, FINRA has acknowledged that there is no statutory or regulatory authority for automatically staying the effect of the expedited process. As such, Alpine seeks a preliminary injunction to prevent FINRA from conducting the Expedited Proceeding while the Court considers the constitutional claims raised against FINRA in the Second Amended Complaint. (See Dkt. 43)

## III.    DISCUSSION

It is well established that a preliminary injunction is an "extraordinary and drastic" equitable remedy that will only be granted if the moving party clearly shows that "(1) it has a substantial likelihood of success on the merits; (2) irreparable injury will be suffered unless the injunction issues; (3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) if issued, the injunction would not be adverse to the public interest." ACLU of Fla., Inc. v. Miami-Dade County Sch. Bd., 557 F. 3d 1177, 1198 (11th Cir. 2009).

In its Motion for Preliminary Injunction, Alpine asserts that it has satisfied each prong for injunctive relief. First, Alpine contends that it has a substantial likelihood of success on the merits of its claims. Second, Alpine argues that it will suffer irreparable harm absent an injunction because it could face immediate expulsion from the industry and would be "subject to an unconstitutional administrative proceeding administered

by an unconstitutional administrative agency." (Id. at 23-24) Third, according to Alpine, FINRA will not suffer harm if an injunction is issued, and the public interest favors injunctive relief. (Id. at 24-25) FINRA also requests that the bond requirement be waived "given the constitutional rights at issue and the unique circumstances of this case." (Id. at 25)

In opposition, FINRA primarily addresses this Court's personal jurisdiction over FINRA. First, FINRA contends that the Court "lacks [specific] personal jurisdiction over FINRA [under Florida's long-arm statute] because there is no connection between Alpine's allegations and FINRA's Florida contacts." (Dkt. 53 at 1, 6-8) Concerning general personal jurisdiction under Florida's long-arm statute, FINRA contends that it is not subject to general personal jurisdiction in Florida because it is a Delaware corporation with its principal place of business in Washington, D.C. (Id. at 5-6) FINRA also argues that Alpine cannot establish that this Court has personal jurisdiction over it under 15 U.S.C. § 78aa because Alpine has not alleged any violations of the Exchange Act; rather, Alpine has only alleged constitutional violations. (Id. at 8-9) FINRA further contends that this Court cannot establish personal jurisdiction over it pursuant to 28 U.S.C. § 1391(e)(2) because FINRA is not "an agency of the United States." (Id. at 9)

Second, FINRA asserts that venue is improper in the Middle District of Florida because, "[u]nder the venue statute, this action should have been brought (if at all) in a judicial district where FINRA resides, 28 U.S.C. § 1391(b)(1), which is where FINRA is subject to personal jurisdiction, id. § 1391(c)(2)." FINRA further argues that

6

venue cannot be established under 28 U.S.C. § 1391(e)(1) because FINRA "is not an agency of the United States." (Id. at 11)

Third, concerning Alpine's constitutional claims, FINRA argues that all of Alpine's claims fail as a matter of law because FINRA is not a state/government actor subject to the limits of the Constitution. (Id. at 11-16)

Fourth, FINRA contends that Alpine's First Amendment claim, which FINRA believes is premised on the statutory requirement that broker-dealers are required to join a national securities association, fails "because [Alpine] identifies no constitutionally protected associational interest." (Id. at 16-17)

Fifth, FINRA argues that Alpine cannot demonstrate irreparable harm because FINRA's review process contemplates the ability of an aggrieved individual "to appeal any adverse decision to the SEC and seek an immediate stay." (Id. at 18)

Finally, FINRA contends that the equities and public interest favor FINRA because FINRA has a statutory duty to protect investors and the public interest. (Id. at 19-20)

In reply, Alpine argues, in somewhat of an about-face, that the exercise of personal jurisdiction over FINRA is proper because this case "arises under" the Exchange Act as it is both a suit "to enforce any liability or duty" created by the Exchange Act, and the rules and regulations thereunder, and a suit "to enjoin any violation" of the Exchange Act. (Id. at 3) (citing 15 U.S.C. § 78aa(a)) Furthermore, Alpine argues that its claims against FINRA "require the resolution of substantial issues under the Exchange Act." (Id. at 3) Alpine asserts that because FINRA cannot

7

demonstrate that litigation in this Court would be "gravely difficult and inconvenient," any due process concerns are satisfied, and this Court should exercise personal jurisdiction over FINRA pursuant to the Exchange Act. (Id. at 6) (citation omitted) Second, Alpine reasserts that jurisdiction is proper over FINRA pursuant to 28 U.S.C. § 1391(e)(2) because FINRA *is* a state actor, and thus, "an agency of the United States." (Id. at 7) Third, with respect to specific jurisdiction under Florida's long-arm statute, Alpine contends that "there is no requirement that a defendant's forum conduct directly give rise to a plaintiff's claims for specific jurisdiction to attach." (Id. at 8) (citation omitted) Instead, according to Alpine, "the focus is on the relationship among the defendant, the forum, and the litigation." (Id.) (citation omitted) Because FINRA has continuous and significant "unconstitutional" business activities that are directed from and that occur in Florida, Alpine asserts this Court may exercise specific jurisdiction over FINRA as it relates to Alpine's claims against it. (Id.) Fourth, Alpine reiterates that general jurisdiction over FINRA is proper, pursuant to Florida's long-arm statute, because FINRA is "essentially at home" in Florida. (Id. at 12-13)

Fifth, Alpine contends that venue over FINRA can be established under both the Exchange Act and 28 U.S.C. § 1391(e). Sixth, Alpine argues that if the Court finds that it lacks jurisdiction over FINRA, the action should be transferred to the District of Columbia in the interest of justice. (Id. at 14) Finally, Alpine argues that its claims of immediate, irreparable harm are not overstated because there is no certainty that the SEC will grant a stay in the event of an adverse ruling from the Expedited

Proceeding. (Id. at 15) In the interim, Alpine claims its business would be forced to shut down and it will suffer irreparable injury. (Id.)

Before the Court can issue a preliminary injunction, it must find that the exercise of in personam jurisdiction over a defendant is appropriate. See JB Oxford Holdings, Inc. v. Net Trade, Inc., 76 F. Supp. 2d 1363, 1364 (S.D. Fla. 1999). ("Since it is axiomatic that a court cannot act without jurisdiction, see Posner v. Essex Ins. Co., Ltd., 178 F.3d 1209, 1214 n. 6 (11th Cir.1999) (citing Read v. Ulmer, 308 F.2d 915, 917 (5th Cir.1962)), the court must first address the jurisdictional dispute").

As described above, Alpine asserts four bases for this Court to exercise personal jurisdiction over FINRA, including: (1) 15 U.S.C. § 78aa, (2) 28 U.S.C. § 1391(e), (3) Florida's long-arm statute under general jurisdiction and (4) Florida's long-arm statute under specific jurisdiction. (See Dkt. 45 at 14-17; Dkt. 59 at 1-13) The Court considers each of these bases in turn.

First, the Court finds that Alpine's claims do not arise under Section 27 of the Exchange Act, 15 U.S.C. § 78aa. Rather, by its own admission and by reference to the Second Amended Complaint, Alpine's claims are constitutional claims against the structure and operation of FINRA, collateral to any claims it seeks to bring against FINRA under the Exchange Act. (See Dkts. 43, 45) To the extent Alpine contends in its reply, (see Dkt. 59 at 3-6), and at argument before the Court, that it is raising claims under the Exchange Act, the Court finds those arguments unavailing. Because the district court has no subject matter jurisdiction to hear claims arising under the

9

Exchange Act, see Axon Enterprise v. FTC, 143 S. Ct. 890 (2023)[3], the Court need not address whether the Exchange Act confers personal jurisdiction over FINRA.

Second, Alpine has failed to establish the existence of general personal jurisdiction under Florida's long-arm statute. The Court finds that FINRA is not "at home" in the state of Florida. See Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 924 (2011). FINRA is incorporated in Delaware and headquartered in Washington, D.C. and FINRA's presence in Florida does not constitute an "exceptional case" that can permit this Court to exercise general personal jurisdiction over it. See Waite v. All Acquisition Corp., 901 F.3D 1307, 1317-18 (11th Cir. 2018).

Third, this Court likely has no specific personal jurisdiction over FINRA. Florida's long-arm statute requires a plaintiff to first allege that a defendant has engaged in "any of [the] nine enumerated acts" under the statute. See Fla. Stat. § 48.193(1)(a); see also Skyhop Techs., Inc v. Narra, 58 F.4th 1211, 1223 (11th Cir. 2023). Next, a plaintiff must allege that the Florida statute's "connexity" requirement that at least one of the plaintiff's claims arises out of defendant's alleged improper act or acts has been satisfied. See Skyhop Techs., Inc., 58 F.4th at 1223. Alpine claims that FINRA "[o]perat[es], conduct[s], engage[s] in, or carr[ies] on a business or business venture" in Florida. See Fla. Stat. § 48.193(1)(a)(1). The Court agrees. However,

---

[3] FINRA may bring claims, arising under the Exchange Act or its own rules, against its members pursuant to FINRA's internal administrative review process. See FINRA Rule 9211. After receiving an Initial Decision from FINRA, an individual may seek an internal appeal to NAC, FINRA's internal appellate tribunal. See FINRA Rule 9311. After NAC issues its final decision, an individual may seek review of that decision from the SEC. See FINRA Rule 9370. After the SEC issues its final order, an individual "may obtain review of the order in the United States Court of Appeals for the circuit in which he resides or has his principal place of business." 15 U.S.C. § 78y(1).

Alpine's only path to establishing the connexity requirement would be to establish that the constitutional claims are viable and arise out of FINRA's acts in Florida. That would, in the first instance, require the Court to find that FINRA is subject to constitutional restraints – that it is a state/government actor. For the reasons that follow, the Court declines to reach this issue.

In this regard, as a final basis for this Court to exercise personal jurisdiction over FINRA, Alpine asserts that 28 U.S.C. § 1391(e) applies because FINRA is an "agency of the United States" that "resides" in the Middle District of Florida. 28 U.S.C. § 1391(e) states, in relevant part, as follows:

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which (A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated . . .

28 U.S.C. § 1391(e)(1).

28 U.S.C. § 1391(c)(2), in turn, defines residency and provides that a defendant shall be deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." To determine whether 28 U.S.C. § 1391(e)(1) applies to FINRA, the court must determine the same threshold issue. Again, the Court would need to first determine whether FINRA is "an agency of the United States." 28 U.S.C. § 1391(e). This question, however, goes to the heart of the substantive matter that the Plaintiffs request this Court to decide. Is FINRA a state actor subject to the limits of the Constitution?

Although it is common for courts to resolve challenges to personal jurisdiction before addressing issues concerning venue, it is not mandatory. See Leroy v. Great W. United Corp., 443 U.S. 173 (1979). Instead, district courts may address venue applications at the threshold, "when there is a sound prudential justification for doing so," because "neither personal jurisdiction nor venue is fundamentally preliminary in the sense that subject-matter jurisdiction is." Id. at 180. Moreover, to address a venue challenge does not require a preliminary finding that "the transferring court has personal jurisdiction over the defendants." Goldlawr, Inc. v. Heiman, 369 U.S. 463, 465 (1962).

In Leroy, the Supreme Court found there to be a sound prudential justification to consider venue first because the "question [of] whether personal jurisdiction was properly obtained pursuant to the Texas long-arm statute [was] more difficult." 443 U.S. at 181. Here, the Court likewise finds it appropriate to determine the appropriate venue before deciding the personal jurisdiction question because the issue turns on "a question of constitutional law . . . not heretofore decided" by the Supreme Court or the Eleventh Circuit. [4] See id. As noted, in order to properly determine whether the Court has personal jurisdiction over FINRA in this matter, the Court must decide whether FINRA is a state actor. That question is inextricably interwoven with the merits of this case. Because no party disputes that personal jurisdiction would be

---

[4] Though the issue has been addressed in a few circuit courts, when pressed at the hearing, neither party could point to a reported, binding decision of a circuit court that resolves the issue. FINRA relies principally on unreported decisions or decisions pre-dating the formation of FINRA that address its predecessor, NASD, and decisions related to other private, self-regulatory entities.

appropriate in the District of Columbia, the Court addresses venue first. See Everlast World's Boxing Headquarters Corp. v. Ringside, Inc., 928 F. Supp. 2d 735, 741 (S.D.N.Y. 2013).

Upon examination of the venue issue, the Court finds that the interests of justice weigh in favor of a transfer of venue to the District of Columbia. Pursuant to 28 U.S.C. § 1404(a), the Court may, *sua sponte*, transfer a case to another district court where it might have been brought for the convenience of parties and witnesses and in the interest of justice. "There is a 'long-approved practice of permitting a court to transfer a case *sua sponte* under the doctrine of *forum non conveniens*, as codified at 28 U.S.C. § 1404(a) . . . .'" See Nelson v. Parker, No. 5:18CV264/MCR/MJF, 2019 WL 542115, at *2 (N.D. Fla. Jan. 9, 2019), report and recommendation adopted, No. 5:18CV264-MCR/MJF, 2019 WL 532265 (N.D. Fla. Feb. 11, 2019) (citing Tazoe v. Airbus, S.A.S., 631 F.3d 1321, 1336 (11th Cir. 2011)).[5]

The Eleventh Circuit instructs the Court to consider nine general factors in evaluating whether to transfer under § 1404(a): (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight

---

[5] In this case, all parties have been afforded an opportunity to address transfer, and all have agreed that, if the Court is not inclined to resolve the jurisdiction issue in their favor, they are amenable to being heard on the merits in Washington D.C. (Dkt. 59 at 14)

accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances. Manuel v. Convergys Corp., 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

The purpose of § 1404(a) is to "prevent the waste of time, energy and money to protect litigants, witnesses and the public against unnecessary inconvenience and expense." Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1964) (internal quotation marks omitted). "When considering transfer . . . trial judges are afforded considerable discretion in weighing the criteria under 28 U.S.C. § 1404(a)." Huntley v. Chicago Bd. of Options Exch., 132 F. Supp. 3d 1370, 1372 (N.D. Ga. 2015) (internal quotation marks omitted).

Here, the Court finds that this matter should be transferred to the United States District Court for the District of Columbia. First, as conceded by FINRA at the hearing, there is no question that it is subject to the personal jurisdiction of Washington, D.C. such that venue would lie pursuant to 28 U.S.C. § 1391. Second, all nine factors weigh in favor of transfer.

Plaintiffs challenge the constitutional operation and structure of FINRA. (Dkt. 45) But FINRA was not created in Florida, and FINRA has only one of its four regional offices located in Florida.[6] (Dkt. 59 at 14, n.9) Both parties admit that FINRA was incorporated in Delaware and is headquartered in Washington, D.C. As such, the

---

[6] FINRA's regional office is not located in the Middle District of Florida, but rather in Boca Raton, Fl, which is in the Southern District of Florida. (Dkt. 51 at 15, n.4.)

14

Court finds that any relevant witnesses or documents are likely to be located in Washington D.C., and the availability of process to compel the attendance of unwilling witnesses is likely to be accomplished more easily in Washington, D.C. See Manuel, 430 F.3d at 1135, n.1. Furthermore, because Washington, D.C., FINRA's principal place of business, is the likely forum where documents related to FINRA's structure and operation are located, it is clear that "the locus of operative facts" is likely to be in Washington, D.C.

While the Court recognizes that a plaintiff's choice of forum is accorded considerable weight in the § 1404(a) balancing test, the Court finds that the choice merits less deference under the facts of the instant case. At the hearing, Alpine could not articulate any injury it suffered in the state of Florida, relying instead on the ancillary injury it would sustain if its co-plaintiff were enjoined in the state of Florida. In that regard, although SCA has an office in Florida, its principal place of business is in Arizona based on the allegations of the Second Amended Complaint, and there are no further details provided concerning its connection with Florida. (See Dkt. 43) Simply put, "the lack of a strong, material connection to this district" prohibits Plaintiffs' choice from shifting the balance of factors in favor of this district. See Everlast World's Boxing Headquarters Corp. v. Ringside, Inc., 928 F. Supp. 2d 735, 748 (S.D.N.Y. March 4, 2013).

Although the Court declines to resolve the jurisdictional issues in this Order, Plaintiffs' admission that Washington, D.C. is an appropriate alternate forum for this matter to be heard also weighs in favor of a finding that transfer is appropriate. The

Court is confident that a district court in Washington, D.C. is more than adequately familiar with the law to hear a constitutional claim concerning the formation and function of FINRA as originally contemplated and as it has morphed over the years. Moreover, given the complexity of the personal jurisdiction issues which are bound up in the merits of this matter, the Court finds it prudent to defer ruling on the request for a preliminary injunction, allowing the primary decisional tribunal to address these questions in the context of a merits analysis. In sum, the Court finds that transfer to the United States District Court for the District of Columbia is appropriate.

## IV.    CONCLUSION

Upon consideration of the foregoing, it is hereby **ORDERED** that pursuant to 28 U.S.C. § 1404(a), this case shall be **TRANSFERRED** to the United States District Court for the District of Columbia for all further proceedings. Thereafter, the Clerk is directed to **CLOSE** this case.

**DONE** and **ORDERED** in Tampa, Florida, this 24th day of May 2023.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE

16