**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

SCOTTSDALE CAPITAL ADVISORS
CORP. *et al.*,

        Plaintiffs,

    v.

FINANCIAL INDUSTRY REGULATORY
AUTHORITY, INC.,

        Defendant,

UNITED STATES OF AMERICA,

        Defendant-Intervenor.

Case No. 1:23-cv-1506-BAH

**THE UNITED STATES OF AMERICA'S FOURTH MEMORANDUM OF LAW**
**IN DEFENSE OF THE CHALLENGED PROVISIONS**
**OF THE FEDERAL SECURITIES LAWS**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 1

   **I.**   Legal Background .................................................................................... 1

   **II.**  Litigation Background ............................................................................. 4

ARGUMENT ..................................................................................................................... 6

   **I.**   FINRA does not violate the private-nondelegation doctrine, because it functions
subordinately to the SEC. ............................................................................ 7

   **II.**  FINRA does not violate the public-nondelegation doctrine because Congress provided an
intelligible principle. ................................................................................... 11

   **III.**  FINRA does not violate the Appointments Clause because its officials are
not officers of the United States ................................................................... 14

   **IV.**  Tenure protections for FINRA officials do not violate Article II. ..................... 20

   **V.**  The statutory requirement to join an SRO does not violate the First Amendment. ........... 21

CONCLUSION .................................................................................................................. 22

# TABLE OF AUTHORITIES

**CASES**

*A.L.A. Schechter Poultry Corp. v. United States*,
  295 U.S. 495 (1935) ................................................................................................ 12

*Am. Power & Light Co. v. SEC*,
  329 U.S. 90 (1946) ..................................................................................... 11, 12, 14

*Aslin v. FINRA*,
  704 F.3d 475 (7th Cir. 2013) ..................................................................................... 9

*Ass'n of Am. R.Rs. v. U.S. Dep't of Transp.*,
  721 F.3d 666 (D.C. Cir. 2013),
  *vacated and remanded on other grounds*, 575 U.S. 43 (2015) ................................. 9

*Auffmordt v. Hedden*,
  137 U.S. 310 (1890) ................................................................................................ 15

*Bernstein v. Lind-Waldock & Co.*,
  738 F.2d 179 (7th Cir. 1984) ................................................................................... 17

*Big Time Vapes, Inc. v. FDA*,
  963 F.3d 436 (5th Cir. 2020) ................................................................................... 11

*Blount v. SEC*,
  61 F.3d 938 (D.C. Cir. 1995) ................................................................................... 17

*Boerschig v. Trans-Pecos Pipeline*,
  872 F.3d 701 (5th Cir. 2017) ..................................................................................... 7

*Brentwood Academy v. Tennessee Secondary School Athletic Association*,
  531 U.S. 288 (2001) ................................................................................................ 18

*Carter v. Carter Coal Co.*,
  298 U.S. 238 (1936) .................................................................................................. 8

*Corr v. Metro. Wash. Airports Auth.*,
  702 F.3d 1334 (Fed. Cir. 2012) ............................................................................... 16

*Desiderio v. NASD*,
  191 F.3d 198 (2d Cir. 1999) ................................................................... 2, 16, 17, 21

*Eubank v. Richmond*,
  226 U.S. 137 (1912) .................................................................................................. 7

*Fed. Power Comm'n v. Hope Nat. Gas Co.*,
  320 U.S. 591 (1944) ................................................................................................ 12

*Fiero v. FINRA, Inc.*,
  660 F.3d 569 (2d Cir. 2011) ...................................................................................... 3

*File v. Martin*,
  33 F.4th 385 (7th Cir. 2022), *cert. denied sub nom.*
  *File v. Hickey*, 143 S. Ct. 745 (2023) ................................................................ 21, 22

*Fin. Oversight & Mgmt. Bd. v. Aurelius Inv., LLC*,
  140 S. Ct. 1649 (2020) ............................................................................................ 15

*First Jersey Sec., Inc. v. Bergen*,
  605 F.2d 690 (3d Cir. 1979) ...................................................................................... 9

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*,
  561 U.S. 477 (2010) .......................................................................................... 16, 20

*Galuska v. NYSE*,
  210 F.3d 374 (7th Cir. 2000) .................................................................................. 19

*Graman v. NASD*,
  No. 97-cv-1556, 1998 WL 294022 (D.D.C. Apr. 27, 1998) ............................... 15, 17

*Gundy v. United States*,
  139 S. Ct. 2116 (2019) ....................................................................................... 11, 13

*In re NYSE Specialists Sec. Litig.*,
  503 F.3d 89 (2d Cir. 2007) ........................................................................................ 9

*J.W. Hampton, Jr. & Co. v. United States*,
  276 U.S. 394 (1928), *cert. denied*, 141 S. Ct. 2746 (2021) ...................................... 11

*Janus v. AFSCME, Council 31*,
  138 S. Ct. 2448 (2018) ............................................................................................ 21

*Kaimowitz v. Fla. Bar*,
  996 F.2d 115154 (11th Cir. 199 ............................................................................. 22

*Keller v. State Bar*,
  496 U.S. 1 (1990) .................................................................................................... 22

*Kerpen v. Metro. Wash. Airports Auth.*,
  907 F.3d 152 (4th Cir. 2018) .................................................................................. 16

*Lathrop v. Donohue*,
  367 U.S. 820 (1961) ........................................................................................ 21

*Lebron v. Nat'l R.R. Passenger Corp.*,
  513 U.S. 374 (1995) ......................................................................... 15, 16, 18

*Lichter v. United States*,
  334 U.S. 742 (1948) ........................................................................................ 12

*Loving v. United States*,
  517 U.S. 748 (1996) ........................................................................................ 13

*Lucia v. SEC*,
  138 S. Ct. 2044 (2018) .................................................................................... 19

*Marchiano v. NASD*,
  134 F. Supp. 2d 90 (D.D.C. 2001) ................................................................. 18

*Metcalf & Eddy v. Mitchell*,
  269 U.S. 514 (1926) ........................................................................................ 14

*Mistretta v. United States*,
  488 U.S. 361 (1989) ........................................................................................ 12

*Mohlman v. FINRA*,
  No. 19-cv-154, 2020 WL 905269 (S.D. Ohio Feb. 25, 2020),
  *aff'd*, 977 F.3d 556 (6th Cir.) ................................................................ 17, 21

*NASD v. SEC*,
  431 F.3d 803 (D.C. Cir. 2005) .......................................................................... 4

*Nat'l Broad. Co. v. United States*,
  319 U.S. 190 (1943) ........................................................................................ 12

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
  53 F.4th 869 (5th Cir. 2022) ........................................................................... 10

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
  No. 5:21-cv-071-H, — F. Supp. 3d —,
  2023 WL 3293298 (N.D. Tex. May 4, 2023) ...................................... 10, 15, 16

*NB ex rel. Peacock v. District of Columbia*,
  794 F.3d 31 (D.C. Cir. 2015) .......................................................................... 18

*North v. Smarsh, Inc.*,
   160 F. Supp. 3d 63 (D.D.C. 2015) ...................................................... 17

*Oklahoma v. United States*,
   62 F.4th 221 (6th Cir. 2023)................................................... *passim*

*Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*,
   475 U.S. 1 (1986) .......................................................................... 21

*Panama Refin. Co. v. Ryan*,
   293 U.S. 388 (1935) ....................................................................... 12

*Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*,
   477 F.3d 1155 (10th Cir. 2007)..................................................... 19

*R.H. Johnson & Co. v. SEC*,
   198 F.2d 690 (2d Cir. 1952)........................................................... 9

*Rayburn v. Hogue*,
   241 F.3d 1341 (11th Cir. 2001)..................................................... 19

*Riley v. St. Luke's Episcopal Hosp.*,
   252 F.3d 749 (5th Cir. 2001)................................................... 14, 19

*Saad v. SEC*,
   980 F.3d 103 (D.C Cir. 2020) ......................................................... 1

*Sorrell v. SEC*,
   679 F.2d 1323 (9th Cir. 1982)........................................................ 9

*Sparta Surgical Corp. v. NASD*,
   159 F.3d 1209 (9th Cir. 1998)..................................................... 1, 2

*Sunshine Anthracite Coal Co. v. Adkins*,
   310 U.S. 381 (1940) ................................................................. *passim*

*Thomas Cusack Co. v. City of Chicago*,
   242 U.S. 526 (1917) ....................................................................... 7

*Todd & Co. v. SEC*,
   557 F.2d 1008 (3d Cir. 1977)......................................................... 9

*Turbeville v. FINRA*,
   874 F.3d 1268 (11th Cir. 2017)................................................ *passim*

*U.S. Dep't of Transp. v. Ass'n of Am. R.Rs.*,
   575 U.S. 43 (2015) ..................................................................................................... 16

*U.S. ex. rel. Kelly v. Boeing Co.*,
   9 F.3d 743 (9th Cir. 1993) ......................................................................................... 19

*U.S. ex rel. Stone v. Rockwell Int'l Corp.*,
   282 F.3d 787 (10th Cir. 2002) ................................................................................... 19

*U.S. ex rel. Taxpayers Against Fraud v. General Electric Co.*,
   41 F.3d 1032 (6th Cir. 1994) ..................................................................................... 19

*United States v. Germaine*,
   99 U.S. 508 (1878) ..................................................................................................... 15

*United States v. Halifax Hosp. Med. Ctr.*,
   997 F. Supp. 2d 1272 (M.D. Fla. 2014) .................................................................... 19

*United States v. Hartwell*,
   73 U.S. 385 (1867) ..................................................................................................... 15

*United States v. Solomon*,
   509 F.2d 863 (2d Cir. 1975) ...................................................................................... 17

*Washington ex rel. Seattle Title Tr. Co. v. Roberge*,
   278 U.S. 116 (1928) ..................................................................................................... 7

*Whitman v. Am. Trucking Ass'ns*,
   531 U.S. 457 (2001) ................................................................................................... 12

*Yakus v. United States*,
   321 U.S. 414 (1944) ................................................................................................... 12

*Young Habliston v. Finra Regul., Inc.*,
   No. CV 15-2225 (ABJ), 2017 WL 396580 n.9 (D.D.C. Jan. 27, 2017) .................... 17

## CONSTITUTION

U.S. Const. art. II ............................................................................................ 14, 15

## STATUTES

15 U.S.C. § 78a .................................................................................................... 1

15 U.S.C. § 78b .................................................................................................. 13

15 U.S.C. § 78j .................................................................................................. 14

vii

15 U.S.C. § 78o(a)(1) ................................................................................................. 2

15 U.S.C. § 78o(b)(1) ................................................................................................. 2

15 U.S.C. § 78o-3(a) ................................................................................................ 14

15 U.S.C. § 78o-3(b) ................................................................................................. 3

15 U.S.C. § 78o-3(b)(8) ............................................................................................. 3

15 U.S.C. § 78s ......................................................................................................... 3

15 U.S.C. § 78s(b) ..................................................................................................... 3

15 U.S.C. § 78s(b)(1) ....................................................................................... 6, 9, 13

15 U.S.C. § 78s(b)(2) ............................................................................................... 10

15 U.S.C. § 78s(b)(2)(C) .......................................................................................... 13

15 U.S.C. § 78s(b)(2)(D) .......................................................................................... 10

15 U.S.C. § 78s(b)(3)(A) ............................................................................................ 3

15 U.S.C. § 78s(b)(3)(B) ............................................................................................ 3

15 U.S.C. § 78s(b)(3)(C) ............................................................................................ 3

15 U.S.C. § 78s(b)(3)(D) ............................................................................................ 3

15 U.S.C. § 78s(c) .......................................................................................... 3, 9, 10, 13

15 U.S.C. § 78s(d)(1) ................................................................................................. 9

15 U.S.C. § 78s(d)(2) .............................................................................................. 4, 9

15 U.S.C. § 78s(h)(1) .............................................................................................. 2, 9

15 U.S.C. § 78s(h)(2) ................................................................................................. 2

15 U.S.C. § 78s(h)(4) ................................................................................................. 2

15 U.S.C. § 78y .......................................................................................................... 4

28 U.S.C. § 2403(a) ................................................................................................ 5, 6

42 U.S.C. § 7409(b)(1) ..................................................................................... 12

**REGULATIONS**

17 C.F.R. § 201.401(d) ...................................................................................... 4

SEC, *Self-Regulatory Organizations*,
   72 Fed. Reg. 42,169 (Aug. 1, 2007) ................................................... 1, 2, 15

**LEGISLATIVE AUTHORITIES**

H.R. Rep. No. 94-123 (1975) ............................................................................ 2

S. Rep. No. 94-75 (1975) ................................................................................ 17

**OTHER AUTHORITIES**

FINRA By-Laws art. VI, sec. 1,
   https://perma.cc/4A97-2RU5 ......................................................................... 2

FINRA Rules,
   https://perma.cc/5PTH-PYSJ ........................................................................ 3

SEC, *Concept Release Concerning Self-Regulation*, Exchange Act Release No. 50700,
   2004 WL 2648179 (Nov. 18, 2004) ............................................................. 1

SEC, *In re Alpine Sec. Corp.*, Exchange Act Release No. 86719,
   2019 WL 3933691 (Aug. 20, 2019) ............................................................. 4

## INTRODUCTION

The Financial Industry Regulatory Authority (FINRA) "is a Delaware not-for-profit corporation," Second Am. Compl. ("SAC") ¶ 31, ECF No. 43, and "a private self-regulatory organization," *Saad v. SEC*, 980 F.3d 103, 104 (D.C Cir. 2020), which "function[s] subordinately," *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940), to the Securities and Exchange Commission (SEC) in overseeing securities markets.  "In case after case, the courts have upheld this arrangement, reasoning that the SEC's ultimate control over the rules and their enforcement" is sufficient to satisfy constitutional requirements.  *Oklahoma v. United States*, 62 F.4th 221, 229 (6th Cir. 2023) (Sutton, C.J.); *see also id.* at 243 (Cole, J., concurring) (calling the Maloney Act "unquestionably constitutional").  There is no basis for this Court to depart from that long-settled nationwide consensus.

## BACKGROUND

### I.      Legal Background

Self-regulation in the securities industry dates to the founding era.  *See* SEC, *Concept Release Concerning Self-Regulation*, Exchange Act Release No. 50700, 2004 WL 2648179, at *3 (Nov. 18, 2004) (discussing this history).  As the D.C. Circuit has described it more than once, "FINRA is a private self-regulatory organization," *Saad*, 980 F.3d at 104, and a non-profit corporation that is incorporated in Delaware and headquartered in the District of Columbia. SAC ¶ 31.  FINRA was created in 2007, when its predecessor organization, the National Association of Securities Dealers (NASD), consolidated its member-firm regulation and enforcement functions with the regulatory and enforcement functions of the New York Stock Exchange (another SRO).  *See* SEC, *Self-Regulatory Organizations*, 72 Fed. Reg. 42,169 (Aug. 1, 2007).

NASD, which was formed as part of a comprehensive statutory regime for "cooperative regulation" in securities markets, registered as an SRO pursuant to the Maloney Act of 1938, which amended the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78a *et seq. Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1213 (9th Cir. 1998).  Under this statutory

1

scheme, SROs exercise "a primary supervisory role subject to ultimate SEC control." *Id.* at 1213–14.  In 1975, Congress again amended the Exchange Act to strengthen the SEC's oversight, underscoring that SROs "are intended to be subject to the SEC's control and have no governmentally derived authority to act independently of SEC oversight." *Id.* at 1214 (quoting H.R. Rep. No. 94-123, at 48–49 (1975)).

FINRA is a private corporation; the government does not appoint any of its officers, employees, or Board of Governors members. 72 Fed. Reg. at 42,170–72.  FINRA receives no government funding; rather, it is funded by fees, dues, and assessments from its members. *See* FINRA By-Laws art. VI, sec. 1, https://perma.cc/4A97-2RU5; *Desiderio v. NASD*, 191 F.3d 198, 206–07 (2d Cir. 1999).

The Exchange Act generally makes it unlawful for brokers and dealers to effect securities transactions without registering with the SEC and joining a national securities association. *See* 15 U.S.C. § 78o(a)(1), (b)(1).  As the only national securities association that is currently registered with the SEC, FINRA exercises supervisory authority over the broker-dealer industry, subject to the SEC's oversight and control. *See Turbeville v. FINRA*, 874 F.3d 1268, 1270 & n.2 (11th Cir. 2017).

The SEC may limit FINRA's activities and operations or suspend FINRA's registration if FINRA violates the applicable statutory provisions or SEC regulations.  15 U.S.C. § 78s(h)(1).  The SEC may also suspend or revoke FINRA's registration "if in [the SEC's] opinion such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of [the statute]." *Id.* § 78s(h)(2).  And the SEC may "remove from office or censure" an "officer or director of [FINRA]" if that person "has willfully violated [applicable statutory provisions], the rules or regulations thereunder, or the rules of [FINRA], willfully abused his authority, or without reasonable justification or excuse has failed to enforce compliance" with the securities laws. *Id.* § 78s(h)(4).

FINRA administers broker qualifications examinations; proposes and promulgates rules, regulations, and standards of professional conduct; and disciplines member firms and individuals

for violating its rules.  *See Turbeville*, 874 F.3d at 1271 (citing 15 U.S.C. §§ 78o-3(b), 78s).

Before any rules proposed by FINRA may be promulgated, after public notice and comment, the

SEC reviews and approves them only if it finds the proposal "consistent with the requirements"

of the Exchange Act and its implementing regulations.  15 U.S.C. § 78s(b), (c).  Generally, rules

proposed by FINRA do not take effect unless and until they are approved by the SEC.[1]  *Id.*

§ 78s(b)(1).  The SEC can also "amend" any FINRA rule, at any time, "to insure the fair

administration of the self-regulatory organization," or "to conform its rules to requirements of

this chapter."  *Id.* § 78s(c); *see also id.* (the SEC "may abrogate, add to, and delete from" any

FINRA rule).

      Congress requires SROs to "provide a fair procedure" in disciplinary actions.  *Id.* § 78o-

3(b)(8); *see also id.* § 78o-3(h)(1) (SROs must "bring specific charges, notify such member or

person of, and give him an opportunity to defend against, such charges, and keep a record").

FINRA's disciplinary proceedings and appeals are thus governed by a set of SEC-approved

internal rules known as the FINRA Code of Procedure and in accordance with the disciplinary

process set out in the Exchange Act.  *See Fiero v. FINRA, Inc.*, 660 F.3d 569, 571–72 (2d Cir.

2011).  FINRA may initiate a disciplinary proceeding against a member for violating a FINRA

rule, SEC regulation, or statutory provision.  *Id.*  After FINRA files a complaint, a hearing panel

conducts a hearing and issues a written decision and explanation.  *Id.*; *see* FINRA Rules §§ 9211,

---

[1] There are minor exceptions: a FINRA rule may take effect immediately if it constitutes "a stated policy, practice, or interpretation with respect to the meaning, administration, or enforcement of an existing [FINRA] rule"; addresses FINRA dues or fees; or is "concerned solely with the administration of [FINRA]" or related matters.  15 U.S.C. § 78s(b)(3)(A).  The SEC may also immediately put a proposed FINRA rule into effect if it determines that it is "necessary for the protection of investors, the maintenance of fair and orderly markets, or the safeguarding of securities or funds."  *Id.* § 78s(b)(3)(B).  Within a 60-day period thereafter, the SEC may "summarily" suspend any such rule that immediately went into effect if it determines that suspension "is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this chapter."  *Id.* § 78s(b)(3)(C).  During the suspension period, the SEC approves or disapproves the rule according to the usual process described above.  *Id.*  Finally, in some circumstances, proposed rule changes "shall be deemed to have been approved," if the SEC does not act on the proposal within a specified time.  *Id.* § 78s(b)(2)(D).

9231, 9268, https://perma.cc/5PTH-PYSJ.  The panel's decision may be appealed to FINRA's National Adjudicatory Council, which "may affirm, dismiss, modify, or reverse with respect to each finding."  FINRA Rules § 9348.  Decisions of FINRA's National Adjudicatory Council may then be appealed to the SEC, *see* 15 U.S.C. § 78s(d)(2), where they are subject to "*de novo* review,*" Turbeville*, 874 F.3d at 1271.  The SEC thus "oversees both the rulemaking and the enforcement" functions of FINRA, always retaining "ultimate control over the rules and their enforcement."  *Oklahoma*, 62 F.4th at 229.[2]

Any person aggrieved by an SEC decision may petition a federal court of appeals for review.  15 U.S.C. § 78y.  FINRA itself, however, may not seek judicial review of an SEC decision that overturns a FINRA disciplinary order.  *See NASD v. SEC*, 431 F.3d 803 (D.C. Cir. 2005).

## II.    Litigation Background

Plaintiffs Scottsdale Capital Advisors Corporation and Alpine Securities Corporation are FINRA members.  SAC ¶¶ 28–29.  Plaintiffs bring several claims—which are at times overlapping and imprecisely labeled—challenging FINRA's structure under the Constitution. Read in the light most favorable to Plaintiffs, the second amended complaint advances four separation-of-powers theories: (1) that FINRA's structure violates the private-nondelegation doctrine, because it allows a private corporation to exercise government functions without sufficient political accountability, *see, e.g., id.* ¶¶ 99, 161; (2) that FINRA violates the public-nondelegation doctrine, because Congress improperly delegated legislative power to FINRA, *see, e.g., id.* ¶¶ 51, 63, 84, 160–61; (3) that FINRA violates the Appointments Clause, because it employs officers of the United States who were not appointed consistently with constitutional requirements, *see, e.g., id.* ¶¶ 153–57; and (4) that FINRA's structure violates Article II, because

---

[2] If necessary, an aggrieved party may seek a stay pending further administrative or appellate review of a FINRA disciplinary order (first from FINRA, then from the SEC, then from the relevant court of appeals).  *See* 15 U.S.C. § 78s(d)(2); 17 C.F.R. § 201.401(d); *see also, e.g.*, SEC, *In re Alpine Sec. Corp.*, Exchange Act Release No. 86719, 2019 WL 3933691 (Aug. 20, 2019) (SEC granting Plaintiffs' request for interim stay of previous FINRA decision).

removal restrictions limit the ability of the President and the SEC to control FINRA, *see, e.g.*, *id.*
¶¶ 142–51.  Plaintiffs also bring First, Fifth, and Seventh Amendment claims.  *See id.* ¶¶ 162–80.

On February 6, 2023, the United States intervened as of right, for the limited purpose of
defending the constitutionality of the challenged provisions of the federal securities laws, which
govern FINRA's relationship with the SEC.  Notice, ECF No. 28; *see* 28 U.S.C. § 2403(a).  After
Plaintiffs amended their complaint twice, Plaintiff Alpine moved for a preliminary injunction on
May 9, seeking to enjoin a FINRA enforcement proceeding against it.  ECF No. 45.  FINRA—
which is represented by private counsel because it is a private entity—moved to dismiss the
second amended complaint on May 12.  ECF No. 51.

On May 24, 2023, after a hearing, the U.S. District Court for the Middle District of
Florida (Scriven, J.) transferred this case to the U.S. District Court for the District of Columbia.
ECF No. 62.  Two days later, the case was assigned to this Court, which issued an order denying
without prejudice all pending motions and ordering the parties to submit a joint proposed
schedule for further proceedings by May 30.  *See* ECF No. 67.  On May 30, Alpine moved for
reconsideration of the Court's order of May 26, ECF No. 65, and also filed what it captioned as a
"renewed" motion for a temporary restraining order or a preliminary injunction, ECF No. 66.  On
June 1, after expedited briefing by the parties, the Court held a hearing in which it granted the
motion for reconsideration and held for decision the motion for a preliminary injunction.  On
June 7, the Court denied Alpine's requested injunctive relief, Order, ECF No. 87, concluding that
Alpine had "failed to show a likelihood of success on the merits of plaintiffs' claims," and that
"the balance of equities and public interest disfavor any injunctive relief."  Mem. Op. at 13, 29,
ECF No. 88.

On an emergency basis, Alpine appealed the Court's order and sought an injunction
pending appeal from the D.C. Circuit.  ECF No. 89.  A motions panel "administratively stayed"
the administrative enforcement hearing and, on July 5, granted Alpine's emergency motion for
inunction pending appeal.  D.C. Cir. Order (July 5, 2023), ECF No. 94.  Other than to state that
Alpine had satisfied the legal standard for an injunction pending appeal, the panel did not include

any reasoning for its decision, but Judge Walker wrote separately to explain his views, and Judge Garcia also separately indicated that he "would deny the emergency motion for injunction." *Id.* at 1. Although Judge Walker concluded that "Alpine has raised a serious [constitutional] argument," he also emphasized the preliminary nature of that conclusion and that "a vote to stay is not a decision on the merits." *Id.* at 4 (internal quotation marks omitted). The panel ordered a briefing schedule that is currently set to conclude on October 4, 2023.

In accordance with the parties' joint scheduling proposal in this Court, ECF No. 67, on June 30, FINRA moved to dismiss Plaintiffs' second amended complaint, ECF No. 93. As authorized by 28 U.S.C. § 2403(a), the United States now submits this fourth memorandum of law in defense of the challenged provisions of the federal securities laws.[3]

## ARGUMENT

The challenged provisions of the federal securities laws are constitutional. FINRA's structure violates neither the private-nondelegation doctrine nor the public-nondelegation doctrine because FINRA "function[s] subordinately" to the SEC, *Adkins*, 310 U.S. at 399; it wields no independent lawmaking power, *see, e.g.*, 15 U.S.C. § 78s(b)(1); and it may propose regulations for the SEC's consideration and approval only pursuant to detailed statutory constraints. The processes for selection and removal of FINRA officials do not violate the Appointments Clause or exceed constitutional limits on removal restrictions, because FINRA is a private entity not subject to those restraints. And the statutory condition that securities brokers and dealers join an SRO like FINRA to participate in the industry does not implicate any First Amendment right because FINRA does not engage in political or ideological expression.

---

[3] The Court has not scheduled a hearing on FINRA's motion to dismiss. If the Court does hold a hearing, counsel for the United States would intend to participate by presenting "argument on the question of constitutionality," 28 U.S.C. § 2403(a), of the challenged statutory provisions.

I.    **FINRA does not violate the private-nondelegation doctrine, because it functions subordinately to the SEC.**

Plaintiffs allege that "if the FINRA Board is deemed to be a private entity," that would result in an impermissible delegation of government power to a private entity.  SAC ¶ 161.  This appears to be an allegation that FINRA violates the so-called private-nondelegation doctrine, although Plaintiffs do not use that phrase in the complaint itself.  *See, e.g.*, *id.* ¶ 99 (alleging that "here, Congress has sought to outsource governmental powers to (purportedly) private actors who are supposedly not bound by the Constitution"); *see also* Pls.' Mot. for Prelim. Inj. at 20–22, ECF No. 66 (explicitly discussing, for the first time, "the private nondelegation doctrine").  Plaintiffs' private-nondelegation claim fails because, as every court to consider this question has concluded, FINRA "function[s] subordinately" to the SEC.  *Adkins*, 310 U.S. at 399.  FINRA's structure is thus "unquestionably constitutional."  *Oklahoma*, 62 F.4th at 243 (Cole, J., concurring).

a.    Despite its name, "the private nondelegation doctrine is rooted" in "substantive due process," rather than the vesting clauses of the Constitution.  *Boerschig v. Trans-Pecos Pipeline*, 872 F.3d 701, 709 (5th Cir. 2017).  Its earliest applications concerned ordinances that allowed homeowners to set zoning requirements for their neighborhoods.  *Washington ex rel. Seattle Title Tr. Co. v. Roberge*, 278 U.S. 116, 120–22 (1928); *Thomas Cusack Co. v. City of Chicago*, 242 U.S. 526, 530 (1917); *Eubank v. Richmond*, 226 U.S. 137, 143–44 (1912).  Such ordinances were unconstitutional, the Court explained, because they "conferr[ed] the power on some property holders to virtually control and dispose of the property rights of others," without setting any standard to prevent the private property owners from making public policy "solely for their own interest, or even capriciously."  *Eubank*, 226 U.S. at 143–44.  These ordinances were unlawful where they "gave to [the decision of private entities] the effect of law."  *Thomas Cusack Co.*, 242 U.S. at 531.  Where government officials were "bound by the decision" of entities who themselves were not "bound by any official duty," the "delegation of power so attempted [was] repugnant to the due process clause of the Fourteenth Amendment."  *Roberge*, 278 U.S. at 122.

The Supreme Court applied that doctrine to the federal government in *Carter v. Carter Coal Co.*, 298 U.S. 238 (1936).  In *Carter Coal*, the Court held unlawful a federal statute that allowed the producers of more than two-thirds of the coal in any given district to set wages and hours for all the producers in that district, unconstrained by any public agency review.  *Id.* at 281–83.  That "obnoxious" delegation "to private persons whose interests may be and often are adverse to the interests of others in the same business," the Court held, was "clearly arbitrary" and "clearly a denial of rights safeguarded by the due process clause of the Fifth Amendment." *Id.* at 311.

After *Carter Coal*, Congress enacted a new statute under which local boards consisting of private coal producers would be organized under the Bituminous Coal Code and would "operate as an aid to the [National Bituminous Coal] Commission but subject to its pervasive surveillance and authority."  *Adkins*, 310 U.S. at 388.  The new statute "specifie[d] in detail the methods of [the boards'] organization and operation, the scope of their functions, and the jurisdiction of the Commission over them."  *Id.*  The Coal Commission was "empowered to fix minimum prices . . . in accordance with stated standards" following a procedure in which the code boards would "propose minimum prices pursuant to prescribed statutory standards," which "may be approved, disapproved, or modified by the Commission."  *Id.*

In reviewing this revised scheme in *Sunshine Anthracite Coal Co. v. Adkins*, the Supreme Court determined that the revised statutory standards for fixing coal prices were "a valid delegation of authority" to the Coal Commission because they "far exceed[ed] in specificity others which have been sustained."  *Id.* at 398.  Then, in addressing the plaintiff's private-nondelegation arguments, the Court held that no constitutional problem arose from involving private industry in the regulatory scheme because "members of the code function subordinately to the Commission."  *Id.* at 399.  "It, not the code authorities, determines the prices.  And it has authority and surveillance over the activities of these authorities.  Since law-making is not entrusted to the industry, this statutory scheme is unquestionably valid."  *Id.*

**b.**  Under *Adkins*, Plaintiffs' claim fails, because FINRA "function[s] subordinately" to the SEC, which wields "authority and surveillance over" FINRA's activities.  *Id.*; *see* Mem. Op. at 22 ("SROs' authority is subordinate to the SEC's ultimate control and oversight.").  "The SEC . . . retains formidable oversight power[s] to supervise, investigate, and discipline [FINRA] for any possible wrongdoing or regulatory missteps."  *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 101 (2d Cir. 2007).  "[T]he SEC may abrogate, add to, and delete from all FINRA rules as it deems necessary."  *Aslin v. FINRA*, 704 F.3d 475, 476 (7th Cir. 2013) (citations omitted) (citing 15 U.S.C. § 78s(b)(1), (c)).  Moreover, FINRA must notify the SEC of any final disciplinary action it takes against a member, which is thereafter subject to *de novo* review by the SEC, acting *sua sponte* or in response to a petition from the aggrieved party.  *See* 15 U.S.C. § 78s(d)(1)–(2); *see also* SAC ¶¶ 115–19 (discussing an instance in which FINRA brought disciplinary action against Plaintiff Scottsdale Capital Advisors, which was ultimately set aside by the SEC.  As a final backstop, the SEC may always suspend or revoke FINRA's registration (and thus its ability to exercise the functions of an SRO under the statute) "if in [the SEC's] opinion such action is necessary or appropriate in the public interest, for the protection of investors, or otherwise in furtherance of the purposes of this chapter."  15 U.S.C. § 78s(h)(1).

"In case after case, the courts have upheld this arrangement, reasoning that the SEC's ultimate control over the rules and their enforcement makes the SROs permissible aides and advisors."  *Oklahoma*, 62 F.4th at 229.  Indeed, every court of appeals to consider this question has agreed: under *Adkins*, the federal securities laws do not "unconstitutionally delegate[] power to" FINRA (or its predecessor, the NASD) because the statute gives the SEC the power (1) "to approve or disapprove of [its] Rules," and (2) to conduct *de novo* review of "any disciplinary action" after initial adjudication before FINRA.  *R.H. Johnson & Co. v. SEC*, 198 F.2d 690, 695 (2d Cir. 1952); *see Todd & Co. v. SEC*, 557 F.2d 1008, 1012–13 (3d Cir. 1977); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 697 (3d Cir. 1979); *Sorrell v. SEC*, 679 F.2d 1323, 1325–26 (9th Cir. 1982).  The D.C. Circuit has approvingly discussed these cases about the constitutional status of NASD and FINRA, describing them as "resembl[ing] *Adkins*."  *Ass'n of Am. R.Rs. v.*

*U.S. Dep't of Transp.*, 721 F.3d 666, 671 n.5 (D.C. Cir. 2013), *vacated and remanded on other grounds*, 575 U.S. 43 (2015).

    **c.**   A recent Fifth Circuit decision holding invalid a (since-amended) delegation of power underscores the propriety of the SEC-FINRA relationship.  The Fifth Circuit held that that the version of the Horseracing Integrity and Safety Act (HISA) then in effect was an unconstitutional delegation to the Horseracing Integrity and Safety Authority, a private entity.  *See Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869 (5th Cir. 2022).  In doing so, the panel explicitly contrasted the challenged statutory provisions with those that govern the SEC-FINRA relationship.  *See id.* at 887.  The Fifth Circuit cited as a "key distinction" the fact that "[u]nlike HISA, the Maloney Act empowers the SEC to 'abrogate, add to, and delete from' FINRA rules 'as the [SEC] deems necessary or appropriate.'"  *Id.* (quoting 15 U.S.C. § 78s(c)). The court observed that "although FINRA plays an important role in formulating securities industry rules, its role is ultimately 'in aid of' the SEC, which has the final word on the substance of the rules."  *Id.* (citing *Adkins*, 310 U.S. at 388); *see also Oklahoma*, 62 F.4th at 232 (distinguishing the previous version of HISA on this basis, reasoning that "the SEC's modification power . . . explains why every court of appeals to address the validity of such delegations under the Maloney Act . . . has upheld them"); *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, No. 5:21-cv-071-H, — F. Supp. 3d —, 2023 WL 3293298, at *19 (N.D. Tex. May 4, 2023) (on remand) ("[T]he Authority is now on equal footing to FINRA in its role 'in aid of' the federal agency that retains ultimate rulemaking authority.").[4]

---

    [4] Plaintiffs have noted (Pls.' Mot. for Prelim. Inj. at 21–22) that, under 15 U.S.C. § 78s(b)(2), there are certain circumstances in which rules proposed by FINRA "shall be deemed to have been approved" if the SEC does not act on the proposal within a specified time.  *Id.* § 78s(b)(2)(D).  But it is not clear why that should matter where, as here, "the Maloney Act empowers the SEC to 'abrogate, add to, and delete from' FINRA rules 'as the [SEC] deems necessary or appropriate.'"  *Black*, 53 F.4th at 887 (quoting 15 U.S.C. § 78s(c)).  In any event, Plaintiffs do not allege that any FINRA rule adopted through that (extremely rarely used) statutory backup has ever been (or will ever be) enforced against them.  Indeed, counsel's understanding is that, in the tens of thousands of instances in which FINRA has proposed rules for the SEC's consideration, the procedures in 15 U.S.C. § 78s(b)(2)(D) have been invoked fewer than ten times—almost all of which occurred in the context of a government shutdown,

In sum, because FINRA "function[s] subordinately" to the SEC, *Adkins*, 310 U.S. at 399, it does not violate the private-nondelegation doctrine.

## II.   FINRA does not violate the public-nondelegation doctrine because Congress provided an intelligible principle.

In most instances, the second amended complaint uses the word "delegation" in reference to the private-nondelegation doctrine, discussed above, which governs the federal government's ability to delegate authority to private actors.  Count III, however, also arguably asserts a distinct (albeit very conclusory) claim under the more familiar public-nondelegation doctrine, which governs Congress's ability to delegate legislative power to the Executive Branch via statute. *See* SAC ¶ 160.  In other words, Plaintiffs argue that the relevant statutes contain an unconstitutional delegation of authority—whether FINRA is considered a public or a private entity.  *See id.* ¶ 161. But even assuming that the typical public-nondelegation standard applies to a delegation of authority to a private entity like FINRA, Plaintiffs do not come close to meeting the very high standard for this sort of nondelegation claim.

**a.**  "Delegations are constitutional so long as Congress 'lays down by legislative act an intelligible principle to which the person or body authorized to exercise the authority is directed to conform.'"  *Big Time Vapes, Inc. v. FDA*, 963 F.3d 436, 441–42 (5th Cir. 2020) (brackets omitted) (quoting *J.W. Hampton, Jr. & Co. v. United States*, 276 U.S. 394, 409 (1928)), *cert. denied*, 141 S. Ct. 2746 (2021).  It is "constitutionally sufficient if Congress clearly delineates the general policy, the public agency which is to apply it, and the boundaries of th[e] delegated authority.'"  *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946).

"Those standards . . . are not demanding."  *Gundy v. United States*, 139 S. Ct. 2116, 2129 (2019) (plurality op.).  Although Congress has delegated authority since "the beginning of the government," the Supreme Court "has found only two delegations to be unconstitutional."  *Big Time Vapes*, 963 F.3d at 442, 446 (citation omitted).  One "provided literally no guidance for the

---

and none of which appear to have any relevance to the dispute between FINRA and Plaintiffs that gave rise to this litigation.

exercise of discretion," and the other "conferred authority to regulate the entire economy on the basis of no more precise a standard than stimulating the economy by assuring 'fair competition.'" *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 474 (2001) (citing *Panama Refin. Co. v. Ryan*, 293 U.S. 388 (1935), and *A.L.A. Schechter Poultry Corp. v. United States*, 295 U.S. 495 (1935)).  By contrast, in the almost 90 years since those two decisions—both from 1935, and both about the same statute—the Supreme Court has consistently upheld "Congress' ability to delegate power under broad standards," *Mistretta v. United States*, 488 U.S. 361, 373 (1989), and "ha[s] 'almost never felt qualified to second-guess Congress regarding the permissible degree of policy judgment that can be left to those executing or applying the law,'" *Am. Trucking*, 531 U.S. at 474–75 (quoting *Mistretta*, 488 U.S. at 416 (Scalia, J., dissenting)).

Applying those principles, the Supreme Court has upheld nearly every delegation it has confronted, including delegations:

- to the Federal Communication Commission to regulate broadcast licensing as "public interest, convenience, or necessity" requires, *Nat'l Broad. Co. v. United States*, 319 U.S. 190, 225–26 (1943);

- to the Federal Power Commission to determine "just and reasonable" rates for wholesale sales of natural gas, *Fed. Power Comm'n v. Hope Nat. Gas Co.*, 320 U.S. 591, 600 (1944);

- to the Price Administrator to fix commodity prices that would be "fair and equitable" and would "effectuate the purposes of th[e] [Emergency Price Control Act of 1942]," *Yakus v. United States*, 321 U.S. 414, 420 (1944) (citation omitted);

- to the SEC to prevent unfair or inequitable distribution of voting power among security holders, *Am. Power & Light*, 329 U.S. at 104–05;

- to the Secretary of War to determine and recover "excessive profits" from military contractors, *Lichter v. United States*, 334 U.S. 742, 785–86 (1948) (citation omitted); and

- to the Environmental Protection Agency to set nationwide air-quality standards limiting pollution to the level required "to protect the public health."  *Am. Trucking*, 531 U.S. at 472 (quoting 42 U.S.C. § 7409(b)(1)).

**b.**  The provisions challenged here fit comfortably within this precedent.  As a threshold matter, Congress did not grant FINRA "lawmaking" power at all—that is, FINRA lacks the authority to promulgate general "rule[s] of prospective force."  *Loving v. United States*, 517 U.S. 748, 758 (1996); *see also Gundy*, 139 S. Ct. at 2133 (Gorsuch, J., dissenting) (the framers understood "legislative power . . . to mean the power to adopt generally applicable rules of conduct governing future actions by private persons").  Those powers remain firmly vested in the SEC, because no rule proposed by FINRA "shall take effect unless approved by the Commission."  15 U.S.C. § 78s(b)(1); *see also supra* at 3 n.1, 10 n.4 (discussing minor statutory exceptions).

Even if a court were to conclude that FINRA does exercise some delegated authority (either in the context of its rulemaking or adjudication functions), the exercise of that authority is governed by statutory standards and criteria that easily satisfy the forgiving "intelligible principle" test.  Indeed, Plaintiffs never even allege the absence of an intelligible principle, nor do they identify the supposedly problematic delegating language.  *See* SAC ¶ 51 (alleging vaguely that FINRA "possesses and deploys improperly and unconstitutionally delegated legislative power, including, but not limited to, its broad power to enact law").

Nor could they: both FINRA and the SEC are constrained by detailed provisions of the Securities Act of 1933, the Securities Exchange Act of 1934, and the Maloney Act of 1938. FINRA may propose rules, but the SEC approves FINRA rules only "if it finds that such proposed rule change is consistent with the requirements of this chapter and the rules and regulations issued under this chapter that are applicable to such organization."  15 U.S.C. § 78s(b)(2)(C).  And the SEC can also "amend" any FINRA rule, at any time, "to insure the fair administration of the self-regulatory organization" or "to conform its rules to requirements of this chapter."  *Id.* § 78s(c).  Those cross-references incorporate a long list of specific, detailed delegations—and restrictions on those delegations—governing the SEC's authority "to insure the maintenance of fair and honest markets" in securities, *id.* § 78b, to prohibit "[m]anipulative and

13

deceptive devices" in financial markets, *id.* § 78j, to ensure "the protection of investors," *id.* § 78o-3(a), and so on.

Under binding precedent, these delegations—either in isolation, or when considered in the context of the statutory scheme as a whole—are "constitutionally sufficient," because "Congress clearly delineate[d] the general policy, the public agency which is to apply it, and the boundaries of th[e] delegated authority." *Am. Power & Light*, 329 U.S. at 105; *see also id.* (the "veritable code of rules" for the SEC to follow in enforcing certain provisions of the securities laws "are certainly no less definite in nature than those speaking in other contexts in terms of 'public interest,' 'just and reasonable rates,' 'unfair methods of competition' or 'relevant factors'" that the Supreme Court has already approved); Mem. Op. at 23 n.9 ("Congress delineated specific objectives that SROs should strive to accomplish, providing an 'intelligible principle' under the public nondelegation doctrine."). No more is required.

## III. FINRA does not violate the Appointments Clause because its officials are not officers of the United States.

Plaintiffs allege that the manner of selection for members of FINRA's Board of Governors and FINRA hearing officers violates the Appointments Clause. SAC ¶¶ 64–73, 153–57. These claims fail because FINRA officials are not "Officers of the United States" and thus are not subject to the Appointments Clause in the first place.

**a.** The Appointments Clause requires that all "Officers of the United States" be appointed by the President subject to "the Advice and Consent of the Senate," although "Congress may by Law vest the Appointment of . . . inferior Officers . . . in the President alone, in the Courts of Law, or in the Heads of Departments." U.S. Const. art. II, § 2, cl. 2. "An office is a public station conferred by the appointment of government." *Metcalf & Eddy v. Mitchell*, 269 U.S. 514, 520 (1926). Accordingly, in light of the constitutional text "of the United States," U.S. Const. art. II, § 2, cl. 2, "Supreme Court precedent has established that the constitutional definition of an 'officer' encompasses, at a minimum, a continuing and formalized relationship of employment *with the United States Government*," *Riley v. St. Luke's Episcopal Hosp.*, 252

14

F.3d 749, 757–58 (5th Cir. 2001) (en banc) (emphasis added) (citing *Auffmordt v. Hedden*, 137 U.S. 310, 327 (1890), and *United States v. Germaine*, 99 U.S. 508, 511–12 (1878)); *see also United States v. Hartwell*, 73 U.S. 385, 393–94 (1867) ("A government office is different from a government contract.").

The Appointments Clause thus applies only to the appointment of "Officers of the United States."  U.S. Const. art. II, § 2, cl. 2.  It does not apply to the officers of a private corporation any more than it applies to the officers of a state or the officers of a territory.  *See Black*, 2023 WL 3293298, at *15 (rejecting the argument that "a private entity should be considered part of the government for purposes of the Appointments Clause").  *Cf. Fin. Oversight & Mgmt. Bd. v. Aurelius Inv., LLC*, 140 S. Ct. 1649 (2020) (Appointments Clause inapplicable to officers of the territorial government of Puerto Rico).  And as discussed above, FINRA is "a private, non-profit Delaware corporation," *Turbeville*, 874 F.3d at 1270, rather than a component of the federal government.  The Appointments Clause therefore has no bearing on the hiring of FINRA officials.  *See, e.g.*, *Aurelius*, 140 S. Ct. at 1658 ("If they are not officers of the United States, but instead are some other type of officer, the Appointments Clause says nothing about them.").

**b.**  In rare circumstances, a corporation created by the federal government can be regarded as part of the federal government for certain constitutional purposes, even though Congress has nominally designated it a private corporation.  *See Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374 (1995) (treating Amtrak as part of the federal government for purposes of the First Amendment).  But that principle applies only when (among other requirements) "the Government creates [the] corporation."  *Id.* at 399; *see Black*, 2023 WL 3293298, at *13 ("[T]o be considered a government entity for constitutional purposes, a corporation must be created by the government.").  Congress did not create FINRA; rather, FINRA was incorporated under Delaware law.  *See generally* 72 Fed. Reg. at 42,169; *see also Black*, 2023 WL 3293298, at *14 ("To be sure, FINRA . . . [was] created in anticipation of aiding a federal agency, but that alone is insufficient to render it part of the government."); *Graman v. NASD*, No. 97-cv-1556, 1998

WL 294022, at *3 (D.D.C. Apr. 27, 1998) ("The fact that the Maloney Act of 1938 welcomed and anticipated the creation of NASD does not make it a governmental actor[.]").

Nor is it the case here that the federal government "retains for itself permanent authority to appoint a majority of the directors of" FINRA.  *Lebron*, 513 U.S. at 399.  To the contrary, FINRA's "creation was not mandated by statute, nor does the government appoint its members or serve on any [FINRA] board or committee."  *Desiderio*, 191 F.3d at 206 (discussing FINRA's predecessor, NASD). *Cf., e.g.*, *U.S. Dep't of Transp. v. Ass'n of Am. R.Rs.*, 575 U.S. 43, 51 (2015) (treating Amtrak as a governmental entity under the Constitution, in part because "[t]he Secretary of Transportation holds all of Amtrak's preferred stock and most of its common stock" and the President selects eight of its nine board members).

Applying those principles, courts have rejected Appointments Clause claims against government-affiliated corporations in which a minority of board members are selected by the federal government.  *See, e.g.*, *Kerpen v. Metro. Wash. Airports Auth.*, 907 F.3d 152, 159 (4th Cir. 2018) ("Because these appointees are a distinct minority of the Board, they alone cannot 'control' MWAA.  Through the process of deliberation and negotiation, these appointees could influence MWAA's operations, but influence is not sufficient."); *Corr v. Metro. Wash. Airports Auth.*, 702 F.3d 1334, 1337 (Fed. Cir. 2012) (same). *A fortiori*, the Appointments Clause has nothing to say here, about a privately created corporation with *no* government appointees.

This conclusion finds further support in *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010).  There, the Supreme Court contrasted the Public Company Accounting Oversight Board (PCAOB) with the "private self-regulatory organizations in the securities industry," "such as the New York Stock Exchange."  *Id.* at 484.  FINRA is just such an organization.  Like the New York Stock Exchange (and unlike the PCAOB and Amtrak), FINRA is not a "Government-created, Government-appointed entity."  *Id.* at 484–85.  So FINRA's status as a private corporation is dispositive here, and the Appointments Clause is categorically inapplicable to the selection of its officers and employees.  *See Black*, 2023 WL 3293298, at *14 ("Like FINRA, the Authority is a private entity" because it "is a private

corporation that receives no federal or state funding," its "creation was not mandated by statute," and its officers "are not 'government appoint[ed]'").

   **c.** This result is also consistent with—though analytically distinct from—the many decisions that have concluded that SROs like FINRA are not state actors for purposes of other constitutional provisions, such as the Due Process Clause and the privilege against self-incrimination. *See, e.g.*, *Desiderio*, 191 F.3d at 206 ("The NASD is a private actor, not a state actor."); *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 186 (7th Cir. 1984) (rejecting the argument "that regulation by the federal government has made the [Chicago Mercantile] Exchange an agency of the United States, thus bringing the Exchange under the due process clause of the Fifth Amendment"); *United States v. Solomon*, 509 F.2d 863, 868–71 (2d Cir. 1975) (Friendly, J.) (same, with respect to the New York Stock Exchange); *Mohlman v. FINRA*, No. 19-cv-154, 2020 WL 905269, at *6 (S.D. Ohio Feb. 25, 2020) (collecting cases) ("Courts have held without exception that FINRA is a private entity and not a state actor."), *aff'd*, 977 F.3d 556 (6th Cir.); *see also* FINRA's MTD at 16–17 & n.6, ECF No. 51 (collecting more cases). Although the D.C. Circuit has not decided this question,[5] the great weight of authority thus holds that FINRA is not a state actor.

---

   [5] *Blount v. SEC*, 61 F.3d 938 (D.C. Cir. 1995), is not to the contrary—which is presumably why Plaintiffs never cited it until Defendants identified it, in a prior filing. *See* ECF No. 68 at 16 n.5. *Blount* found that a particular regulation that was "drafted" by the Municipal Securities Rulemaking Board (MSRB) and "then approved by the [SEC]" "constituted government action" in the context of a First Amendment challenge. *Id.* at 939. But the MSRB is differently situated from FINRA in several critical respects. For one, unlike FINRA, the MSRB was "created by an act of Congress," *id.* at 938, and the Senate Report to the 1975 amendments thus describes the MSRB as "a unique type of self-regulatory entity" that is "not . . . a membership organization" and which thus "requires a somewhat different relationship [with] the Commission." S. Rep. No. 94-75, at 47, 49–50. Also unlike FINRA, the SEC appointed the "initial Board members" of the MSRB. *Id.* at 46. It is thus unsurprising that multiple courts in this District, after *Blount*, joined the national consensus that FINRA (and its predecessor, the NASD) is not a state actor. *See, e.g.*, *Graman v. NASD*, 1998 WL 294022 (D.D.C. Apr. 27, 1998) (distinguishing *Blount*, holding "that NASD is not a governmental actor," and recognizing that "[e]very court that has considered the question" has agreed); *North v. Smarsh, Inc.*, 160 F. Supp. 3d 63, 78 (D.D.C. 2015) ("FINRA disciplinary proceedings are not federal agency proceedings." (internal quotation marks omitted)); *Young Habliston v. Finra Regul., Inc.*, No. CV 15-2225, 2017 WL 396580, at *5 n.9 (D.D.C. Jan. 27, 2017) ("Courts in this jurisdiction

*Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288 (2001), and other cases about "entwinement" between public and private actors, are not to the contrary. *Brentwood* holds that "the pervasive entwinement of public institutions and public officials in [a nominally private entity's] composition and workings" can support a finding that the entity's conduct is attributable to the state. *Id.* at 298. There, the Court held that the Tennessee Secondary School Athletic Association was a state actor under this "entwinement" theory, because it was composed almost entirely of public schools; public school officials "overwhelmingly perform[ed] all but [its] purely ministerial acts"; its employees were treated as state employees; and it received most of its financial support from public schools. *Id.* at 299– 300. This "pervasive entwinement to the point of largely overlapping identity," *id.* at 303, bears little similarity to the relationship between FINRA and the SEC.

Of course, even if FINRA's private conduct were attributable to the state in certain circumstances, that would not answer the question whether its officials are "Officers of the United States" within the meaning of the Appointments Clause. *Cf., e.g.*, *NB ex rel. Peacock v. District of Columbia*, 794 F.3d 31, 43 (D.C. Cir. 2015) (holding that the Xerox Corporation was a state actor in the context of its work for the District of Columbia government, but nowhere suggesting that its officers were subject to the Appointments Clause or constitutional restraints on removal restrictions). To hold that the Appointments Clause applied to a private corporation like FINRA—particularly in a facial challenge like this one—the Court would have to conclude that the narrow exception set forth in *Lebron* applies, such that FINRA should always be considered "part of the Government" for constitutional purposes. 513 U.S. at 397. For the reasons above, *see supra at* 15–17, it does not.

---

have already determined that FINRA and FINRA Regulation, or their predecessors NASD and NASD Regulation, are not 'state actors' for purposes of a section 1983 claim."); *Marchiano v. NASD*, 134 F. Supp. 2d 90, 95 (D.D.C. 2001) ("[E]very court that has addressed those issues [whether NAD defendants are state actors] has rejected [those] arguments."). To this day, the government is unaware of any decision to the contrary.

**d.**  The separate question of whether and when FINRA is entitled to immunity from private tort suits is complicated and case-specific, and it ultimately has no bearing on this case. For example, "courts uniformly hold that arbitration forums and sponsors, like courts of law, are immune from liability for actions taken in connection with administering arbitration." *Pfannenstiel v. Merrill Lynch, Pierce, Fenner & Smith*, 477 F.3d 1155, 1159 (10th Cir. 2007). But that is not because (and does not mean that) private arbitrators are state actors.  Rather, courts developed arbitral immunity to "protect the decision-makers from undue influence and protect the decision-making process from reprisals by dissatisfied litigants."  *Id.* at 1158; *see also, e.g.*, *Galuska v. NYSE*, 210 F.3d 374 (7th Cir. 2000) (New York Stock Exchange arbitrators entitled to immunity even though "NYSE is not a governmental actor subject to the Constitution's mandates").  *Cf. Rayburn v. Hogue*, 241 F.3d 1341, 1348 (11th Cir. 2001) ("[T]he act of extending governmental tort liability and immunity rules to foster parents does not transform the Hogues into State actors.").  So the fact that FINRA sometimes argues (sometimes successfully) that it has some form of immunity does not make it a state actor.[6]

**e.**  Judge Walker's opinion accompanying the D.C. Circuit's stay order (writing only for himself) signaled that he may conclude that FINRA officials should be subject to the Appointments Clause.  D.C. Cir. Order at 7.   Judge Walker reached this preliminary conclusion almost exclusively by analogizing FINRA hearing officers to the SEC administrative law judges (ALJs) at issue in *Lucia v. SEC*, 138 S. Ct. 2044 (2018).  There, the Supreme Court concluded

---

[6] This result is likewise consistent with decisions from multiple courts of appeals holding that, despite their important role in assisting with enforcement of the False Claims Act, "qui tam relators do not serve in any office of the United States" and thus are not subject to the Appointments Clause.  *E.g.*, *U.S. ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787, 804–05 (10th Cir. 2002).  As those cases have explained, because "[t]here is no legislatively created office of informer or relator under the [False Claims Act]," and "[r]elators are not entitled to the benefits of officeholders, such as drawing a government salary," they are not officers of the United States within the meaning of the Appointments Clause.  *Id.*; *accord Riley*, 252 F.3d at 757–58; *U.S. ex rel. Taxpayers Against Fraud v. General Electric Co.*, 41 F.3d 1032, 1041 (6th Cir. 1994); *U.S. ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 759 (9th Cir. 1993); *United States v. Halifax Hosp. Med. Ctr.*, 997 F. Supp. 2d 1272, 1278–79 (M.D. Fla. 2014).  The same is true of FINRA officials.

that the SEC's ALJs—who are unquestionably employed by the government—were officers of the United States.  *Id.* at 2049.

Judge Walker's opinion does not address the applicable test from *Lebron*, nor the Supreme Court's statements in *Free Enterprise Fund*.  And the opinion concludes that it "[p]robably" does not "make a difference that FINRA hearing officers are employees of a nominally private corporation," because FINRA's "enforcement activities are controlled by the government."  D.C. Cir. Order at 6.  Respectfully, Judge Walker's preliminary view that FINRA hearing officers' "subject[ion] to a government plan," *id.*, may be enough to render them officers of the United States is inconsistent with the constitutional requirement articulated in *Adkins* that a private regulatory entity "function subordinately" to the relevant government agency, 310 U.S. at 399.  It would be passing strange if the very doctrinal rules that ensure that entities like FINRA are *constitutional* under the private nondelegation doctrine simultaneously render them *unconstitutional* under the Appointments Clause.  Judge Walker cited no authority for that intuition—which would effectively render *Adkins* meaningless, in practice—and the government is aware of none.

## IV.    Tenure protections for FINRA officials do not violate Article II.

Plaintiffs also assert a removal claim, alleging that, "because the President cannot remove SEC commissioners without cause, and because the SEC cannot remove FINRA Board members without cause, the Board and its appointed executives and officers are unconstitutionally insulated from Presidential control and oversight" in violation of Article II of the Constitution. SAC ¶ 62; *see also id.* ¶¶ 142–51.

This claim fails for largely the same reasons as Plaintiffs' Appointments Clause claim. *See supra* at 13–18.  FINRA's Board members and hearing officers are employees of a private entity, not officers of the United States.  And again, in *Free Enterprise Fund*, the Court expressly distinguished the "removal standard" applicable to "private bodies" from the removal standard applicable to "officers wielding the executive power of the United States"—even contrasting the PCAOB with "private organizations like the New York Stock Exchange."  561 U.S. at 503.

FINRA and the New York Stock Exchange are identically situated on this issue: both are privately incorporated SROs that function subordinately to the SEC in overseeing securities markets.  Tenure protections at FINRA thus raise no constitutional concern.[7]

## V.     The statutory requirement to join an SRO does not violate the First Amendment.

Plaintiffs' First Amendment claim—that the statutory requirement to join an SRO like FINRA as a condition of engaging in the broker-dealer industry violates their right of association—is also without merit.  The Supreme Court has held that "forced associations . . . are impermissible" under the First Amendment in some circumstances where they "burden protected speech."  *Pac. Gas & Elec. Co. v. Pub. Utilities Comm'n of Cal.*, 475 U.S. 1, 12 (1986).  But the First Amendment does not protect against *any* compelled association—rather, it protects an individual's "right to eschew association *for expressive purposes*."  *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2463 (2018) (emphasis added).

The statutory requirement that a securities broker or dealer register with an SRO as a condition of participating in that industry does not alone implicate any First Amendment right.  Plaintiffs do not assert any "expressive purpose[]" for which they wish to avoid association with FINRA.  *Id.*  Plaintiffs therefore fail to allege a protected First Amendment interest.

To the extent that Plaintiffs' mandatory membership in FINRA may be considered analogous to an attorney's mandatory membership in an integrated state bar, the Supreme Court has concluded that such compelled membership does not on its own violate the First Amendment.  *See, e.g.*, *Lathrop v. Donohue*, 367 U.S. 820, 843 (1961) (holding that integrated state bar association may constitutionally require membership and dues); *see also, e.g.*, *File v. Martin*, 33 F.4th 385, 391–92 (7th Cir. 2022) (collecting cases), *cert. denied sub nom. File v.*

---

[7] Plaintiffs' Fifth and Seventh Amendment claims fail for similar reasons.  Because FINRA is "a private, non-profit Delaware corporation," *Turbeville*, 874 F.3d at 1270, it is "a private actor, not a state actor," *Desiderio*, 191 F.3d at 206, and thus is not subject to the Fifth or Seventh Amendments at all.  *See, e.g.*, *Mohlman*, 2020 WL 905269, at *6 ("Courts have held without exception that FINRA is a private entity and not a state actor."); *supra* at 17 (collecting cases).

*Hickey*, 143 S. Ct. 745 (2023) (holding constitutional the state bar's compulsory membership and mandatory membership dues); *Kaimowitz v. Fla. Bar*, 996 F.2d 1151, 1153–54 (11th Cir. 1993) (same).  The First Amendment may be implicated when the state compels payment of membership dues that are used to fund activities that are not "reasonably incurred for the purpose of regulating the . . . profession."  *Keller v. State Bar*, 496 U.S. 1, 13–14 (1990) (internal quotation marks omitted) (holding that state bar association may constitutionally use mandatory dues to fund activities "germane to th[e] goals" of "regulating the legal profession and improving the quality of legal services").[8]

Plaintiffs complain of FINRA's use of members' dues and fees to fund its operations, but it is not enough that Plaintiffs "may not want to be a part of" FINRA.  SAC ¶¶ 109–10.  Plaintiffs do not allege that FINRA has engaged in political or ideological expression—much less expressive conduct that is not "germane" to FINRA's purposes of "oversee[ing] and regulat[ing] securities firms who join its membership . . . and individuals associated with those firms."  *Turbeville*, 874 F.3d at 1270–71.  The requirement that Plaintiffs join an SRO like FINRA and pay dues as a condition of participating in this industry thus does not infringe their First Amendment right of association.  Even if it did infringe such rights, "the compelling interest in statutorily mandated FINRA membership . . . outweighs any expressive association right."  Mem. Op. at 25.

## CONCLUSION

The Court should hold that the challenged provisions of the federal securities laws are constitutional.

---

[8] To the extent that Plaintiffs may contend that the Supreme Court's decision in *Janus* implicitly overturned *Keller* and *Lathrop*, that argument is meritless.  Every appellate court to consider the question since *Janus* has concluded that *Keller* and *Lathrop* remain good law.  *See File*, 33 F.4th at 391–92 (collecting cases).

Dated: July 14, 2023                    Respectfully submitted,

                                        BRIAN M. BOYNTON
                                        Principal Deputy Assistant Attorney General

                                        LESLEY FARBY
                                        CHRISTOPHER HALL
                                        Assistant Branch Directors

                                        */s/ Stephen M. Pezzi*
                                        STEPHEN M. PEZZI (D.C. Bar. No. 995500)
                                         Senior Trial Counsel
                                        CHRISTINE L. COOGLE (D.C. Bar No. 1738913)
                                         Trial Attorney
                                        United States Department of Justice
                                        Civil Division
                                        Federal Programs Branch
                                        1100 L Street NW
                                        Washington, D.C. 20005
                                        Telephone: 202-305-8576
                                        Email: stephen.pezzi@usdoj.gov

                                        *Counsel for the United States of America*