IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| Scottsdale Capital Advisors Corporation and Alpine Securities Corporation,<br>　　　　Plaintiffs,<br>　　v.<br>Financial Industry Regulatory Authority, Inc.,<br>　　　　Defendant,<br>United States of America,<br>　　　　Intervenor Defendant. | Case No. 1:23-cv-01506-BAH<br><br>**OPPOSITION TO PLAINTIFFS' MOTION TO HOLD PROCEEDINGS IN ABEYANCE** |

Defendant Financial Industry Regulatory Authority, Inc. ("FINRA"), submits this Opposition to Plaintiffs' Motion to Hold Proceedings in Abeyance.

## I.　　ARGUMENT

Plaintiffs offer no justification for a further delay of this litigation, which has been pending for nearly a year without the completion of motion-to-dismiss briefing. *See* May 26 Minute Order (noting that "[t]his case ha[d] been pending since October 2022" before it "landed . . . on this Court's docket" with multiple unresolved motions). Under this Court's Standing Order, "[m]otions for extensions of time or for continuances of court proceedings are strongly discouraged," D.E. 81 at 4, and Plaintiffs offer nothing to rebut that presumption here. Indeed, the equities weigh strongly against Plaintiffs' request given that they waited 43 days after filing their notice of appeal (and 16 days after the D.C. Circuit's injunction order) before submitting this request to hold proceedings in abeyance, with no explanation for those delays. In the meantime, pursuant to this Court's May 30 scheduling order, FINRA has filed a comprehensive motion to dismiss Plaintiffs' Second Amended Complaint, D.E. 93, and the United States has filed a fourth memorandum of law in defense of the challenged provisions of the federal securities laws, D.E. 95. Plaintiffs

identify no reason why they should be exempted from that jointly proposed briefing schedule and permitted to sandbag their opponents by letting FINRA and the United States file on time, gaining the benefit of reading those submissions, and then belatedly seeking adjournment. Plaintiffs' unjustified delay is reason enough to deny the Motion outright. At a minimum, the Court should preserve the current briefing schedule and require all briefs to be filed in due course before ruling on Plaintiffs' belated request to hold proceedings in abeyance.

Plaintiffs' Motion should also be denied because it contradicts Alpine's own representations to this Court and the D.C. Circuit in the context of seeking a preliminary injunction. According to Alpine, the whole point of its request for a preliminary injunction prohibiting FINRA from moving forward with its expedited disciplinary proceeding against Alpine was to "afford the Court reasonable time to consider Alpine's important and credible constitutional challenges and to avoid the manufactured emergency FINRA has created." D.E. 72 at 13; *see also* D.C. Cir. Mot. for Injunction Reply at 11-12 (injunction pending appeal warranted to "permit[ ] the Courts to adjudicate Alpine's constitutional claims" before resolution of FINRA's expedited proceeding). Now that Alpine has secured an injunction *permitting* the Court's consideration of the merits of its claims before FINRA completes the expedited proceeding, *see* D.E. 94, it cannot turn around and contend that the same injunction *prohibits* this Court from deciding those issues.

Plaintiffs' request to hold proceedings in abeyance is also substantively meritless. Plaintiffs' sole purported basis for delay is Alpine's pending interlocutory appeal and a motions panel's nonbinding, nonprecedential, and unreasoned order granting an injunction pending appeal. That order—which is necessarily tentative and subject to re-evaluation after further briefing and argument, *see* D.C. Circuit Order at 4 (Walker, J., concurring)—does not pose any barrier to this Court's resolution of FINRA's pending motion to dismiss based on its own independent

2

assessment of FINRA's arguments.

Moreover, as Alpine repeatedly stressed to this Court and the D.C. Circuit, Alpine's appeal is far narrower than the case as a whole—involving only a subset of parties, a subset of the relief requested by Plaintiffs, and a subset of claims. Only Alpine (not Scottsdale) moved for injunctive relief in this Court and then the D.C. Circuit, and it sought only circumscribed relief: a preliminary injunction to halt FINRA's expedited disciplinary proceeding against Alpine. In support of its request, Alpine emphasized that it was seeking an exceptionally "narrow[ ]" injunction that the Court could grant on grounds specific to the expedited proceeding "while leaving the parties' broader . . . dispute for another day." D.E. 72 at 3; *see also* D.C. Cir. Mot. for Injunction at 16-17 (stressing that "the narrow request of *this* injunction would be to enjoin *this* Expedited Hearing" alone); D.C. Cir. Mot. for Injunction Reply at 4 n.2 ("Alpine can and did narrow its request for relief in its preliminary injunction motion"). According to Alpine, "[b]roader questions about FINRA's status more generally, or other more difficult factual contexts" outside the expedited-proceeding setting, "are not at issue" in its request for a preliminary injunction. D.E. 84 at 1.

This Court has already recognized as much, explaining that the focus of Alpine's request for a preliminary injunction "is to stall the pending Enforcement Proceeding against Alpine," whereas "plaintiffs' complaint is far more sweeping to challenge the 'unconstitutional operation and structure of FINRA.'" D.E. 88 at 12 (quoting SAC ¶ 1). In fact, the Second Amended Complaint mounts an across-the-board facial challenge to "FINRA's very existence" and the general "constitutionality of FINRA's structure and operations," raising claims that "are collateral to any administrative proceeding involving Plaintiffs" and seeking a declaration that "FINRA is presently constituted and operating in a manner that violates the Constitution." SAC ¶¶ 33, 138, Prayer for Relief. Those broader requests for relief are not before the D.C. Circuit on appeal from this Court's

denial of a preliminary injunction.

Further, the motion for an injunction pending appeal that Alpine filed in the D.C. Circuit was based on only a subset of Plaintiffs' claims: alleged violations of the separation of powers and Appointments Clause or, alternatively, the private nondelegation doctrine. *See* D.C. Cir. Mot. for Injunction at 6. Plaintiffs' Second Amended Complaint also includes three additional claims—under the First, Fifth, and Seventh Amendments—not raised in Alpine's D.C. Circuit motion. The court of appeals motions panel therefore gave no consideration to those other claims in granting an injunction pending appeal, and, if Alpine follows the same strategic course in its forthcoming D.C. Circuit opening brief, will not consider those claims when deciding the appeal on the merits, either.

Nor do Plaintiffs identify any jurisdictional barrier to this Court's resolution of FINRA's motion to dismiss, which, unlike the D.C. Circuit appeal, squarely implicates the full range of relief that both Plaintiffs request in the Second Amended Complaint. Significantly, by filing a motion requesting that this Court hold proceedings in abeyance, Plaintiffs implicitly concede that, absent such affirmative relief, proceedings in this Court can and will continue during the pendency of the D.C. Circuit appeal. That premise is correct. It is well settled in this District that the filing of an appeal "from an interlocutory order involving a preliminary injunction does not divest the district court with jurisdiction to proceed with a decision on the merits," and that the court therefore "may proceed with the merits of the [defendant's] motion to dismiss." *Jack's Canoes & Kayaks, LLC v. Nat'l Park Serv.*, 937 F. Supp. 2d 18, 26 (D.D.C. 2013); *see id.* (the filing of a notice of appeal divests jurisdiction only "'over those aspects of the case involved in the appeal'") (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam)); *Robertson v. Cartinhour*, No. 09-cv-1642, 2011 WL 13205761, at *1 (D.D.C. Feb. 25, 2011) ("As this Court

4

has previously explained, Robertson's interlocutory appeal did not divest it of jurisdiction to proceed with the merits of the case").[1]

Other courts, too, have recognized that, even after the filing of "'an appeal from an order granting or denying a preliminary injunction, a district court may nevertheless proceed to determine the action on the merits.'" *Free Speech v. Fed. Election Comm'n*, 720 F.3d 788, 791 (10th Cir. 2013) (adopting district court's analysis as the opinion of the court of appeals); *see also Nwaubani v. Grossman*, 806 F.3d 677, 679 & n.5 (1st Cir. 2015) (similar); *Zundel v. Holder*, 687 F.3d 271, 282 (6th Cir. 2012) (similar); *United States v. Price*, 688 F.2d 204, 215 (3d Cir. 1982) (similar); *Plotkin v. Pac. Tel. & Tel. Co.*, 688 F.2d 1291, 1293 (9th Cir. 1982) (similar); *Thomas v. Bd. of Ed.*, 607 F.2d 1043, 1047 n.7 (2d Cir. 1979) (similar) (citing *Ex parte Nat'l Enameling & Stamping Co.*, 201 U.S. 156, 162 (1906)). Alpine's appeal of the denial of its motion for a preliminary injunction therefore leaves intact this Court's jurisdiction over every other aspect of the case, including FINRA's pending motion to dismiss.

Plaintiffs rely on a handful of cases that they claim support their request for delay (as well as an erroneous citation to the Federal Rules of Appellate Procedure), but none is on point. *See* Mot. 1-3. *Basardh v. Gates*, 545 F.3d 1068, 1069 (D.C. Cir. 2008), involved the inverse scenario

---

[1] *See also Soc'y for Animal Rts., Inc. v. Schlesinger*, 512 F.2d 915, 918 (D.C. Cir. 1975) (per curiam) ("We assume that the case will proceed forward expeditiously in the district court despite the pendency of the § 1292(a) appeal in this court."); *Decatur Liquors, Inc. v. District of Columbia*, No. 04-cv-1971, 2005 WL 607881, at *3 (D.D.C. Mar. 16, 2005) (a court can "consider [a defendant's] Motion to Dismiss" and "issue a decision in due course" where the court's ruling on a motion for preliminary injunction is on appeal); 11A Wright & Miller, Fed. Prac. & Proc. Civ. § 2962 (3d ed.) ("An appeal from the grant or denial of a preliminary injunction does not divest the trial court of jurisdiction or prevent it from taking other steps in the litigation while the appeal is pending," and "the case may proceed to a trial on the merits"); 16 Fed. Prac. & Proc. Juris. § 3921.2 ("The desirability of prompt trial-court action in injunction cases justifies trial-court consideration even of issues that may be open in the court of appeals. A good illustration is provided by a motion to dismiss for failure to state a claim.").

of the court of appeals holding a case in abeyance on its "own docket" pending ongoing proceedings in the district court, based on unique concerns (totally inapposite to this case) about the court of appeals' potential loss of appellate jurisdiction over Guantanamo detainees' habeas petitions following the Supreme Court's then-recent decision in *Boumediene v. Bush*, 553 U.S. 723 (2008). Similarly, *Belbacha v. Bush*, 520 F.3d 452 (D.C. Cir. 2008), merely discussed other habeas proceedings delayed pending the same Supreme Court decision. *Id.* at 457. And Plaintiffs' sole D.C. Circuit citation from outside the Guantanamo habeas context, *Wagner v. Taylor*, 836 F.2d 578 (D.C. Cir. 1987), referred to a pause in district-court proceedings in a very different posture where the plaintiff evidently had "no desire to proceed" on his remaining claims "if th[e] court [of appeals] affirm[ed]" the order denying class certification. *Id.* at 583 n.17. Plaintiffs have expressed no comparable intention to abandon their claims in this Court if the D.C. Circuit concludes that Alpine is not entitled to a preliminary injunction.

As explained above, in decisions actually arising in the same posture as this litigation, the case law in both this District and other jurisdictions supports moving forward with proceedings in this Court, including the resolution of FINRA's pending motion to dismiss, while Alpine challenges the denial of a preliminary injunction on appeal.[2]

---

[2] Nor do Plaintiffs remotely provide good cause for their hypothetical request to file a *third* amended complaint in this action, *see* Mot. 4-5, prior to filing a brief in response to any of the *four* motions to dismiss filed by FINRA and the fourth memorandum of law filed by the United States. Following FINRA's first motion to dismiss, Plaintiffs obtained two extensions of time, *see* D.E. 24; D.E. 26, and then filed the First Amended Complaint on the day their opposition was due, *see* D.E. 27. One day prior to the deadline to respond to FINRA's motion to dismiss the First Amended Complaint, Plaintiffs moved for leave to file the Second Amended Complaint and sought an extension of their opposition deadline (while acknowledging that their brief was "nearly complete," D.E. 40 at 7 n.7). *See* D.E. 40; D.E. 41 at 3; D.E. 42 (order granting motion for leave to file Second Amended Complaint). On May 25—the week before Plaintiffs were due to respond to FINRA's motion to dismiss the Second Amended Complaint (D.E. 51)—Judge Scriven transferred the case to this Court, whereupon this Court on May 26 denied the motion to dismiss without prejudice and directed the parties to submit a proposed schedule for further briefing in this case. *See* May 26 Minute Order. On May 30, the parties *jointly* requested the current briefing schedule for FINRA's

## II. CONCLUSION

The Court should deny Plaintiffs' Motion to Hold Proceedings in Abeyance.

Dated: July 24, 2023

Respectfully submitted,

/s Amir C. Tayrani
Amir C. Tayrani, DC Bar No. 490994
Alex Gesch, DC Bar No. 1012422
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036-5306
T: (202) 887-3692
F: (202) 530-9645
ATayrani@gibsondunn.com
AGesch@gibsondunn.com

*Attorneys for Defendant Financial Industry Regulatory Authority, Inc.*

---

motion to dismiss the Second Amended Complaint. D.E. 67. If Plaintiffs intended to seek leave to file a third amended complaint "before filing dispositive motions briefing," Mot. 5, they should have done so before jointly proposing the current briefing schedule and certainly before remaining silent for nearly two months while FINRA and the United States prepared and filed their briefs according to the agreed-upon schedule.