**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Scottsdale Capital Advisors Corporation and Alpine Securities Corporation,<br>Plaintiffs,<br>v.<br><br>Financial Industry Regulatory Authority, Inc.,<br>Defendant,<br><br>United States of America,<br>Intervenor Defendant. | Case No. 1:23-cv-01506-BAH<br><br>**ORAL ARGUMENT REQUESTED** |

# MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES


Michael W. McConnell
Steffen N. Johnson
Paul Harold
WILSON, SONSINI,
GOODRICH & ROSATI, P.C.
1700 K Street, N.W.
Washington, D.C. 20006
T: (202) 973-8800
F: (202) 973-8899
MMcConnell@wsgr.com
SJohnson@wsgr.com
PHarold@wsgr.com

Amir C. Tayrani, DC Bar No. 490994
Alex Gesch, DC Bar No. 1012422
Amalia Reiss, DC Bar No. 241775
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
T: (202) 887-3692
F: (202) 530-9645
ATayrani@gibsondunn.com
AGesch@gibsondunn.com
AReiss@gibsondunn.com

*Attorneys for Defendant Financial Industry Regulatory Authority, Inc.*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ....................1

II. BACKGROUND ....................2

III. LEGAL STANDARD ....................15

IV. ARGUMENT ....................15

A. FINRA Is A Private Entity Not Subject To The Constitution's Appointment Or Removal Requirements (Counts 1 & 3) ....................15

1. The Constitution's Appointment And Removal Requirements Do Not Apply To Officers Of Private Entities ....................16

2. FINRA Is A Private Entity Under *Lebron* ....................20

3. The Positions Of FINRA's Board Members, Officers, And Executives Are Not "Established By Law" ....................23

B. FINRA Does Not Exercise Improperly Delegated Governmental Authority Because It Is Subject To SEC Oversight And Statutory Guidance (Counts 2, 4 & 5) ....................24

1. There Is No Vesting Clause, Take Care Clause, Or Private Nondelegation Violation Because FINRA Functions Subordinately To, And Under The Authority And Surveillance Of, The SEC (Counts 2 & 4) ....................25

2. The Exchange Act Provides A Guiding "Intelligible Principle" And Thus Does Not Improperly Delegate Legislative Power (Count 5) ....................28

C. Plaintiffs' Fifth And Seventh Amendment Claims Are Jurisdictionally Barred And Fail As A Matter Of Law (Counts 6 & 7) ....................29

1. This Court Lacks Jurisdiction Over Plaintiffs' Fifth And Seventh Amendment Claims ....................29

2. FINRA's Exercise Of Its Self-Regulatory Powers Is Not State Action ....................34

3. Plaintiffs' Fifth And Seventh Amendment Claims Fail As A Matter of Law ....................38

D. Plaintiffs Have Not Been Compelled To Forgo Their Constitutional Rights (Count 8) ....................42

V. CONCLUSION ....................45

# TABLE OF AUTHORITIES*

**Page(s)**

**Cases**


*Alpine Sec. Corp. v. FINRA*,
2021 WL 4060943 (D. Utah Sept. 7, 2021) ....................9, 11, 34

*Alpine Sec. Corp. v. FINRA*,
2023 WL 4703307 (D.C. Cir. July 5, 2023) ....................13

* *Alpine Sec. Corp. v. FINRA*,
121 F.4th 1314 (D.C. Cir. 2024) ....................2, 3, 4, 5, 6, 7, 8, 11, 12, 13, 14, 20, 23, 26, 27, 28, 35, 38, 41, 42

*Alpine Sec. Corp. v. FINRA*,
— S. Ct. —, 2025 WL 1549780 (June 2, 2025) ....................14

*Alpine Sec. Corp. v. Nat'l Sec. Clearing Corp.*,
2025 WL 901847 (D. Utah Mar. 25, 2025) ....................9, 10, 27, 29, 32

*Alpine Sec. Corp v. SEC*,
No. 2:18-cv-504 (D. Utah Nov. 5, 2024) ....................9

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999) ....................35

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................15

*Aslin v. FINRA*,
704 F.3d 475 (7th Cir. 2013) ....................26

*Atlas Roofing Co. v. OSHRC*,
430 U.S. 442 (1977) ....................41

* *Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023) ....................2, 9, 30, 31, 32, 34

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................15

*Bernstein v. Lind-Waldock & Co.*,
738 F.2d 179 (7th Cir. 1984) ....................3


* Authorities on which we chiefly rely are marked with asterisks.

*Black v. SEC*,
125 F.4th 541 (4th Cir. 2025) ....................................................................................8, 9

* *Blankenship v. FINRA*,
2024 WL 4043442 (E.D. Pa. Sept. 4, 2024) ..........................................................31, 32, 33, 34

*Blum v. Yaretsky*,
457 U.S. 991 (1982)...............................................................................................35, 38

*Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*,
531 U.S. 288 (2001)...............................................................................................37, 38

*CFTC v. Schor*,
478 U.S. 833 (1986).....................................................................................................41

*Cody v. SEC*,
693 F.3d 251 (1st Cir. 2012)........................................................................................40

*D.L. Cromwell Invs., Inc. v. NASD Regul., Inc.*,
279 F.3d 155 (2d Cir. 2002).....................................................................................21, 36

*Daniels v. Union Pac. R.R. Co.*,
480 F. Supp. 2d 191 (D.D.C. 2007) ..............................................................................22

*Dep't of Transp. v. Ass'n of Am. R.R.s*,
575 U.S. 43 (2015)...............................................................................................18, 19

*Desiderio v. NASD, Inc.*,
191 F.3d 198 (2d Cir. 1999)..................................................................................20, 21, 36

*Effex Cap., LLC v. Nat'l Futures Ass'n*,
933 F.3d 882 (7th Cir. 2019) .........................................................................................4

*Elgin v. Dep't of Treasury*,
567 U.S. 1 (2012).................................................................................................29, 30

*Epstein v. SEC*,
416 F. App'x 142 (3d Cir. 2010) ...........................................................................21, 36

*FCC v. Consumers' Rsch.*,
145 S. Ct. 2482 (2025).........................................................................................20, 25, 28

*Fiero v. FINRA*,
660 F.3d 569 (2d Cir. 2011)............................................................................................8

*First Jersey Sec., Inc. v. Bergen*,
605 F.2d 690 (3d Cir. 1979)...........................................................................................21

* *Free Enter. Fund v. PCAOB*,
561 U.S. 477 (2010)....16, 19, 21, 30

*Freytag v. Comm'r*,
501 U.S. 868 (1991)....18, 23

*Gold v. SEC*,
48 F.3d 987 (7th Cir. 1995)....37

*Graman v. NASD*,
1998 WL 294022 (D.D.C. Apr. 27, 1998)....22

*Hastings v. Judicial Conference of U.S.*,
829 F.2d 91 (D.C. Cir. 1987)....39

*Helvering v. Mitchell*,
303 U.S. 391 (1938)....40

*Herron v. Fannie Mae*,
861 F.3d 160 (D.C. Cir. 2017)....19, 34

*Huff & Puffers, LLC v. FDA*,
2025 WL 1092696 (C.D. Cal. Feb. 27, 2025)....32

*Hurry v. FINRA*,
2018 WL 3545205 (D. Ariz. Mar. 29, 2018)....9

*Jackson v. Metro. Edison Co.*,
419 U.S. 345 (1974)....37

*Jones v. SEC*,
115 F.3d 1173 (4th Cir. 1997)....21

*Keller v. State Bar of Cal.*,
496 U.S. 1 (1990)....43, 44

*Kerpen v. MWAA*,
907 F.3d 152 (4th Cir. 2018)....20

* *Kim v. FINRA*,
698 F. Supp. 3d 147 (D.D.C. 2023)....6, 21, 22, 26, 27, 35, 36

*Lathrop v. Donohue*,
367 U.S. 820 (1961)....43, 44

* *Lebron v. Nat'l R.R. Passenger Corp.*,
513 U.S. 374 (1995)....18, 19, 20, 21, 34, 35

*Lemelson v. SEC*,
2025 WL 1503815 (D.D.C. May 27, 2025)....................................31, 32

*Lowe v. NASD Regul., Inc.*,
1999 WL 1680653 (D.D.C. Dec. 14, 1999)....................................22

*Lucia v. SEC*,
585 U.S. 237 (2018)....................................17, 18, 23, 24

*Lugar v. Edmondson Oil Co.*,
457 U.S. 922 (1982)....................................34

*Lukezic v. FINRA*,
2025 WL 2305859 (D.D.C. Aug. 10, 2025) ....................................32, 33

*Manhattan Cmty. Access Corp. v. Halleck*,
587 U.S. 802 (2019)....................................34, 37

*Mansour v. Morgan Stanley*,
2025 WL 2380456 (E.D. Tex. Aug. 15, 2025) ....................................27

*Marchiano v. NASD*,
2000 WL 423810 (D.D.C. Feb. 28, 2000) ....................................22

*Marchiano v. NASD*,
134 F. Supp. 2d 90 (D.D.C. 2001)....................................22, 36

*Mathews v. Eldridge*,
424 U.S. 319 (1976)....................................40

*McCulloch v. Maryland*,
17 U.S. (4 Wheat.) 316 (1819)....................................17

*McGinn, Smith & Co. v. FINRA*,
786 F. Supp. 2d 139 (D.D.C. 2011)....................................22, 36

*Menkes v. U.S. Dep't of Homeland Sec'y*,
637 F.3d 319 (D.C. Cir. 2011)....................................44

*Millennia Hous. Mgmt. v. U.S. Dep't of Hous. & Urb. Dev.*,
— F. Supp. 3d —, 2025 WL 1222589 (N.D. Ohio Apr. 28, 2025) ....................................32

*Mohlman v. FINRA*,
2020 WL 905269 (S.D. Ohio Feb. 25, 2020)....................................21

*N.Y. Cent. Sec. Corp. v. United States*,
287 U.S. 12 (1932)....................................29

*NASD v. SEC*,
431 F.3d 803 (D.C. Cir. 2005) ....................27

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
53 F.4th 869 (5th Cir. 2022) ....................25

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
107 F.4th 415 (5th Cir. 2024) ....................19, 20, 26

*NBC v. United States*,
319 U.S. 190 (1943) ....................29

*NCRNC, LLC v. Kennedy*,
— F. Supp. 3d —, 2025 WL 1549048 (N.D.N.Y. May 30, 2025) ....................32

*Nexstar Media, Inc. Grp. v. NLRB*,
746 F. Supp. 3d 464 (N.D. Ohio 2024) ....................32

*NLRB v. Jones & Laughlin Steel Corp.*,
301 U.S. 1 (1937) ....................41

*NLRB v. Noel Canning*,
573 U.S. 513 (2014) ....................18

*North v. Smarsh, Inc.*,
160 F. Supp. 3d 63 (D.D.C. 2015) ....................22

*In re NYSE Specialists Sec. Litig.*,
503 F.3d 89 (2d Cir. 2007) ....................26

*Oceanic Steam Navigation Co. v. Stranahan*,
214 U.S. 320 (1909) ....................40

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
584 U.S. 325 (2018) ....................40, 41

*Oklahoma v. United States*,
62 F.4th 221 (6th Cir. 2023) ....................20, 25, 27

*Osborn v. Bank of U.S.*,
22 U.S. (9 Wheat.) 738 (1824) ....................17

*Passavant v. United States*,
148 U.S. 214 (1893) ....................40

*Pee Pee Pop Tr. v. FINRA*,
2019 WL 4723788 (D. Nev. Sept. 26, 2019) ....................9

*PennEast Pipeline Co. v. New Jersey*,
594 U.S. 482 (2021)....................18

*Perpetual Sec., Inc. v. Tang*,
290 F.3d 132 (2d Cir. 2002)....................21

*Pittston Co. v. United States*,
368 F.3d 385 (4th Cir. 2004) ....................25

*Pub. Invs. Arb. Bar Ass'n v. SEC*,
771 F.3d 1 (D.C. Cir. 2014)....................23

*Romero v. Colegio de Abogados de Puerto Rico*,
204 F.3d 291 (1st Cir. 2000)....................44

*S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*,
483 U.S. 522 (1987)....................35

*Saad v. SEC (Saad II)*,
873 F.3d 297 (D.C. Cir. 2017) ....................4, 23

*Saad v. SEC* (*Saad III*),
980 F.3d 103 (D.C. Cir. 2020) ....................23

*Scahill v. District of Columbia*,
909 F.3d 1177 (D.C. Cir. 2018) ....................43

*SCAP 9, LLC v. FINRA*,
2024 WL 1574348 (9th Cir. Apr. 11, 2024) ....................9

*Schweiker v. McClure*,
456 U.S. 188 (1982)....................39

*Scottsdale Cap. Advisors Corp. v. FINRA (Scottsdale I)*,
844 F.3d 414 (4th Cir. 2016) ....................8, 9, 10, 29, 31, 33

*Scottsdale Cap. Advisors Corp. v. FINRA (Scottsdale II)*,
390 F. Supp. 3d 72 (D.D.C. 2019)....................9, 15, 31

*Scottsdale Cap. Advisors Corp. v. FINRA (Scottsdale III)*,
811 F. App'x 667 (D.C. Cir. 2020)....................9, 10, 15

* *Scottsdale Cap. Advisors Corp. v. FINRA* (*Scottsdale IV*),
678 F. Supp. 3d 88 (D.D.C. 2023)....................6, 8, 12, 13, 20, 21, 22, 26, 28, 35, 36, 43, 45

*SEC v. Alpine Sec. Corp.*,
982 F.3d 68 (2d Cir. 2020)....................9

*SEC v. Jarkesy*,
603 U.S. 109 (2024)....................33, 40, 41

*Seila Law LLC v. CFPB*,
591 U.S. 197 (2020)....................18

*In re Series 7 Broker Qualification Exam Scoring Litig.*,
548 F.3d 110 (D.C. Cir. 2008)....................23, 38

*Silver v. N.Y. Stock Exch.*,
373 U.S. 341 (1963)....................3

*Sparta Surgical Corp. v. NASD*,
159 F.3d 1209 (9th Cir. 1998)....................38

*Sunshine Anthracite Coal Co. v. Adkins*,
310 U.S. 381 (1940)....................25

*Thomas v. Union Carbide Agric. Prods. Co.*,
473 U.S. 568 (1985)....................41

* *Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994)....................29, 30, 31, 32

*Trump v. United States*,
603 U.S. 593 (2024)....................24

*Turbeville v. FINRA*,
874 F.3d 1268 (11th Cir. 2017)....................39

*U.S. Inst. of Peace v. Jackson*,
— F. Supp. 3d —, 2025 WL 1428641 (D.D.C. May 19, 2025)....................17, 19

*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021)....................18

*United States v. Dorcely*,
454 F.3d 366 (D.C. Cir. 2006)....................21

*United States v. Solomon*,
509 F.2d 863 (2d Cir. 1975)....................36

*Vape Cent. Grp., LLC v. FDA*,
2025 WL 637416 (D.D.C. Feb. 27, 2025)....................32, 34

*VHS Acquisition Subsidiary No. 7 v. NLRB*,
2024 WL 4817175 (D.D.C. Nov. 17, 2024)....................32, 34

*Waffle House, Inc. v. NLRB*,
2025 WL 602744 (D.S.C. Feb. 10, 2025)....................32

*Walmsley v. FTC*,
117 F.4th 1032 (8th Cir. 2024)....................20, 27

*Whitman v. Am. Trucking Ass'ns*,
531 U.S. 457 (2001)....................25, 28

*Withrow v. Larkin*,
421 U.S. 35 (1975)....................38, 39

*YAPP USA Auto. Sys., Inc. v. NLRB*,
748 F. Supp. 3d 497 (E.D. Mich. Sept. 9, 2024)....................32

*Yates v. United States*,
574 U.S. 528 (2015)....................16

*Young Habliston v. FINRA Regul., Inc.*,
2017 WL 396580 (D.D.C. Jan. 27, 2017)....................22

**Constitutional Provisions**

U.S. Const. art. I, § 1....................25

U.S. Const. art. II, § 1....................25

U.S. Const. art. II, § 2, cl. 2....................16, 23

U.S. Const. art. II, § 3....................25

**Statutes**

15 U.S.C. § 78(b)(1)....................37

15 U.S.C. § 78c(a)(3)(B)....................41

15 U.S.C. § 78f(b)(5)....................5

15 U.S.C. § 78mm(a)(1)....................43

15 U.S.C. § 78o(a)(1)....................4

15 U.S.C. § 78o(a)(2)....................4, 42, 43

15 U.S.C. § 78o(b)(1)....................4, 42

15 U.S.C. § 78o(b)(8)....................4, 41, 42, 43, 44

15 U.S.C. § 78o(b)(9) ....................4, 42
15 U.S.C. § 78o-3(a) ....................42
15 U.S.C. § 78o-3(b)(2) ....................7
15 U.S.C. § 78o-3(b)(4) ....................4
15 U.S.C. § 78o-3(b)(6) ....................5, 28, 29, 45
15 U.S.C. § 78o-3(b)(7) ....................7
15 U.S.C. § 78o-3(b)(8) ....................7, 39
15 U.S.C. § 78o-3(h) ....................8
15 U.S.C. § 78s(a) ....................5
15 U.S.C. § 78s(b) ....................5
15 U.S.C. § 78s(b)(1) ....................7, 26, 33
15 U.S.C. § 78s(b)(2) ....................7
15 U.S.C. § 78s(c) ....................7, 26
15 U.S.C. § 78s(d)(1) ....................26
15 U.S.C. § 78s(d)(2) ....................8, 26
15 U.S.C. § 78s(e) ....................26
15 U.S.C. § 78s(g)(1) ....................5
15 U.S.C. § 78s(g)(1)(A) ....................4
15 U.S.C. § 78s(g)(1)(B) ....................4
15 U.S.C. § 78s(g)(1)(C) ....................4
15 U.S.C. § 78s(g)(2) ....................26
15 U.S.C. § 78s(h) ....................7, 26
15 U.S.C. § 78u(b) ....................8
15 U.S.C. § 78u(d) ....................8
15 U.S.C. § 78u(e) ....................8

15 U.S.C. § 78y....................33

15 U.S.C. § 78y(a)(1)....................8, 9, 29, 33

15 U.S.C. § 78y(a)(3)....................29

15 U.S.C. § 3051 *et seq.*....................5

Act of Feb. 25, 1791, ch. 10, 1 Stat. 191 ....................17

Pub. L. No. 98-38, 97 Stat. 205 (1983)....................6

**Rules**

FINRA Rule 9231 ....................8, 39

FINRA Rule 9232 ....................8, 39

FINRA Rule 9233 ....................8, 39

FINRA Rule 9234 ....................8, 39

FINRA Rule 9235 ....................24

FINRA Rule 9261 ....................8, 39

FINRA Rule 9311 ....................24

FINRA Rule 9311(b) ....................8, 11

FINRA Rule 9370(a)....................8

**Other Authorities**

4 Fed. Reg. 3564 (Aug. 9, 1939)....................6

62 Fed. Reg. 43,387 (Aug. 13, 1997)....................24

72 Fed. Reg. 42,169 (Aug. 1, 2007)....................6

90 Fed. Reg. 25,689 (June 17, 2025) ....................8

Alpine Sec. Corp.'s Brief in Support of Its Appeal from the Decision of the Nat'l Adjudicatory Council, *In the Matter of the Application of Alpine Securities Corp.*, SEC 3-22471 (July 29, 2025) ....................14, 33

Application for Review, *Alpine Sec. Corp.*, SEC 3-22471 (Apr. 7, 2025) ....................14

Aditya Bamzai, *Tenure of Office and the Treasury*,
87 Geo. Wash. L. Rev. 1299 (2019) ....................17

BrokerCheck Report: Alpine Sec. Corp. ....................10

BrokerCheck Report: Scottsdale Cap. Advisors Corp. ....................10

*In re Charles C. Fawcett IV*,
Release No. 34-56770, 2007 WL 3306105 (Nov. 8, 2007) ....................34

William O. Douglas, *Democracy and Finance* (J. Allen ed. 1940) ....................3

*Exchange Reveals Registration Data*, N.Y. Times (Oct. 2, 1934) ....................7

FINRA Board of Governors ....................7, 20

FINRA By-Laws, Art. V, § 5.3 ....................24

FINRA By-Laws, Art. VI, § 1 ....................7

FINRA By-Laws, Art. VII ....................7, 20, 24

FINRA By-Laws, Art. VIII ....................24

FINRA By-Laws, Art. VIII, § 1 ....................24

FINRA By-Laws, Art. VIII, § 3 ....................24

Frequently Asked Questions for Respondents in FINRA Disciplinary Proceedings ....................39

GAO, SEC Inspections of FINRA's Governance Were Consistent with Internal
Guidance (2018) ....................26

H.R. Doc. No. 88-95 (1963) ....................5

H.R. Rep. No. 98-106 (1983) ....................6

*The History of NYSE* ....................3

*In re John Thomas Cap. Mgmt. Grp. LLC*,
2020 WL 5291417 (SEC Sept. 4, 2020) ....................34

Jennifer L. Mascott, *Who Are "Officers of the United States"?* 70 Stan. L. Rev.
443 (2018) ....................17

Donna Nagy, *Playing Peekaboo with Constitutional Law*,
80 Notre Dame L. Rev. 975 (2005) ....................6

*In re Newport Coast Sec., Inc.*,
Release No. 34-88548, 2020 WL 1659292 (Apr. 3, 2020)....23, 24

OLC, *The Test for Determining "Officer" Status Under the Appointments Clause* (Jan. 16, 2025)....16, 20

S. Rep. No. 75-1455 (1938)....3, 4, 5

S. Rep. No. 94-75 (1975)....6

SEC Concept Release Concerning Self-Regulation, Release No. 34-50700, 69 Fed. Reg. 71,256 (Dec. 8, 2004)....3, 6, 35, 42

SEC, *Market 2000* (1994)....6

SEC, Self-Regulatory Organization Rulemaking (Nov. 7, 2024)....4

*In re Silver Leaf Partners*,
Release No. 34-102538, 2025 WL 743953 (Mar. 7, 2025)....23, 27

Marianne K. Smythe, *Government Supervised Self-Regulation in the Securities Industry and the Antitrust Laws*, 62 N.C. L. Rev. 475 (1984)....2, 7

Howard C. Westwood & Edward G. Howard, *Self-Government in the Securities Business*, 17 L. & Contemp. Probs. 518 (1952)....3

Defendant Financial Industry Regulatory Authority, Inc. ("FINRA") moves to dismiss all claims for relief asserted by Plaintiffs Scottsdale Capital Advisors Corporation ("Scottsdale") and Alpine Securities Corporation ("Alpine") in their Third Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) or 12(b)(6).

## I. INTRODUCTION

FINRA is a private, not-for-profit self-regulatory organization that regulates the professional conduct of its broker-dealer members, including Plaintiffs, and their associated persons. That regulation is conducted under the comprehensive oversight of the Securities and Exchange Commission ("SEC"). When this Court analyzed Alpine's constitutional claims against FINRA in a preliminary-injunction posture in 2023, it concluded that Alpine was unlikely to succeed on any of them. The D.C. Circuit's narrow ruling on appeal left virtually all of this Court's decision intact, reversing only as to the potential for Alpine's immediate expulsion from FINRA in an expedited proceeding prior to the opportunity for SEC review, which the D.C. Circuit held may violate the private nondelegation doctrine. FINRA has now dismissed that expedited proceeding and amended its relevant rules, but Plaintiffs' Third Amended Complaint brings essentially the same constitutional claims that this Court has already held unlikely to succeed. Because all of Plaintiffs' claims fail as a matter of law—and several of them are also beyond this Court's jurisdiction—the Court should dismiss the Complaint.

The courts have repeatedly and consistently held that constitutional challenges to FINRA's structure and procedures fail as a matter of law. Plaintiffs' claims in their Third Amended Complaint are no different: They face a host of insurmountable barriers. For example, Plaintiffs concede, as they must, that FINRA is a "private corporation," not a federal agency. Third Amended Compl. ("TAC") ¶ 153. That concession dooms Plaintiffs' claims under the Constitution's

appointments and removal requirements because FINRA's private board members, officers, and executives are not "Officers of the United States," and it forecloses a public nondelegation challenge to FINRA. Plaintiffs' private and public nondelegation claims, as well as their claims under the Vesting and Take Care Clauses, also fail because FINRA exercises its self-regulatory authority subject to the close supervision of the SEC and intelligible principles established by Congress. And this Court lacks subject matter jurisdiction over Plaintiffs' claims challenging FINRA's disciplinary procedures under the Fifth and Seventh Amendments, which are not the kind of "fundamental" challenge to a body's "very existence" that may be brought in district court under *Axon Enterprise, Inc. v. FTC*, 598 U.S. 175, 189 (2023). Regardless, those constitutional provisions do not apply to FINRA's private disciplinary proceedings. Finally, Plaintiffs' unconstitutional conditions claim fails because federal law did not compel Plaintiffs to join FINRA to act as broker-dealers—among other alternatives, they could have decided to transact securities solely on a securities exchange of which they are members or requested an exemption from the SEC. And since Plaintiffs' other constitutional claims fail, their unconstitutional conditions claim necessarily fails as well.

The Court should therefore dismiss the Third Amended Complaint in its entirety.

## II. BACKGROUND

### A. The Securities Industry's Tradition Of Self-Regulation

"[T]he securities industry in the United States has engaged in extensive self-regulation for more than two centuries," *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314, 1319 (D.C. Cir. 2024), dating back to the Philadelphia Stock Exchange's founding in 1790, *see* Marianne K. Smythe, *Government Supervised Self-Regulation in the Securities Industry and the Antitrust Laws*, 62 N.C. L. Rev. 475, 480 (1984). Nearly as old, the New York Stock Exchange "traces its origins to the Buttonwood Agreement signed by 24 stockbrokers on May 17, 1792," which responded to "the

first financial panic in the young nation" by "set[ting] rules" to "ensure that deals were conducted between trusted parties." *The History of NYSE*, https://www.nyse.com/history-of-nyse; *see also* SEC Concept Release Concerning Self-Regulation, Release No. 34-50700, 69 Fed. Reg. 71,256, 71,257 (Dec. 8, 2004) ("SEC Concept Release") (recounting self-regulation's "long tradition in the U.S. securities markets"); *Alpine*, 121 F.4th 1319-20 (summarizing history).

For most of the nation's history, "the securities industry remained largely autonomous," with private securities exchanges and other private self-regulatory organizations disciplining their members with little or no government oversight. *Alpine*, 121 F.4th at 1320. Well into the twentieth century, courts "unanimously t[ook] the attitude that exchange members, as parties to a voluntary contract with the exchange, must abide by their agreement," consistently "upholding suspensions or expulsions of stock exchange members for infractions of exchange rules." Howard C. Westwood & Edward G. Howard, *Self-Government in the Securities Business*, 17 L. & Contemp. Probs. 518, 519-21 (1952). "[H]istorically," exchanges were "treated by the courts as private clubs" and "given great latitude by the courts in disciplining errant members." *Silver v. N.Y. Stock Exch.*, 373 U.S. 341, 350-51 (1963).

### B. Congress's Preservation Of Self-Regulation

When Congress adopted the modern securities laws in the 1930s, it preserved and built upon the self-regulatory framework that "preexisted federal regulation." *Bernstein v. Lind-Waldock & Co.*, 738 F.2d 179, 186 (7th Cir. 1984). Under the Securities Exchange Act of 1934 ("Exchange Act") and the Maloney Act of 1938, Congress "[c]reat[ed] a system of 'cooperative regulation,' in which the task of regulating securities traders would 'be largely performed by representative organizations of investment bankers, dealers, and broker[s],'" with "'Government playing a residual role.'" *Alpine*, 121 F.4th at 1320 (quoting S. Rep. No. 75-1455, at 4 (1938) and William O. Douglas, *Democracy and Finance* 82 (J. Allen ed. 1940)). Pursuant to that cooperative

framework, private self-regulatory organizations continue to exercise frontline regulation over their members, with the SEC playing "a supervisory role by 'exercising appropriate supervision in the public interest.'" *Id.* (quoting S. Rep. No. 75-1455, at 4); *see also Saad v. SEC* (*Saad II*), 873 F.3d 297, 299-300 (D.C. Cir. 2017).

Today, nearly 50 different self-regulatory organizations are registered under the Exchange Act. A national securities association is one type of self-regulatory organization. The Exchange Act requires any person seeking to sell securities to join an association of broker-dealers registered as a national securities association or to associate themselves with a member, unless the person transacts securities solely on a securities exchange of which it is a member or the SEC exempts the person from membership for other reasons. *See* 15 U.S.C. § 78o(a)(1)-(2), (b)(1), (b)(8)-(9); *Alpine*, 121 F.4th at 1321 (recognizing the SEC's statutory "authority to exempt individual traders from that membership requirement").

FINRA is currently the only registered national securities association, and, like its predecessor the National Association of Securities Dealers, Inc. ("NASD"), serves as the frontline regulator for its broker-dealer member firms and for persons associated with its members. 15 U.S.C. § 78o-3(b)(4). Other categories of securities self-regulatory organizations include national securities exchanges like the New York Stock Exchange and The Nasdaq Stock Market, and registered clearing agencies like The Depository Trust Company and The Options Clearing Corporation. *Id.* § 78s(g)(1)(A), (B), (C); *see also* SEC, Self-Regulatory Organization Rulemaking (Nov. 7, 2024), https://www.sec.gov/rules/sro.shtml (identifying dozens of self-regulatory organizations overseen by the SEC). There are also self-regulatory organizations for commodity futures (overseen by the Commodity Futures Trading Commission) and other industries, including the horseracing industry (overseen by the Federal Trade Commission). *See generally Effex Cap., LLC v. Nat'l Futures*

*Ass'n*, 933 F.3d 882, 886 (7th Cir. 2019); 15 U.S.C. §§ 3051-60 (Horseracing Integrity and Safety Act of 2020, as amended).

The Exchange Act imposes extensive obligations on self-regulatory organizations. For example, each national securities exchange and national securities association must register with the SEC, submit its proposed rule changes to the SEC, and "enforce compliance" with the Exchange Act and "its own rules" by its members and persons associated with its members. 15 U.S.C. § 78s(a), (b), (g)(1). And the rules of national securities exchanges and national securities associations must be "designed to prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade," and "to protect investors and the public interest." *Id.* §§ 78f(b)(5), 78o-3(b)(6).

This statutory framework—"repeatedly amended" over nearly a century "to bolster the self-regulatory scheme," *Alpine*, 121 F.4th at 1321—reflects Congress's consistent judgment that private self-regulation of the securities industry is preferable to direct governmental regulation, which would threaten "a pronounced expansion of the organization of the Securities and Exchange Commission," with all the attendant "evils of bureaucracy." S. Rep. No. 75-1455, at 3-4 (1938). Self-regulation enforces "'ethical standards beyond those any law can establish,'" "'effectively reach[ing]'" areas that "'self-government alone'" can monitor. H.R. Doc. No. 88-95, pt. 4, at 694-95 (1963). Moreover, unlike federal regulators, self-regulatory organizations are directly accountable to their members—especially where (as with FINRA) members are empowered to select and serve on the organization's board—who "can bring to bear on the problems of regulation a degree of expertness, and in many circumstances expedition, not to be expected of a necessarily more remote governmental agency." *Id.* at 693.

Congress has repeatedly sought to "preserve[ ] and strengthen[ ]" the "self-regulatory" model. S. Rep. No. 94-75, at 23 (1975); *see Alpine*, 121 F.4th at 1321. In 1983, for example, Congress eliminated an alternative program of direct SEC regulation—called the "SEC only" program—for broker-dealers who were not members of a national securities association. *See* Pub. L. No. 98-38, § 3, 97 Stat. 205, 206-07 (1983). Congress believed that "self-regulation for all broker-dealers is preferable to direct regulation by the Commission for several reasons," including that "any attempt" to place direct SEC regulation "on a par with that provided by the NASD would require significant expenditures by the Commission for additional staff and administrative costs." H.R. Rep. No. 98-106, at 6-7 (1983). In a retrospective assessment of the program, SEC staff concluded that "'the resources necessary for the Commission to assume [self-regulatory organization] functions directly and effectively are not realistically attainable.'" SEC Concept Release, 69 Fed. Reg. at 71,267 (quoting SEC, *Market 2000*, at VI-6 (1994)).

### C. FINRA's Private Regulation Of Its Broker-Dealer Members And Associated Persons, Subject To SEC Oversight

FINRA is not part of the government; it is a private "Delaware not-for-profit corporation." TAC ¶¶ 22, 153; *see*, *e.g.*, *Alpine*, 121 F.4th at 1318, 1321; *Scottsdale Cap. Advisors Corp. v. FINRA* (*Scottsdale IV*), 678 F. Supp. 3d 88, 94-98 (D.D.C. 2023), *rev'd in part on other grounds by Alpine*, 121 F.4th 1314; *Kim v. FINRA*, 698 F. Supp. 3d 147, 157-58 (D.D.C. 2023). FINRA was formed in 2007, when its predecessor, the NASD, consolidated its regulation and enforcement functions with similar functions of the New York Stock Exchange. *See* Order Approving Proposed Rule Change to Amend the By-Laws of NASD, 72 Fed. Reg. 42,169 (Aug. 1, 2007). The NASD "owes its origins to a trade group founded in 1912," Donna Nagy, *Playing Peekaboo with Constitutional Law*, 80 Notre Dame L. Rev. 975, 1023-24 (2005), and in 1939, the SEC approved it as the first national securities association, 4 Fed. Reg. 3564 (Aug. 9, 1939). For its part, the New

York Stock Exchange was privately founded in 1792, Smythe, *supra*, at 480, and registered with the SEC in 1934, *Exchange Reveals Registration Data*, N.Y. Times (Oct. 2, 1934).

The government thus did not create FINRA or its predecessors, and it does not appoint *any* FINRA board members, officers, or employees. *See* FINRA By-Laws, Art. VII, https://tinyurl.com/3452dkn3; FINRA Board of Governors, https://tinyurl.com/yc5tr23k; TAC ¶¶ 35, 37-38, 48. FINRA is entirely "operated by private individuals" and "receives no funding from the federal government," *Alpine*, 121 F.4th at 1321; it is funded by member fees, contracting fees, and fines levied against its members. *See* FINRA By-Laws, Art. VI, § 1, https://tinyurl.com/3452dkn3; *Alpine*, 121 F.4th at 1321.

FINRA exercises its self-regulatory authority in accordance with the Exchange Act and under the SEC's close supervision. For example, the SEC reviews FINRA's proposed rules, approves them if "consistent with the requirements of [the Act]," 15 U.S.C. § 78s(b)(1), (2), and can "abrogate, add to, and delete from" those rules, *id.* § 78s(c).[1] In addition, the SEC ensures that FINRA "enforce[s] compliance" with the Exchange Act and FINRA's rules, and that it "appropriately discipline[s]" members and associated persons for violations, pursuant to rules that "provide a fair procedure for the disciplin[ary]" proceeding. *Id.* § 78o-3(b)(2), (7), (8). As discussed below, FINRA's disciplinary actions are subject to multiple levels of FINRA, SEC, and judicial review. And if FINRA does not appropriately discharge its self-regulatory responsibilities, the SEC can impose limitations on its activities or suspend or revoke its status as a self-regulatory organization, among other measures. *Id.* § 78s(h).

FINRA's disciplinary authority is also subject to other limitations. For example, FINRA has no subpoena power to secure testimony or documents from uncooperative parties or witnesses.

[1] FINRA's Rules are publicly available on FINRA's website. *See* https://www.finra.org/rules-guidance/rulebooks/finra-rules.

*See Scottsdale IV*, 678 F. Supp. 3d at 105 n.8. In addition, FINRA lacks the authority to file its own enforcement proceedings in federal court, *see* 15 U.S.C. § 78o-3(h), or to "bring court actions to collect disciplinary fines it has imposed," *Fiero v. FINRA*, 660 F.3d 569, 571 (2d Cir. 2011). By contrast, the SEC has broad statutory power to subpoena witnesses, 15 U.S.C. § 78u(b), to bring enforcement actions in federal court, *id.* § 78u(d), and to secure injunctions to compel compliance with SEC orders, *id.* § 78u(e).

**D. The Exchange Act's Exclusive Statutory Review Framework**

Consistent with FINRA's statutory mandate to provide fair disciplinary procedures, its SEC-approved rules provide multiple layers of administrative and judicial review. *See Alpine*, 121 F.4th at 1322; *Scottsdale Cap. Advisors Corp. v. FINRA* (*Scottsdale I*), 844 F.3d 414, 418 (4th Cir. 2016); 15 U.S.C. §§ 78s(d)(2), 78y(a)(1). Within FINRA, that process generally includes an evidentiary hearing before a three-person panel, two of whom are industry representatives, where respondents may introduce evidence and call and cross-examine witnesses, *e.g.*, FINRA Rules 9231-34, 9261, and an internal appeal, during which any sanction is stayed, FINRA Rule 9311(b).

After internal FINRA appeals, a respondent may file a "de novo" appeal to the SEC. *Black v. SEC*, 125 F.4th 541, 543 (4th Cir. 2025). Until recently, an appeal to the SEC "'stay[ed]'" only "sanction[s] other than a bar or an expulsion.'" *Id.* at 547 (quoting then-operative version of FINRA Rule 9370(a)). After the D.C. Circuit's decision in this case, FINRA amended its Rule 9370 to extend the automatic stay to expulsions (other than those entered in default proceedings or where the member firm has failed to exhaust its internal FINRA remedies). *See* Notice of Filing and Immediate Effectiveness of a Proposed Rule Change to Stay the Effectiveness of Specified Expulsions and FINRA Actions, 90 Fed. Reg. 25,689 (June 17, 2025).

During an appeal to the SEC, the "SEC independently determines whether the aggrieved member engaged in the conduct that served as the basis for the FINRA disciplinary sanction,

whether that conduct violated the relevant rules, and whether an application of those rules to the aggrieved member is consistent with the purposes of the Exchange Act." *Black*, 125 F.4th at 543. An aggrieved party may then petition for review of the SEC's decision in an appropriate court of appeals. 15 U.S.C. § 78y(a)(1). By enacting this "special statutory review scheme," Congress "divest[ed] district courts of their ordinary jurisdiction over the covered cases," except for a narrow category of "extraordinary" claims that "cannot receive meaningful judicial review" through the Exchange Act's framework. *Axon*, 598 U.S. at 180, 185, 195.

**E. FINRA's Investigation**

***Scottsdale and Alpine.*** Plaintiffs Scottsdale and Alpine are broker-dealer members of FINRA. TAC ¶¶ 19-20. They are two of "a large number of businesses" owned and operated by John Hurry that specialize in the penny stock (or microcap) market. *Hurry v. FINRA*, 2018 WL 3545205, at *1 (D. Ariz. Mar. 29, 2018), *aff'd*, 782 F. App'x 600 (9th Cir. 2019); *see also* TAC ¶¶ 75, 92. Plaintiffs and other Hurry-affiliated businesses are repeat federal-court litigants against FINRA (which they have now sued seven times since 2014) and the SEC (which they have sued once and been sued by twice). In every one of those suits to reach a final decision, the courts have ruled in favor of FINRA (or the SEC) and against Plaintiffs (or their affiliated companies).[2]

[2] *See Hurry*, 782 F. App'x 600 (affirming judgment for FINRA), *cert. denied*, 140 S. Ct. 2668 (2020); *Scottsdale I*, 844 F.3d 414 (affirming dismissal of Scottsdale's complaint), *cert. denied*, 137 S. Ct. 1838 (2017); *Scottsdale Cap. Advisors Corp. v. FINRA* (*Scottsdale II*), 390 F. Supp. 3d 72, 75 (D.D.C. 2019) (dismissing Scottsdale's complaint), *aff'd*, *Scottsdale Cap. Advisors Corp. v. FINRA* (*Scottsdale III*), 811 F. App'x 667 (D.C. Cir. 2020); *Pee Pee Pop Tr. v. FINRA*, 2019 WL 4723788 (D. Nev. Sept. 26, 2019) (dismissing affiliated company's complaint); *Alpine Sec. Corp. v. FINRA*, 2021 WL 4060943 (D. Utah Sept. 7, 2021) (dismissing Alpine's complaint); *SCAP 9, LLC v. FINRA*, 2024 WL 1574348 (9th Cir. Apr. 11, 2024) (affirming dismissal of affiliated company's complaint with prejudice); *SEC v. Alpine Sec. Corp.*, 982 F.3d 68 (2d Cir. 2020) (affirming judgment for SEC imposing $12 million penalty), *cert. denied*, 142 S. Ct. 461 (2021); Order, *Alpine Sec. Corp v. SEC*, No. 2:18-cv-504 (D. Utah Nov. 5, 2024) (dismissing Alpine's complaint); *SEC v. Alpine Sec. Corp.*, No. 2:22-cv-1279 (D. Nev.) (parties' summary judgment motions pending); *see also Alpine Sec. Corp. v. Nat'l Sec. Clearing Corp.*, 2025 WL 901847, at *7 (D. Utah Mar. 25, 2025) (dismissing Alpine's complaint against two clearing-agency self-

FINRA has disciplined Scottsdale several times for rule violations involving penny stocks, including a 2011 settlement in which Scottsdale agreed to a censure and a fine of $125,000. BrokerCheck Report: Scottsdale Cap. Advisors Corp. at 33-35, https://tinyurl.com/5n8e5a8j. In 2015, FINRA brought another disciplinary action against Scottsdale and its principals, alleging, among other things, that the firm engaged in sales of unregistered, non-exempt penny-stock securities in violation of FINRA rules and the Securities Act of 1933. In response, Scottsdale filed lawsuits in federal district court in Maryland in 2016 and the District of Columbia in 2018, alleging that FINRA's disciplinary action exceeded its regulatory authority under the Exchange Act and FINRA rules. The Fourth and D.C. Circuits affirmed both district courts' dismissals, holding that the Exchange Act's exclusive review framework divested the district courts of subject matter jurisdiction over Scottsdale's claims. *Scottsdale I*, 844 F.3d at 424; *Scottsdale III*, 811 F. App'x at 668. The SEC, acting pursuant to the Exchange Act's administrative-review process, affirmed FINRA's authority to bring the disciplinary action at issue, but ultimately set aside the sanctions imposed in that action. *See* TAC ¶ 95.

FINRA has also disciplined Alpine multiple times for violating FINRA rules. *See* BrokerCheck Report: Alpine Sec. Corp. at 16-104, https://tinyurl.com/a66pjur2. In 2019, FINRA's Department of Enforcement brought a disciplinary proceeding alleging that Alpine stole millions of dollars from its customers by means of excessive fees and conversion of customer securities in violation of FINRA rules. Alpine responded by filing suit in federal district court in Utah to enjoin the proceeding, alleging, among other things, that FINRA violated constitutional due process by denying Alpine a fair hearing. As in Scottsdale's suits against FINRA, the district court dismissed the complaint, holding that the Exchange Act divested the court of subject matter jurisdiction

regulatory organizations), *on appeal* No. 25-4050 (10th Cir.).

because the Exchange Act "provides the exclusive appellate process for all decisions related to the outcome of Alpine's disciplinary hearing." *Alpine Sec. Corp. v. FINRA*, 2021 WL 4060943, at *6 (D. Utah Sept. 7, 2021).

The FINRA disciplinary proceeding therefore moved forward. In March 2022, the Hearing Panel found that Alpine engaged in "intentional and egregious" misconduct, including that Alpine "converted [*i.e.*, stole] and misused customer funds and securities, engaged in unauthorized trading," charged unreasonable fees, and "made an unauthorized capital withdrawal." Extended Hearing Panel Decision, Disciplinary Proceeding No. 2019061232601 (D.E. 70-1), at 1, 78 (Mar. 22, 2022), https://tinyurl.com/36hkzu2p. Based on that pervasive misconduct and a "high[ ] likel[ihood]" of future violations, the panel found that "expulsion is an appropriate sanction and the only alternative for protecting the investing public." *Id.* at 78. The panel also imposed a permanent cease-and-desist order to prevent further public harm. *Id.* at 84-85; *see also Alpine*, 121 F.4th at 1322-23.

Although the panel's expulsion order was automatically stayed pending Alpine's appeal within FINRA, its cease-and-desist order remained in force and binding on Alpine. *See* FINRA Rule 9311(b). Alpine nevertheless failed to comply with that order. FINRA's Department of Enforcement received reports of violations from customers and conducted an investigation over several months involving more than a dozen document requests directed at Alpine and on-the-record interviews of eight Alpine employees. The investigation showed that Alpine had violated the cease-and-desist order more than 35,000 times by charging customers millions of dollars in unreasonable, unfair, and unlawful fees and commissions. The Department of Enforcement therefore initiated an expedited disciplinary proceeding in April 2023 to expel Alpine from FINRA

membership, halt Alpine's ongoing misconduct, and obtain restitution for Alpine's customers. *See* D.E. 70-2; *see also Alpine*, 121 F.4th at 1323.

***This Litigation.*** Months earlier—while FINRA's investigation that culminated in the expedited proceeding was ongoing—Plaintiffs filed their initial Complaint in this matter in the Middle District of Florida. *See* D.E. 1. Plaintiffs have since amended their Complaint three times. *See* D.E. 27, D.E. 43, D.E. 106. The United States intervened to defend the constitutionality of the statutory provisions challenged by Plaintiffs. *See* D.E. 28.

After FINRA commenced the expedited disciplinary proceeding, Alpine filed an emergency motion for a preliminary injunction to prevent that proceeding from moving forward. *See* D.E. 45. Following expedited briefing and a hearing, the judge in the Middle District of Florida ordered the case transferred to this Court under 28 U.S.C. § 1404(a). *See* D.E. 62. After this Court denied all pending motions without prejudice, Alpine filed a renewed motion for preliminary injunction and added an alternative request for a temporary restraining order. *See* D.E. 66.

Following a hearing, this Court denied Alpine's motion for a preliminary injunction or temporary restraining order, concluding that Plaintiffs' "multitude of critiques of FINRA throughout their complaint as disgruntled members . . . fall far short of amounting to likely sustainable constitutional challenges to the structure and processes of FINRA." *Scottsdale IV*, 678 F. Supp. 3d at 101. Specifically, the Court held that "FINRA is likely not a state actor" because "the facts of FINRA's creation, operation, and oversight structure do not indicate state actor status," and that Plaintiffs are "unlikely to succeed" in establishing that FINRA's disciplinary proceedings are a "'traditional [and] exclusive public function'" sufficient to generate state action because "the role of regulating industry members has always fallen to" private entities. *Id.* at 101, 103 & n.6. Those

deficiencies would likely foreclose Plaintiffs' claims under the "separation of powers, Appointments Clause, Fifth Amendment, and Seventh Amendment." *Id.* at 106.

The Court further ruled that Plaintiffs' "private nondelegation doctrine claim is unlikely to succeed"—consistent with the holdings of "every court to consider the issue"—because FINRA's "authority is subordinate to the SEC[]." *Scottsdale IV*, 678 F. Supp. 3d at 106, 107 & n.9 (noting that the Complaint also alluded to a public nondelegation claim, which would likely fail because "Congress delineated specific objectives that SROs should strive to accomplish, providing an 'intelligible principle'"). Finally, the Court ruled that Plaintiffs are unlikely to succeed on their First Amendment claim because "the compelling interest" in requiring membership in a registered national securities association "outweighs any expressive association right[s]." *Id.* at 108.

Alpine filed an interlocutory appeal and moved for an injunction pending appeal. A divided motions panel of the D.C. Circuit granted that request, enjoining FINRA from continuing the expedited proceeding pending further order of the court. *See Alpine Sec. Corp. v. FINRA*, 2023 WL 4703307 (D.C. Cir. July 5, 2023).

The D.C. Circuit reversed this Court's denial of the motion for preliminary injunction "only to the extent the district court allowed FINRA to expel Alpine with no opportunity for SEC review." *Alpine*, 121 F.4th at 1319. In a "narrow and limited" opinion, the court held that Alpine was likely to succeed on its claim that its immediately effective expulsion from FINRA, before "the SEC has reviewed any expulsion order . . . or the time for Alpine to seek SEC review of an expulsion order has elapsed," would violate the private nondelegation doctrine. *Id.* at 1330, 1331. The court further concluded that Alpine had demonstrated it faced irreparable harm to the extent that "it faces a grave risk of being forced out of business before full SEC review." *Id.* at 1329. The D.C. Circuit also held, however, that Alpine was not entitled to broader injunctive relief

preventing FINRA from moving forward with its expedited proceeding. The court reasoned that the private nondelegation doctrine likely is not violated when FINRA "enforces its own private rules against a member and seeks remedies against that member that run only to FINRA, and not to the government," and that Alpine had "not demonstrated that it will suffer irreparable harm from participating in the expedited proceeding itself." *Id.* at 1319, 1328 (emphasis omitted).

Alpine petitioned for a writ of certiorari, which the Supreme Court denied. *See Alpine Sec. Corp. v. FINRA*, — S. Ct. —, 2025 WL 1549780 (June 2, 2025).

***Further FINRA and SEC Proceedings.*** On March 25, 2025, FINRA's National Adjudicatory Council issued its final decision in Alpine's appeal, affirming the Hearing Panel Decision expelling Alpine from FINRA membership but staying the expulsion pending SEC review. *See* TAC ¶ 106; Nat'l Adjudicatory Council Decision, *In re Alpine Sec. Corp.*, FINRA Compl. No. 2019061232601 (Mar. 25, 2025), https://tinyurl.com/yt77z5xm. Alpine thereafter sought review of that decision by the SEC, where it is raising the same appointment, removal, private nondelegation, and Fifth and Seventh Amendment arguments as in this Court. *See* Application for Review, *Alpine Sec. Corp.*, SEC 3-22471 (Apr. 7, 2025), https://tinyurl.com/5cmhtwm3; Alpine Sec. Corp.'s Brief in Support of Its Appeal from the Decision of the Nat'l Adjudicatory Council at 39-49, *In the Matter of the Application of Alpine Securities Corp.*, SEC 3-22471 (July 29, 2025) ("Alpine SEC Br."), https://tinyurl.com/864r7zcv. Separately, on June 11, 2025, FINRA voluntarily dismissed without prejudice the expedited proceeding against Alpine. *See* TAC ¶ 107.

***Third Amended Complaint.*** Plaintiffs' Third Amended Complaint renews their challenge to the allegedly "unconstitutional structure and operations of FINRA." TAC ¶ 1. Plaintiffs bring eight claims, alleging violations of: (1) the President's removal authority; (2) the Executive Vesting and Take Care Clauses; (3) the Appointments Clause; (4) the private nondelegation doctrine;

(5) the public nondelegation doctrine; (6) the Fifth Amendment; (7) the Seventh Amendment; and (8) the unconstitutional conditions doctrine. *See* TAC ¶¶ 124-79.

## III. LEGAL STANDARD

Federal courts are courts of limited jurisdiction, and the law presumes that "a cause lies outside this limited jurisdiction." *Scottsdale Cap. Advisors Corp. v. FINRA* (*Scottsdale II*), 390 F. Supp. 3d 72, 78 (D.D.C. 2019), *aff'd*, *Scottsdale III*, 811 F. App'x at 667 (internal quotation marks omitted). To defeat dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the plaintiff "must show 'by a preponderance of the evidence that the Court has subject matter jurisdiction.'" *Id.* (citation omitted).

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. A court need not accept as true legal conclusions set forth in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. ARGUMENT

This Court has already held that Plaintiffs are unlikely to succeed on the merits of their claims. Nothing in the D.C. Circuit's opinion—which ordered preliminary-injunctive relief only as to an immediate expulsion sanction that is no longer at issue—undermines that conclusion.

### A. FINRA Is A Private Entity Not Subject To The Constitution's Appointment Or Removal Requirements (Counts 1 & 3).

To state viable claims under the Constitution's appointment and removal requirements, Plaintiffs must adequately allege that, although incorporated as a private corporation, FINRA is actually a government agency or instrumentality subject to *all* of the Constitution's requirements,

including its structural requirements. Plaintiffs plead no such allegations. Instead, they repeatedly concede FINRA's private status, *e.g.*, TAC ¶¶ 5, 14, 153, 157, while contending that FINRA's officers are nevertheless subject to Article II because they allegedly exercise significant executive power when carrying out FINRA's self-regulatory responsibilities, *id.* ¶¶ 129, 143. But the Constitution's text, its original understanding, historical practice, and precedent all foreclose the notion that the Constitution's appointment and removal requirements apply to private parties. Plaintiffs' appointment and removal claims must be dismissed with prejudice.

**1. The Constitution's Appointment And Removal Requirements Do Not Apply To Officers Of Private Entities.**

Under the Appointments Clause, the President "shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all *other* Officers of the United States" who hold principal offices "established by Law." U.S. Const. art. II, § 2, cl. 2 (emphasis added). Each listed example is a federal government official, confirming that the final catchall phrase also refers to officials employed by the federal government. *See Yates v. United States*, 574 U.S. 528, 543-46 (2015) (plurality) (explaining *noscitur a sociis* and *ejusdem generis*). Thus, as the Office of Legal Counsel has explained, the Appointments Clause does not apply to officers of a private entity unless that nominally private entity is actually "part of the government." OLC, *The Test for Determining "Officer" Status Under the Appointments Clause* 7 (Jan. 16, 2025), https://www.justice.gov/olc/media/1385406/dl. And the President's removal power—implicit in Article II and the separation of powers—is similarly limited to "executive officers," whom the President is "empower[ed]" to keep "accountable[ ] by removing them." *Free Enter. Fund v. PCAOB*, 561 U.S. 477, 483 (2010). In short, "the President's exercise of any unilateral removal authority is limited to Executive branch officers, a principle confirmed in every removal power case decided by the

Supreme Court." *U.S. Inst. of Peace v. Jackson*, — F. Supp. 3d —, 2025 WL 1428641, at *13 (D.D.C. May 19, 2025).

Founding-era sources and scholarship analyzing the Constitution's original meaning confirm that "'Officers of the United States'" refers only to "federal civil officials." *Lucia v. SEC*, 585 U.S. 237, 253 (2018) (Thomas, J., concurring) (citing Jennifer L. Mascott, *Who Are "Officers of the United States"?* 70 Stan. L. Rev. 443, 564 (2018)). Founding-era "evidence suggests that 'of the United States' in the Appointments Clause . . . is a descriptive phrase indicating that the officers are *federal*, and not state or *private*, actors." Mascott, *supra*, at 471 (emphases added).

Historical practice confirms this point. When the First Congress created the Bank of the United States, *see* Act of Feb. 25, 1791, ch. 10, 1 Stat. 191, "numerous individuals involved with its operation," including its directors, "were not appointed in accordance with Article II[ ]," Mascott, *supra*, at 531, even though the Bank exercised delegated federal powers as "an instrument of the government for fiscal purposes," *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 396 (1819). The "probable explanation is that Congress saw the bank" as a "nongovernmental entity" not subject to Article II. Mascott, *supra*, at 531. Similarly, Chief Justice Marshall wrote for the Court regarding the Second Bank of the United States—for which the President appointed only five of twenty-five directors, *see* Aditya Bamzai, *Tenure of Office and the Treasury*, 87 Geo. Wash. L. Rev. 1299, 1343 (2019)—that "[i]t will not be contended, that the directors, or other officers of the Bank, are officers of government." *Osborn v. Bank of U.S.*, 22 U.S. (9 Wheat.) 738, 866-67 (1824).

The Bank therefore "stands as good evidence that the delegation of certain functions by the federal government to nominally private—though heavily regulated—entities does not necessarily violate the separation of powers." Bamzai, *supra*, at 1384. The Supreme Court has explained in

closely related contexts that "[t]he First Congress's recognition" of a practice's validity "'provides contemporaneous and weighty evidence of the Constitution's meaning,'" *Seila Law LLC v. CFPB*, 591 U.S. 197, 214 (2020), as does a later "'long settled and established practice,'" *NLRB v. Noel Canning*, 573 U.S. 513, 524 (2014) (alteration omitted). Both exist here.[3]

Consistent with constitutional text, original understanding, and historical practice, the Supreme Court has applied the Appointments Clause *only* to "'Officers of the United States,' a class of government officials" employed by the federal government. *Lucia*, 585 U.S. at 241 (SEC ALJs); *see also Freytag v. Comm'r*, 501 U.S. 868, 882 (1991) (Tax Court special trial judges); *United States v. Arthrex, Inc.*, 594 U.S. 1, 23 (2021) (Patent Trial and Appeal Board administrative patent judges). At the same time, the Court has also made clear that labels are "not dispositive" of an entity's "status as a governmental entity for purposes of separation of powers analysis." *Dep't of Transp. v. Ass'n of Am. R.R.s*, 575 U.S. 43, 51 (2015). Courts must instead undertake an "independent inquiry into [the entity's] status under the Constitution," based on "practical reality," *id.* at 51, 55, to determine "whether it is *in fact* a private entity," *Lebron v. Nat'l R.R. Passenger Corp.*, 513 U.S. 374, 382 (1995).

In *Lebron*, the Supreme Court recognized a narrow, exceptional category of nominally private corporations—there, Amtrak—that are actually "part of the Government," and thus subject to the Constitution, because the government "create[d]" the corporation "for the furtherance of governmental objectives" and "retains for itself permanent authority to appoint a majority of the directors." 513 U.S. at 397, 399. The D.C. Circuit has distilled *Lebron*'s holding into a "three-part standard" for determining who is "a government actor for constitutional purposes": A nominally

[3] *See also*, *e.g.*, *PennEast Pipeline Co. v. New Jersey*, 594 U.S. 482, 495, 497 (2021) ("as long as the eminent domain power has been exercised by the United States, it has also been delegated to private parties," and the courts have "approved of that practice").

private corporation is actually "'part of the Government'" when "'[(1)] the Government creates [the] corporation by special law, [(2)] for the furtherance of governmental objectives, and [(3)] retains for itself permanent authority to appoint a majority of the directors of that corporation.'" *Herron v. Fannie Mae*, 861 F.3d 160, 167-68 (D.C. Cir. 2017) (alterations in original). Applying that standard, *Herron* concluded that Fannie Mae is not part of the government because, unlike Amtrak, it satisfies only "the first two *Lebron* criteria." *Id.* at 167-69.

*Lebron* thus governs whether the Constitution's appointment and removal requirements apply to private companies. *See Free Enter. Fund*, 561 U.S. at 485-86 (applying the Constitution's removal requirements to the Public Company Accounting Oversight Board ("PCAOB"), a nominally private, "Government-created" entity whose members are appointed by the SEC, because "the parties agree[d] that the Board is 'part of the Government' for constitutional purposes" and that "its members are 'Officers of the United States'" (quoting *Lebron*, 513 U.S. at 397)); *U.S. Inst. of Peace*, 2025 WL 1428641, at *19 ("[*Lebron*'s] same three-factor inquiry applies to constitutional separation-of-powers questions.").

Neither the Supreme Court nor *any other* appellate court has ever sustained an appointment or removal challenge to an entity that qualified as private under *Lebron*. And for good reason: the *Lebron* test distinguishes "Officers of the United States," who are subject to the Constitution's appointment and removal requirements, from officers of a private company, who are not. *See Ass'n of Am. R.R.s*, 575 U.S. at 55 (identifying potential Appointments Clause issue to be addressed on remand given Amtrak's status as "a governmental entity, *not a private one*," under *Lebron* (emphasis added)); *see also Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 107 F.4th 415, 437-39 (5th Cir. 2024) (holding that the Horseracing Integrity and Safety Authority, a private self-regulatory organization for the horseracing industry, is not subject to the

Appointments Clause because it is not part of the government under *Lebron*), *vacated and remanded*, No. 24-433, — S. Ct. —, 2025 WL 1787684 (June 30, 2025); *Walmsley v. FTC*, 117 F.4th 1032, 1041 (8th Cir. 2024) (same), *vacated and remanded*, No. 24-420, — S. Ct. —_, 2025 WL 1789398 (June 30, 2025); *Kerpen v. MWAA*, 907 F.3d 152, 158-60 (4th Cir. 2018) (plaintiffs' "failure to meet the threshold of establishing [the Metropolitan Washington Airports Authority] as a federal entity" under *Lebron* was "fatal to their claims under the Appointments Clause"); OLC, *supra*, at 8 (approving *Kerpen*'s "correct[]" holding).[4]

### 2. FINRA Is A Private Entity Under *Lebron*.

Because FINRA is not part of the federal government under *Lebron*, the Constitution's appointment and removal requirements do not apply to its board members, officers, or executives. *See Scottsdale IV*, 678 F. Supp. 3d at 106 ("Since FINRA is unlikely to be a state actor, plaintiff's separation of powers [and] Appointments Clause . . . claims are . . . likely foreclosed.").

Plaintiffs' allegations do not meet the stringent criteria for treating FINRA—which they concede is a "private corporation," TAC ¶ 153—as part of the government under *Lebron*. FINRA does not possess *any* of Amtrak's unusual characteristics: The government did not create FINRA, *see Alpine*, 121 F.4th at 1321; *supra* at 6-7; does not appoint a single member of its board, *see* FINRA By-Laws, Art. VII, https://tinyurl.com/3452dkn3; FINRA Board of Governors, https://tinyurl.com/yc5tr23k; and does not fund or otherwise control it, *see Alpine*, 121 F.4th at 1321; *see also Scottsdale IV*, 678 F. Supp. 3d at 103; *Desiderio v. NASD, Inc.*, 191 F.3d 198, 206-07 (2d Cir.

[4] On June 30, 2025, the U.S. Supreme Court granted petitions for writs of certiorari in *Black* and *Walmsley*—as well as *Oklahoma v. United States*, 62 F.4th 221 (6th Cir. 2023), *vacated and remanded*, No. 23-402, — S. Ct. —, 2025 WL 1787679 (June 30, 2025)—vacated the opinions, and remanded the cases for further consideration in light of the Court's opinion in *FCC v. Consumers' Research*, 145 S. Ct. 2482 (2025), which rejected a nondelegation challenge to a private entity's delegated federal responsibilities.

1999) (discussing FINRA's predecessor NASD). Thus, "*Lebron* is clearly distinguishable" because there "is no commonality between [FINRA] and Amtrak." *Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 138 (2d Cir. 2002) (discussing NASD).

In *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), the Supreme Court highlighted the stark differences between "Government-created, Government-appointed" entities like the PCAOB and Amtrak, on the one hand, and FINRA and other "*private* self-regulatory organizations in the securities industry[,] such as the New York Stock Exchange," on the other. *Id.* at 484-85 (emphasis added). As the Court recognized, only the former are "'part of the Government' for constitutional purposes." *Id.* at 486 (quoting *Lebron*, 513 U.S. at 397). Such "'carefully considered language of the Supreme Court, even if technically dictum, generally must be treated as authoritative.'" *United States v. Dorcely*, 454 F.3d 366, 375 (D.C. Cir. 2006).

Courts nationwide agree with this Court's earlier, preliminary determination that FINRA, like its predecessor the NASD, "is a private actor," not the government. *Desiderio*, 191 F.3d at 206-07; *see also D.L. Cromwell Invs., Inc. v. NASD Regul., Inc.*, 279 F.3d 155, 162 (2d Cir. 2002) ("It has been found, repeatedly, that the NASD itself is not a government functionary."); *Scottsdale IV*, 678 F. Supp. 3d at 104 (noting Plaintiffs' concession that "no court has yet to hold that FINRA is a state actor"). Indeed, "every court to have considered this state actor argument" as to FINRA or the NASD "has rejected it." *Kim*, 698 F. Supp. 3d at 161.[5]

[5] *See also*, *e.g.*, *Mohlman v. FINRA*, 2020 WL 905269, at *6 (S.D. Ohio Feb. 25, 2020) (Ohio state constitutional claim; "Courts have held without exception that FINRA is a private entity and not a state actor." (collecting cases)), *aff'd*, 977 F.3d 556 (6th Cir. 2020); *Jones v. SEC*, 115 F.3d 1173, 1183 (4th Cir. 1997) (Fifth Amendment claim; agreeing with the SEC that "NASD is a private party and not a governmental agent"); *First Jersey Sec., Inc. v. Bergen*, 605 F.2d 690, 698 (3d Cir. 1979) (Due process claim; holding that NASD was not a state agency and explaining that "Congress preferred self-regulation by a private body over direct involvement of a governmental agency"); *Epstein v. SEC*, 416 F. App'x 142, 148 (3d Cir. 2010) (Due process claim; "Epstein cannot bring a constitutional due process claim against the NASD, because '[t]he NASD is a private actor, not a state actor.'" (alteration in original)).

This extensive body of case law includes numerous decisions from this District. This Court previously recognized that "the facts of FINRA's creation, operation, and oversight structure do not indicate state actor status." *Scottsdale IV*, 678 F. Supp. 3d at 103. Similarly, in *Kim*, Judge Reyes concluded that "the government *does not* control FINRA" and that the plaintiff there thus did not show "that FINRA is a state actor, which 'clearly requires permanent government control.'" 698 F. Supp. 3d at 154.

Likewise, in *McGinn, Smith & Co. v. FINRA*, 786 F. Supp. 2d 139 (D.D.C. 2011), Judge Kollar-Kotelly, analyzing Fifth Amendment claims, explained that "[c]ourts have repeatedly held that FINRA is a private entity and not a government functionary." *Id.* at 147. And in *Graman v. NASD*, 1998 WL 294022 (D.D.C. Apr. 27, 1998), Judge Robertson similarly rejected due-process arguments against the NASD, holding that (1) the NASD "was not created by statute," (2) "[n]one of its directors or executives are government officials or appointees," (3) "[i]t receives no funding from any government, federal or state," and (4) "[e]very court that has considered the question has concluded that NASD is not a governmental actor." *Id.* at *2-3. At least five additional decisions in this District agree that FINRA, or its predecessor the NASD, is not part of the government.[6]

---

[6] *See*, *e.g.*, *Young Habliston v. FINRA Regul., Inc.*, 2017 WL 396580, at *5 n.9 (D.D.C. Jan. 27, 2017) ("Courts in this jurisdiction have already determined that FINRA and FINRA Regulation, or their predecessors NASD and NASD Regulation, are not 'state actors' for purposes of a section 1983 claim." (collecting cases)); *North v. Smarsh, Inc.*, 160 F. Supp. 3d 63, 78 (D.D.C. 2015) ("FINRA disciplinary proceedings are not 'federal agency proceedings.'" (citation omitted)); *Marchiano v. NASD*, 134 F. Supp. 2d 90, 95 (D.D.C. 2001) ("[E]very court that has addressed those issues has rejected Marchiano's arguments" that NASD is a state actor. (collecting cases)); *Marchiano v. NASD*, 2000 WL 423810, at *2 (D.D.C. Feb. 28, 2000) (denying motion for temporary restraining order based on Fifth Amendment self-incrimination claim because "every district and appeals court that has ruled on this issue has held that the NASD is not a state actor"); *Lowe v. NASD Regul., Inc.*, 1999 WL 1680653, at *4 (D.D.C. Dec. 14, 1999) ("NASD is not a governmental agency"); *see also Daniels v. Union Pac. R.R. Co.*, 480 F. Supp. 2d 191, 197 (D.D.C. 2007) (concluding that Union Pacific was not a state actor by analogy to cases involving NASD, requiring dismissal of plaintiffs' claims, "which all derive from the Fifth Amendment"), *aff'd*, 530 F.3d 936 (D.C. Cir. 2008).

These decisions are in keeping with the D.C. Circuit's repeated recognition that FINRA, like its predecessor the NASD, is "a *private* organization," and that the "Exchange Act of 1934 authorizes the Commission to delegate 'certain governmental functions to *private* self-regulatory organizations.'" *Pub. Invs. Arb. Bar Ass'n v. SEC*, 771 F.3d 1, 2 (D.C. Cir. 2014) (quoting *In re Series 7 Broker Qualification Exam Scoring Litig.*, 548 F.3d 110, 114 (D.C. Cir. 2008)) (emphases added; alterations omitted); *see also*, *e.g.*, *Alpine*, 121 F.4th at 1318 ("Today, a private corporation, [FINRA], regulates and oversees large parts of the securities industry."); *Saad v. SEC* (*Saad III*), 980 F.3d 103, 104 (D.C. Cir. 2020) ("'FINRA is a private self-regulatory organization that oversees the securities industry, including broker-dealers.'" (quoting *Saad II*, 873 F.3d at 299)). And the SEC has been equally clear that FINRA and other self-regulatory organizations are not government bodies subject to the Constitution's appointment and removal requirements. *See*, *e.g.*, *In re Silver Leaf Partners*, Release No. 34-102538, 2025 WL 743953, at *11 (Mar. 7, 2025) ("As a private entity . . . FINRA's processes for hiring or selecting its personnel . . . are not subject to the Appointments Clause."); *In re Newport Coast Sec., Inc.*, Release No. 34-88548, 2020 WL 1659292, at *17-19 (Apr. 3, 2020) (same).

### 3. The Positions Of FINRA's Board Members, Officers, And Executives Are Not "Established By Law."

Even if Plaintiffs could show that FINRA is part of the federal government, their appointment and removal claims would still fail because FINRA's board members, officers, and executives do not hold positions "established by Law." U.S. Const. art. II, § 2, cl. 2. Unlike the SEC administrative law judges in *Lucia* and the Tax Court special trial judges in *Freytag*, neither the "office" nor the "duties, salary, and means of appointment" of FINRA board members, officers, or executives are "specified by statute." 501 U.S. at 881; *Lucia*, 585 U.S. at 247 ("[T]he commission's ALJs, like the Tax Court's STJs, hold a continuing office established by law" and receive a

career appointment "to a position created by statute"); *see also Trump v. United States*, 603 U.S. 593, 645 (2024) (Thomas, J., concurring) ("'established by law' refers to an office that Congress creates 'by statute'"). FINRA itself created the Office of Hearing Officers and National Adjudicatory Council and hires employees or appoints members to serve in those roles. *See* FINRA Rules 9235, 9311; FINRA By-Laws, Art. VIII, §§ 1, 3, bit.ly/41MMgN5, https://tinyurl.com/3452dkn3; FINRA By-Laws, Art. V, § 5.3, https://tinyurl.com/4zp6vawu; SEC, Order Approving Proposed Rule Change, Release No. 34-38908, 62 Fed. Reg. 43,385, 43,387 (Aug. 13, 1997) ("NASD Regulation has established an Office of Hearing Officers as an independent office within NASD Regulation."); TAC ¶¶ 35, 37-38, 58. And the authority and composition of FINRA's board and executives are governed by FINRA's bylaws, not by statute. *See* FINRA By-Laws, Art. VII-VIII, https://tinyurl.com/3452dkn3. As the SEC has recognized, "FINRA's employees cannot be 'officers *of the United States*'" because the "Appointments Clause applies only when Congress creates an office *of the United States*" but "says nothing about . . . individuals who do *not* occupy a position established by Congress." *In re Newport Coast*, 2020 WL 1659292, at *17-18.

Plaintiffs' appointment and removal claims therefore suffer from multiple fatal flaws that require dismissal with prejudice.

### B. FINRA Does Not Exercise Improperly Delegated Governmental Authority Because It Is Subject To SEC Oversight And Statutory Guidance (Counts 2, 4 & 5).

Plaintiffs' claims that FINRA exercises impermissibly delegated governmental power, asserted under Article II's Vesting and Take Care Clauses (Count 2), the private nondelegation doctrine (Count 4), and the public nondelegation doctrine (Count 5), must also be dismissed with prejudice. Counts 2 and 4 fail because FINRA is subject to the SEC's comprehensive oversight. And, as to Plaintiffs' public nondelegation claim in Count 5, even assuming that FINRA (a private

entity) were subject to such requirements, the Exchange Act provides an "'intelligible principle'" cabining FINRA's authority. *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 472 (2001).

**1. There Is No Vesting Clause, Take Care Clause, Or Private Nondelegation Violation Because FINRA Functions Subordinately To, And Under The Authority And Surveillance Of, The SEC (Counts 2 & 4).**

Plaintiffs' private nondelegation claim and their claims under the Vesting and Take Care Clauses run together. Courts have identified the roots of the private nondelegation doctrine in the Constitution's Vesting Clauses, which prohibit the government from empowering "a private entity to exercise unchecked legislative or executive power." *Oklahoma*, 62 F.4th at 228 (citing U.S. Const. art. I, § 1; *id.*, art. II, § 1); *see also Pittston Co. v. United States*, 368 F.3d 385, 394 (4th Cir. 2004) (similar); *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 53 F.4th 869, 880-81 & n.23 (5th Cir. 2022) (noting that some scholars identify the Due Process Clause as the "locus" of the private nondelegation doctrine, but that the test regardless "turns on whether the private entity is subordinate to the agency"). And it follows that vesting executive power in an entity that the President cannot adequately control impedes his duty to "take Care that the Laws be faithfully executed." U.S. Const. art. II, § 3.

The Supreme Court recently reaffirmed in *FCC v. Consumers' Research*, 145 S. Ct. 2482 (2025), that Congress may afford a private entity a role in executing a regulatory program, provided that the entity "'function[s] subordinately to,'" and is under the "'authority and surveillance'" of, a governmental body. *Id.* at 2508 (reaffirming *Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 399 (1940)). There, the Court rejected a private nondelegation challenge to the Universal Service Administrative Company ("USAC")—a private company that assists the FCC in administering the Universal Service Fund—because USAC is "broadly subordinate" to the FCC, which, upon request of "anyone aggrieved by an action" of USAC, reviews that action "*de novo*." *Id.*

Plaintiffs' Vesting Clause, Take Care Clause, and private nondelegation claims fail because FINRA, like USAC, is "broadly subordinate" to the federal government. As this Court concluded at the preliminary-injunction stage—in reasoning that the D.C. Circuit left undisturbed, except with respect to Alpine's immediate expulsion in an expedited proceeding no longer at issue, *see Alpine*, 121 F.4th at 1325-29—FINRA is not exercising any delegated regulatory power outside the SEC's "ultimate control and oversight." *Scottsdale IV*, 678 F. Supp. 3d at 106-07.

Under the Exchange Act, FINRA "'function[s] subordinately to' the SEC, which has 'authority and surveillance over [its] activities.'" *Kim*, 698 F. Supp. 3d at 154. As the Fifth Circuit recently reiterated, the SEC has "'formidable oversight power to supervise, investigate, and discipline FINRA for any possible wrongdoing or regulatory missteps.'" *Black*, 107 F.4th at 435 (quoting *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 101 (2d Cir. 2007)) (brackets omitted). For example, the SEC must approve FINRA rules and "may abrogate, add to, and delete from all FINRA rules as it deems necessary." *Aslin v. FINRA*, 704 F.3d 475, 476 (7th Cir. 2013) (citing 15 U.S.C. § 78s(b)(1), (c)). The SEC regularly examines FINRA to ensure its compliance with federal laws and FINRA rules, *see*, *e.g.*, GAO, SEC Inspections of FINRA's Governance Were Consistent with Internal Guidance (2018), https://www.gao.gov/products/gao-18-522, and can limit FINRA's activities, or suspend or revoke its status as a self-regulatory organization, if FINRA mishandles its regulatory responsibilities, 15 U.S.C. § 78s(h).

The SEC also has the power to "revoke FINRA's ability to enforce its rules." *Black*, 107 F.4th at 434 (citing 15 U.S.C. § 78s(g)(2)). And, upon the completion of a disciplinary proceeding, FINRA must notify the SEC of its decision, which is thereafter subject to *de novo* review by the SEC acting *sua sponte* or in response to a petition from the aggrieved party. *See* 15 U.S.C. § 78s(d)(1)-(2), (e). Scottsdale has successfully invoked the SEC's appellate process in the past

to overturn a FINRA disciplinary sanction, TAC ¶ 95, and Alpine is currently appealing its expulsion from FINRA to the SEC, *id.* ¶ 106.

This extensive oversight cabins FINRA's regulatory authority to a constitutionally permissible subordinate role. "FINRA's subordinate regulatory structure to the SEC is why '[i]n case after case, the courts have upheld this arrangement' against private nondelegation challenges." *Kim*, 698 F. Supp. 3d at 166 (alteration in original); *see also Oklahoma*, 62 F.4th at 229 (collecting cases); *Walmsley*, 117 F.4th at 1039 (rejecting private-nondelegation challenge to private self-regulatory body "modeled" on the SEC-FINRA structure that "has been widely approved as constitutional"); *Alpine Sec. Corp. v. Nat'l Sec. Clearing Corp.*, 2025 WL 901847, at *7 (D. Utah Mar. 25, 2025) ("courts have long upheld the SEC-SRO model because SROs 'exercise authority subject to SEC oversight' and 'have no authority to regulate independently of the SEC's control'" (quoting *NASD v. SEC*, 431 F.3d 803, 811 (D.C. Cir. 2005))); *Mansour v. Morgan Stanley*, 2025 WL 2380456, at *20 (E.D. Tex. Aug. 15, 2025) (agreeing that "the SEC-FINRA framework does not violate the private non-delegation doctrine"); *Silver Leaf Partners*, 2025 WL 743953, at *11 (SEC concluding that "the relationship between FINRA and the Commission satisfies private-nondelegation principles, as the courts of appeals have repeatedly recognized").

The D.C. Circuit's decision in this case further forestalls Plaintiffs' private nondelegation challenge. The D.C. Circuit's "narrow and limited" opinion preliminarily enjoined FINRA from expelling Alpine immediately, through "expedited expulsion proceedings," before Alpine could obtain SEC review, but otherwise *permitted* FINRA to continue its expedited disciplinary proceeding over Alpine's private nondelegation objection. 121 F.4th at 1330-31. The court rejected appeals for "a broader injunction that would prevent FINRA from policing its member's misconduct at all." *Id.* at 1328. The court explained that the dissent was "incorrect" in claiming that FINRA

"runs afoul of the private nondelegation doctrine by exercising 'significant executive authority' when it enforces *its own private rules* against a member and seeks remedies against that member that run only to FINRA, and not to the government," and that the dissent's reliance on the "'significant executive authority' inquiry"—which Plaintiffs repeat in their Complaint, TAC ¶ 150—improperly "melds the private nondelegation doctrine with [the] Appointments Clause." *Alpine*, 121 F.4th 1328-29.

Here, where Plaintiffs are not subject to an expedited disciplinary proceeding and do not face the prospect of immediate expulsion without the opportunity for SEC review, *see* TAC ¶ 109, there can be no question that—under this Court's earlier nondelegation reasoning and the D.C. Circuit's decision largely upholding that reasoning—the SEC's authority over FINRA is constitutionally sufficient. Plaintiffs' claims under the Vesting and Take Care Clauses and the private nondelegation doctrine therefore fail as a matter of law and should be dismissed with prejudice.

**2. The Exchange Act Provides A Guiding "Intelligible Principle" And Thus Does Not Improperly Delegate Legislative Power (Count 5).**

Plaintiffs' claim that FINRA "unconstitutionally exercises legislative power" in violation of the public nondelegation doctrine by virtue of its "rulemaking authority" also fails. TAC ¶ 158.

To start, FINRA is a *private* entity and therefore is not subject to the *public* nondelegation doctrine. *See supra* at 6-7. But even assuming that FINRA were somehow "deemed part of the federal government," TAC ¶ 159, Plaintiffs' public nondelegation claim would still warrant dismissal with prejudice. Congress may grant an agency "decisionmaking authority" subject to a guiding "intelligible principle." *Whitman*, 531 U.S. at 472 (internal quotation marks omitted); *see also Consumers' Rsch.*, 145 S. Ct. at 2497. The Exchange Act satisfies that requirement because, as this Court previously recognized, *Scottsdale IV*, 678 F. Supp. 3d at 107 n.9, the Act specifies several statutory purposes, including "to promote just and equitable principles of trade, . . . to

remove impediments to and perfect the mechanism of a free and open market and a national market system, and . . . to protect investors and the public interest," 15 U.S.C. § 78o-3(b)(6), with which FINRA's rules must comply. The Supreme Court has long approved similar standards as intelligible principles. *See NBC v. United States*, 319 U.S. 190, 194 (1943) ("'public interest, convenience, or necessity'"); *N.Y. Cent. Sec. Corp. v. United States*, 287 U.S. 12, 24 (1932) ("public interest"); *see also Alpine Sec. Corp.*, 2025 WL 901847, at *6 (Exchange Act "more than . . . meet[s]" requirement for intelligible principle).

### C. Plaintiffs' Fifth And Seventh Amendment Claims Are Jurisdictionally Barred And Fail As A Matter Of Law (Counts 6 & 7).

Plaintiffs' claims challenging FINRA's disciplinary proceedings under the Fifth and Seventh Amendments fail for several reasons.

#### 1. This Court Lacks Jurisdiction Over Plaintiffs' Fifth And Seventh Amendment Claims.

As a threshold matter, this Court lacks subject matter jurisdiction over Plaintiffs' Fifth and Seventh Amendment claims. The Exchange Act expressly grants the courts of appeals "exclusive" "jurisdiction" to review SEC "orders," 15 U.S.C. § 78y(a)(1), (3), including orders arising from FINRA disciplinary procedures, *see Scottsdale I*, 844 F.3d 414. By channeling claims to the court of appeals after SEC review, Congress presumptively barred district court jurisdiction, including over constitutional claims, outside an exceptional category of claims that, under the *Thunder Basin* factors, (1) cannot be "meaningfully addressed in the Court of Appeals" after exhausting the administrative process; (2) are "wholly collateral to [the] statute's review provisions"; and (3) are "outside the agency's expertise." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212, 215-16 (1994) (internal quotation marks omitted); *see also Elgin v. Dep't of Treasury*, 567 U.S. 1, 21 (2012) (statute precluded district court jurisdiction over constitutional claims because they could "receive meaningful review" within the statutory scheme).

The Supreme Court confirmed in *Axon* that a "special statutory review scheme"—including "the one used in . . . the Exchange Act"—generally "preclude[s] district courts from exercising jurisdiction over challenges to federal agency action." 598 U.S. at 185 (citing *Thunder Basin*, 510 U.S. at 207). But, as *Axon* clarified, the Exchange Act and other exclusive review frameworks do not displace district court jurisdiction over certain "far-reaching constitutional claims" challenging an agency's "structure" and "very existence," *id.* at 185-89, such as the challenge to the restrictions on the President's power to remove members of the PCAOB at issue in *Free Enterprise Fund*, 561 U.S. at 489-91.

*Axon* framed the jurisdictional question as whether claims are "more like *Thunder Basin* and *Elgin* or more like *Free Enterprise Fund*." 598 U.S. at 188. The Court held that the claims before it—challenges to restrictions on removing SEC and FTC administrative law judges and to the FTC's combination of prosecutorial and adjudicative functions—were akin to those in *Free Enterprise Fund*, and thus subject to review in a district court, because the claims "charge[d] that an agency is wielding authority unconstitutionally in all or a broad swath of its work." *Id.* at 189.

By contrast, Plaintiffs' Fifth and Seventh Amendment claims are "more like *Thunder Basin* and *Elgin*," *Axon*, 598 U.S. at 188, because those claims challenge FINRA's rules and the manner in which FINRA exercises its enforcement authority under the Exchange Act, rather than presenting a "far-reaching constitutional" challenge to FINRA, *id.* at 185; *see Elgin*, 567 U.S. at 17 n.6 (noting, with approval, that one of the claims held to be precluded in *Thunder Basin* was a "due process challenge to a statute that permitted a regulatory agency, before a hearing, to immediately fine the petitioner for noncompliance with the statute"). Plaintiffs' challenges to FINRA's procedures in its disciplinary proceedings—for example, the alleged absence of a "neutral and detached" decisionmaker and the unavailability of a jury, TAC ¶¶ 166, 173—are different in kind from the

"sweeping" constitutional challenges at issue in *Axon*, 598 U.S. at 189. The Exchange Act's exclusive review scheme therefore strips this Court of jurisdiction over Plaintiffs' Fifth and Seventh Amendment claims—challenges to "commonplace procedures" "use[d] to make . . . decision[s]," not to FINRA's "structure or very existence." *Id.*; *see Scottsdale II*, 390 F. Supp. 3d at 75 (claims that are "intertwined with FINRA's governance and regulatory decisions" must "be challenged administratively and reviewed by appellate courts").

Both before and after *Axon*, courts confronted with similar challenges to FINRA's disciplinary procedures and regulatory activities have consistently concluded that the Exchange Act precluded district court jurisdiction. For example, the Fourth Circuit affirmed the dismissal for lack of subject matter jurisdiction of a suit claiming that a FINRA disciplinary proceeding was statutorily "unauthorized," because Congress "unambiguously channeled [the plaintiff's] claim" challenging FINRA's statutory authority "to the SEC for determination in the first instance." *Scottsdale I*, 844 F.3d at 423-24. Likewise, the D.C. Circuit affirmed the dismissal of a suit challenging "FINRA's governance and regulatory decisions" for lack of jurisdiction because "Congress has mandated [that such claims] be challenged administratively and reviewed by appellate courts." *Scottsdale II*, 390 F. Supp. 3d at 75. Another court recently dismissed a Seventh Amendment challenge to a FINRA disciplinary proceeding because "[u]nder *Thunder Basin* and *Axon*, [it] lack[ed] subject matter jurisdiction over [the plaintiff's] collateral attack on his FINRA proceeding." *Blankenship v. FINRA*, 2024 WL 4043442, at *3 (E.D. Pa. Sept. 4, 2024).

Multiple courts have reached the same conclusion in dismissing Fifth and Seventh Amendment challenges to other administrative proceedings. For example, Judge Sooknanan recently dismissed a Seventh Amendment challenge to an ongoing SEC proceeding for lack of jurisdiction, applying *Thunder Basin* to conclude that the plaintiff could "obtain meaningful review" in the

court of appeals and that the claim was not "wholly collateral" or outside the agency's expertise. *Lemelson v. SEC*, 2025 WL 1503815, at *3-6 (D.D.C. May 27, 2025). And Judge McFadden reached the same conclusion in a Seventh Amendment challenge to a National Labor Relations Board proceeding. *VHS Acquisition Subsidiary No. 7 v. NLRB*, 2024 WL 4817175, at *3-4 (D.D.C. Nov. 17, 2024). At least seven other recent cases have concluded that Seventh Amendment claims must be brought pursuant to "'relevant statutory procedures,'" not in district court. *Id.* at *5 (collecting cases); *see NCRNC, LLC v. Kennedy*, — F. Supp. 3d —, 2025 WL 1549048, at *6-8 (N.D.N.Y. May 30, 2025); *Millennia Hous. Mgmt. v. U.S. Dep't of Hous. & Urb. Dev.*, — F. Supp. 3d —, 2025 WL 1222589, at *6-8 (N.D. Ohio Apr. 28, 2025); *Huff & Puffers, LLC v. FDA*, 2025 WL 1092696, at *4-6 (C.D. Cal. Feb. 27, 2025); *Vape Cent. Grp., LLC v. FDA*, 2025 WL 637416, at *1, *4-9 (D.D.C. Feb. 27, 2025); *Waffle House, Inc. v. NLRB*, 2025 WL 602744, at *8-9 (D.S.C. Feb. 10, 2025); *YAPP USA Auto. Sys., Inc. v. NLRB*, 748 F. Supp. 3d 497, 514 (E.D. Mich. Sept. 9, 2024); *Nexstar Media, Inc. Grp. v. NLRB*, 746 F. Supp. 3d 464, 473 (N.D. Ohio 2024). And, for the same reasons, the District of Utah recently dismissed Alpine's Fifth Amendment challenge to the disciplinary proceedings of other self-regulatory organizations registered under the Exchange Act. *Alpine Sec. Corp.*, 2025 WL 901847, at *5.

Each of the three *Thunder Basin* factors confirms that this Court lacks jurisdiction over Plaintiffs' Fifth and Seventh Amendment claims. *First*, "denial of district court jurisdiction will not foreclose . . . meaningful judicial review," *Blankenship*, 2024 WL 4043442, at *2, because "[r]eview of agency action in a court of appeals can alone 'meaningfully address[]'" Plaintiffs' claims challenging FINRA's "procedure," *Axon*, 598 U.S. at 190 & n.2 (second alteration in original; citation omitted) (providing example of a "company's asserted entitlement to an earlier hearing"); *see also* Mem. Order & Op. (D.E. 62) at 4-6, *Lukezic v. FINRA*, 2025 WL 2305859, at *2-3

(D.D.C. Aug. 10, 2025) (denying preliminary injunction because FINRA registered person's due process and Seventh Amendment claims could be "'fully vindicate[d]'" by "subsequent judicial review"). *SEC v. Jarkesy*, 603 U.S. 109 (2024)—where the Supreme Court addressed a Seventh Amendment challenge to the SEC's disciplinary proceedings—illustrates the point: *Jarkesy* "came up on direct review" to a court of appeals through the Exchange Act's review framework, "not collateral attack" in district court. *Blankenship*, 2024 WL 4043442, at *2 n.3; *see Jarkesy*, 603 U.S. at 118-19.

That meaningful review is available to Plaintiffs under the Exchange Act. Indeed, Alpine is currently raising the *same* Fifth and Seventh Amendment claims before the SEC in its appeal of the National Adjudicatory Council's expulsion decision. *See* Alpine SEC Br. at 39-49. And Plaintiffs are free to challenge the SEC's approval of any of FINRA's proposed disciplinary-proceeding rules by timely petitioning for review in a court of appeals, *see* 15 U.S.C. § 78s(b)(1); *id.* § 78y(a)(1), and can also "petition the SEC—apart from any disciplinary action—to amend or repeal" any existing FINRA rules, which would culminate in "final agency action of which [Plaintiff] could then seek review in the appropriate court of appeals." *Scottsdale I*, 844 F.3d at 423 (citing 15 U.S.C. § 78y).

*Second*, Plaintiffs' Fifth and Seventh Amendment claims are "not wholly collateral to the Securities Exchange Act's review provisions" because they raise case-specific challenges that will depend on the course of particular FINRA disciplinary proceedings, *Blankenship*, 2024 WL 4043442, at *3—in particular, whether the specific disciplinary claims at issue trigger a jury-trial right and whether the specific procedures used in those proceedings, including the composition of the Hearing Panel and the procedural rights afforded the respondent, comport with due process.

Plaintiffs' claims are therefore "inextricably intertwined" with—and not collateral to—the "administrative process." *Vape Cent.*, 2025 WL 637416, at *8.

*Third*, Plaintiffs' Fifth and Seventh Amendment claims are "not outside of the SEC's expertise." *Blankenship*, 2024 WL 4043442, at *3. The issues are "embedded in matters on which the [SEC is] expert"—the procedures applied in FINRA proceedings. *Axon*, 598 U.S. at 195; *see Alpine Sec. Corp.*, 2021 WL 4060943, at *5 ("FINRA's authority to conduct hearings, as well as to promulgate rules and operating procedures, is within the [SEC's] expertise"). Indeed, the SEC regularly considers Fifth and Seventh Amendment claims, *see In re John Thomas Cap. Mgmt. Grp. LLC*, 2020 WL 5291417, at *27 (SEC Sept. 4, 2020); *In re Charles C. Fawcett IV*, Release No. 34-56770, 2007 WL 3306105, at *1, *3-4 (Nov. 8, 2007), and is therefore "competent to resolve" Plaintiffs' claims, *VHS Acquisition*, 2024 WL 4817175, at *4.

In sum, because Plaintiffs' conclusory allegation that their claims "challenge the constitutionality of FINRA's structure and operations," TAC ¶ 24, fails to show that their Fifth and Seventh Amendment claims are akin to the "existential" challenges in *Axon*, 598 U.S. at 180, the Court should dismiss Counts 6 and 7 for lack of subject matter jurisdiction.

**2. FINRA's Exercise Of Its Self-Regulatory Powers Is Not State Action.**

Plaintiffs' Fifth and Seventh Amendment claims also fail because Plaintiffs do not plausibly allege that their FINRA proceedings are one of the "few limited circumstances," *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 809 (2019), in which a private entity's conduct is "fairly attributable to" the government and thus state action subject to constitutional requirements, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). *See also Herron*, 861 F.3d at 167 (contrasting the "state action doctrine" that applies to a private party allegedly engaged in governmental action in a specific setting, with claims that an entity is the "'Government itself'" (quoting *Lebron*,

513 U.S. 378)). As this Court and numerous others have held, none of those "few limited circumstances" applies to FINRA's activities. *See Scottsdale IV*, 678 F. Supp. 3d at 104-06.

A private entity's conduct may be considered state action where it "exercis[es] powers that are 'traditionally the exclusive prerogative of the State.'" *Blum v. Yaretsky*, 457 U.S. 991, 1005 (1982). But "[h]istorical practice, as well as the [federal] statutory scheme, does not support" the notion that FINRA's self-regulatory responsibilities under the Exchange Act are a "traditionally exclusive governmental function." *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 56 (1999). *Private* exchanges and securities associations—not the government—have historically regulated the securities industry. *See supra* at 2-3; *see also* SEC Concept Release, 69 Fed. Reg. at 71,257 ("Securities industry self-regulation has a long tradition in the U.S. securities markets."); *Alpine*, 121 F.4th at 1319-21. Because "frontline authority over broker-dealers has fallen to *private* entities and *not* the state," FINRA's self-regulatory responsibilities are private conduct, not state action. *Kim*, 698 F. Supp. 3d at 164; *see also Scottsdale IV*, 678 F. Supp. 3d at 103 n.6 (rejecting Plaintiffs' "public function" argument). And in light of that long history of private self-regulation, Plaintiffs cannot demonstrate state action based on "[t]he fact 'that [FINRA as] a private entity performs a function which serves the public'"; that function "'does not make its acts [governmental] action.'" *S.F. Arts & Athletics, Inc. v. U.S. Olympic Comm.*, 483 U.S. 522, 544 (1987).

Nor is this a situation in which the government "exercise[s] coercive power" or "provide[s] such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Blum*, 457 U.S. at 1004. Plaintiffs do not allege that any government entity has encouraged, directed, or coerced FINRA's disciplinary proceedings against them. To the contrary, they allege that "FINRA largely acts unilaterally and completely independently of any SEC review when it chooses who to target, investigate, and prosecute." TAC ¶ 152. That concession

is consistent with this Court's finding that FINRA "alone determines which cases to investigate and when to file a complaint." *Scottsdale IV*, 678 F. Supp. 3d at 103; *see also Kim*, 698 F. Supp. 3d at 165 ("neither the SEC nor any other governmental agency 'compels' FINRA 'to take a particular action'"). The requisite "nexus between the state and the *specific* conduct of which [P]laintiff[s] complain[ ]" is therefore missing. *Desiderio*, 191 F.3d at 207.

For these reasons, courts have repeatedly rejected arguments that FINRA, or its predecessor the NASD, engages in state action when carrying out its self-regulatory responsibilities under the Exchange Act. In *D.L. Cromwell*, for example, the Second Circuit rejected the plaintiffs' argument that on-the-record interviews requested by the NASD violated their Fifth Amendment privilege against self-incrimination. 279 F.3d at 156-57. As the court explained, "[t]o establish a Fifth Amendment violation, a plaintiff must demonstrate 'that in denying the plaintiff's constitutional rights, the defendant's conduct constituted state action,'" as "the Fifth Amendment restricts only governmental conduct," or conduct "'fairly attributable' to the government." *Id.* at 161. Because the NASD's requests for testimony "issued directly from [the NASD] as a product of its private investigation, and . . . none of the demands was generated by governmental persuasion or collusion," there was no state action. *Id.* at 163; *see also McGinn*, 786 F. Supp. 2d at 147 ("Plaintiffs have not alleged specific facts that demonstrate coercion or significant encouragement by the SEC with respect to FINRA's investigation of Plaintiffs.").[7]

[7] *See also United States v. Solomon*, 509 F.2d 863, 869 (2d Cir. 1975) (Friendly, J.) (the fact that the SEC was "given the power and the duty to make sure that [self-regulatory organizations'] responsibility was diligently and effectively used" was not sufficient to "create an agency relationship" because NYSE's disciplinary inquiries were in pursuit "of its own interests and obligations"); *Epstein*, 416 F. App'x at 146, 148 (rejecting "a constitutional due process claim" for lack of state action when reviewing the SEC's decision to uphold "disciplinary action taken by FINRA"); *Marchiano*, 134 F. Supp. 2d at 95 ("The court is aware of no case—and Marchiano has presented none—in which NASD Defendants were found to be state actors either because of their regulatory

As courts have repeatedly confirmed, moreover, Plaintiffs' allegation that FINRA's "rules carry the force and status of federal law" in particular contexts, TAC ¶ 11, does not transform self-regulatory activities into state action. The legal force and status of FINRA rules is attributable to the Exchange Act's requirement that the SEC review and approve FINRA's proposed rules, *see* 15 U.S.C. § 78(b)(1), not to any inherent governmental powers of FINRA, a private self-regulatory organization. And, as the Seventh Circuit has emphasized, the imposition of that federal regulation cannot turn "a private organization into a government actor, for 'that would bring under the Fifth Amendment much of the private sector, ranging from hospitals to railroads.'" *Gold v. SEC*, 48 F.3d 987, 991 (7th Cir. 1995). Likewise, the Supreme Court has expressly rejected "the 'being heavily regulated makes you a state actor' theory," calling it "entirely circular" and noting that it "would significantly endanger individual liberty and private enterprise." *Halleck*, 587 U.S. at 816; *see also Jackson v. Metro. Edison Co.*, 419 U.S. 345, 350 (1974).

FINRA is also not "entwined" with the government such that its self-regulatory activities must be treated as state action. Private conduct may be deemed state action where the government is "pervasive[ly] entwin[ed]" with a private entity's "composition and workings." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 298 (2001). FINRA, however, bears no resemblance to the "nominally private" school athletic association in *Brentwood*. *Id.* As the Court there emphasized, (1) 84% of the association's members were public schools represented by public officials acting in their official capacities, (2) state board of education members served on the association's board, and (3) the association's employees were eligible for the state's retirement system. *See id.* at 299-300. By contrast, public officials have no involvement with FINRA's board

responsibilities or because of any alleged collusion with criminal prosecutors. In fact, every court that has addressed those issues has rejected Marchiano's arguments.").

of directors, *see* TAC ¶¶ 47, 130, and FINRA's personnel are private employees hired, employed, and paid by a private entity, *see id.* ¶¶ 48, 58; *Alpine*, 121 F.4th at 1321.

The absence of state action is not altered by FINRA's entitlement to absolute immunity when it is performing self-regulatory functions. *See* TAC ¶¶ 87-88. As courts have recognized in self-regulatory immunity cases, "'[i]mmunity doctrines protect *private* actors when they perform important government functions.'" *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1213 (9th Cir. 1998) (emphasis added; citation omitted), *abrogated in part on other grounds by Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Manning*, 578 U.S. 374 (2016). The standard for affording regulatory immunity turns on whether the self-regulatory organization is "act[ing] under the aegis of the Exchange Act's delegated authority." *In re Series 7*, 548 F.3d at 114. That standard is entirely different from any of the standards for determining whether a private entity's acts should be deemed state action (including whether the entity is "exercis[ing] powers that are traditionally the exclusive prerogative of the State," *Blum*, 457 U.S. at 1005 (internal quotation marks omitted), or is "pervasive[ly] entwin[ed]" with the government, *Brentwood*, 531 U.S. at 298).

The absence of state action is fatal to Plaintiffs' Fifth and Seventh Amendment claims.

**3. Plaintiffs' Fifth And Seventh Amendment Claims Fail As A Matter of Law.**

Even if this Court had jurisdiction over Count 6 and Count 7 and Plaintiffs had plausibly alleged state action, those claims would still fail—and for multiple reasons.

**a) FINRA Disciplinary Proceedings Afford Sufficient Due Process.**

Plaintiffs' Fifth Amendment claim is legally baseless. Plaintiffs allege that "FINRA's disciplinary proceedings are biased, secretive, and fail to implement rules that maintain the integrity of the proceedings" because "FINRA acts as prosecutor, judge, jury, and executioner." TAC ¶ 165. But longstanding precedent rejects "[t]he contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative

adjudication." *Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (rejecting due-process challenge to state licensing board). Rather, even when a body combines functions—as many administrative agencies, including the SEC, do—a court "must start . . . from the presumption that the hearing officers who decide [these] claims are unbiased," which a challenger must rebut "by a showing of conflict of interest." *Schweiker v. McClure*, 456 U.S. 188, 195 (1982); *see also*, *e.g.*, *Hastings v. Judicial Conference of U.S.*, 829 F.2d 91, 104 (D.C. Cir. 1987) ("The combination of investigative and adjudicatory powers in an administrative body, the Supreme Court has held, does not, without more, violate the Due Process clause."). Plaintiffs have alleged no unconstitutional conflict here.

Plaintiffs also allege that FINRA's rules do not provide due process because "FINRA does not apply the most basic rules of evidence in its proceedings." TAC ¶ 78. But FINRA's proceedings provide process well beyond any applicable constitutional requirements, as confirmed by the Exchange Act, FINRA's rules, and Plaintiffs' own experience. The Exchange Act requires that FINRA's rules "provide a fair procedure for the disciplining of members and persons associated with members." 15 U.S.C. § 78o-3(b)(8). "In satisfaction of the Exchange Act's requirement, the SEC approved the FINRA Code of Procedure," which governs FINRA's disciplinary process. *Turbeville v. FINRA*, 874 F.3d 1268, 1271 & n.3 (11th Cir. 2017). The Code establishes a robust system of procedural protections for respondents in FINRA disciplinary hearings, including a neutral adjudicator and the right for the respondent to introduce evidence, put on witnesses, and cross-examine adverse witnesses. *See*, *e.g.*, FINRA Rules 9231-34 (appointment of three-person hearing panel including two industry members; recusal and disqualification standards); FINRA Rule 9261 (submission of evidence and testimony); Frequently Asked Questions for Respondents in FINRA Disciplinary Proceedings, https://tinyurl.com/mvk9evd6. These extensive procedures are

backstopped by multilayered review within FINRA, before the SEC, and ultimately before a U.S. Court of Appeals. *See supra* at 8-9.

These robust procedural protections—which have been afforded to Plaintiffs in their past FINRA disciplinary proceedings and would be again in any future ones—fully comply with the due process requirement of an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976) (citation omitted); *see also Cody v. SEC*, 693 F.3d 251, 257 (1st Cir. 2012) (rejecting due-process challenge to FINRA procedures because "[b]y statute, FINRA was required to give [petitioner] the substance of procedural due process").

**b) FINRA Disciplinary Proceedings Do Not Implicate The Seventh Amendment.**

Plaintiffs allege that "broker-dealers . . . are not afforded the right to a trial by jury." TAC ¶ 173. But FINRA disciplinary proceedings concern matters categorically outside the scope of Article III and thus do not implicate the Seventh Amendment. "[W]hen Congress properly assigns a matter to adjudication in a non-Article III tribunal, 'the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder.'" *Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 345 (2018).

The Supreme Court has long upheld statutes that authorize non-Article III bodies to decide "actions that were not suits at common law or in the nature of such suits." *Jarkesy*, 603 U.S. at 137-38 (alterations and internal quotation marks omitted). For example, executive agencies may conduct adjudications and impose monetary sanctions under tariff laws, *Passavant v. United States*, 148 U.S. 214, 221-22 (1893); immigration laws, *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 338-40 (1909); tax laws, *Helvering v. Mitchell*, 303 U.S. 391, 402 (1938); labor

laws, *NLRB v. Jones & Laughlin Steel Corp.*, 301 U.S. 1, 48 (1937); and workplace-safety laws, *Atlas Roofing Co. v. OSHRC*, 430 U.S. 442, 449-61 (1977).

Under that long line of precedent, even if Plaintiffs could establish that FINRA disciplinary proceedings are subject to constitutional requirements, those requirements would not include Article III and the Seventh Amendment. The "hallmark" that the Supreme Court has "looked to in determining if a suit" must be heard by an Article III tribunal "is whether it is made of the stuff of the traditional actions at common law tried by the courts at Westminster in 1789." *Jarkesy*, 603 U.S. at 127-28 (internal quotation marks omitted). The securities industry's self-regulatory framework—which has provided for private investigation and adjudication of broker conduct since the 1790s—has never been "the stuff of the traditional actions at common law." It has been "the stuff of" private industry self-regulation pursuant to privately developed and implemented procedures—a system that Congress has repeatedly reaffirmed. *See Alpine*, 121 F.4th at 1319-21.

Because FINRA's disciplinary proceedings against its broker-dealer members have no "close relationship" to claims tried in a court at common law, *Jarkesy*, 603 U.S. at 125, they fall outside Article III and do not trigger the Seventh Amendment, *see Oil States*, 584 U.S. at 345.

Even assuming the Seventh Amendment could apply here, Plaintiffs knowingly relinquished any right they might otherwise have had to a jury in federal court when they agreed to FINRA's disciplinary procedures. Article III and jury-trial rights are "subject to waiver, just as are other personal constitutional rights." *CFTC v. Schor*, 478 U.S. 833, 848 (1986); *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 592 (1985) (rejecting Article III challenge to regulatory scheme in which each participant "explicitly consents to have his rights determined by arbitration"). FINRA members affirmatively agree to join FINRA and to abide by its rules, including its disciplinary procedures. *See* 15 U.S.C. § 78c(a)(3)(B) (defining "member" of

registered securities association as any broker or dealer that agrees to be regulated by such association, including by enforcement of compliance with association's "own rules"). Just like other members, Plaintiffs affirmatively joined FINRA, thereby knowingly and intentionally agreeing to FINRA's rules and disciplinary procedures. TAC ¶¶ 19-20.

**D. Plaintiffs Have Not Been Compelled To Forgo Their Constitutional Rights (Count 8).**

Plaintiffs' claim that FINRA subjected them to "unconstitutional conditions"—largely an attempt to repackage their other baseless constitutional claims—should likewise be dismissed with prejudice.

To start, it is simply not true, as Plaintiffs assert, that broker-dealers are "forced to join FINRA" if they "wish to lawfully participate in the securities industry and engage in their chosen profession." TAC ¶ 177. Although the Exchange Act requires that a registered "broker or dealer" be a member of a registered national "securities association," 15 U.S.C. § 78o(b)(8), it does not require membership in any specific securities association and does not mention FINRA. *See* SEC Concept Release, 69 Fed. Reg. at 71,256 (explaining that "broker-dealers are required to be members of *a* self-regulatory organization," not any particular one) (emphasis added). Although FINRA is currently the only registered national securities association, Plaintiffs and other broker-dealers are free to form a new securities association and apply for registration with the SEC. 15 U.S.C. § 78o-3(a). Alternatively, Plaintiffs could elect to transact securities solely on a securities exchange of which they are members, which would obviate the requirement for membership in a registered national securities association. *See id.* § 78o(b)(1).

Plaintiffs are also free to apply to the SEC for an "exempt[ion]" under 15 U.S.C. § 78o(b)(9) from the requirement to join a securities association, *Alpine*, 121 F.4th at 1321, or an "exempt[ion]" under 15 U.S.C. § 78o(a)(2) from the antecedent requirement to register with the SEC, which, in turn, would exempt them from the requirement to join a securities association, *see*

15 U.S.C. § 78o(b)(8) (requiring securities-association membership only for "registered" broker-dealers). In these provisions, Congress expressly afforded the SEC broad, discretionary authority to grant exemptions from both membership and registration requirements, "conditionally or unconditionally," "by rule or order, as it deems consistent with the public interest and the protection of investors," to "any broker or dealer or class of brokers or dealers." *Id.* §§ 78o(a)(2); 78o(b)(9). These specific exemptive authorities supplement the SEC's general authority under 15 U.S.C. § 78mm(a)(1) to exempt any "person, security, or transaction," or class thereof, from "any provision or provisions of" the Exchange Act or "any rule or regulation thereunder."

Nor have Plaintiffs shown that joining FINRA has required them to relinquish any constitutional rights. "Absent a finding that [Plaintiffs have] such constitutional rights," they "cannot prevail" on their claim that FINRA registration is an "unconstitutional condition[ ]." *Scahill v. District of Columbia*, 909 F.3d 1177, 1184 (D.C. Cir. 2018). As discussed above, FINRA's private regulatory oversight and disciplinary proceedings do not implicate members' constitutional rights, and even if they did, they do not infringe upon those rights. *See supra* 34-42.

As this Court concluded in denying a preliminary injunction, Plaintiffs' attempt to shoehorn a First Amendment claim into their "unconstitutional conditions" claim fares no better. *See Scottsdale IV*, 678 F. Supp. 3d at 107-08. To the extent Plaintiffs are asserting a compelled-speech claim, they have identified no "messages" that they were compelled to "endorse." TAC ¶ 178. And to the extent they are asserting a freedom-of-association claim, Plaintiffs have identified no constitutionally protected associational interest. The Supreme Court has made clear that the First Amendment does not afford members of a regulated profession the right to refuse to join a mandatory professional organization. Reaffirming its earlier decision in *Lathrop v. Donohue*, 367 U.S. 820 (1961), the Supreme Court explained in *Keller v. State Bar of California*, 496 U.S. 1 (1990),

that "lawyers admitted to practice in [a] State may be required to join and pay dues to the State bar." *Id.* at 4; *see also id.* at 8 ("'a State may constitutionally condition the right to practice law upon membership in an integrated bar association'" (quoting *Lathrop*, 367 U.S. at 849 (Harlan, J., concurring in the judgment)). Those holdings apply with equal force to the provision of the Exchange Act requiring that broker-dealers join a registered national securities association. *See* 15 U.S.C. § 78o(b)(8). Just as there is no First Amendment right for a lawyer to refuse to join a state bar association, there is no First Amendment right for a broker-dealer to refuse to join a securities association. *See Romero v. Colegio de Abogados de Puerto Rico*, 204 F.3d 291, 296-97 (1st Cir. 2000) ("It is well settled that conditioning the practice of law on membership in a state bar association does not itself violate the First Amendment.").

Plaintiffs do not identify any way in which the requirement to join a registered national securities association burdens their associational rights. Compelled membership in a professional organization infringes First Amendment rights *only* where membership dues are being used for "ideological activities not 'germane' to the purpose for which compelled association was justified." *Keller*, 496 U.S. at 13. Because compelled membership in a state bar association is "justified by the State's interest in regulating the legal profession and improving the quality of legal services," a state bar may "constitutionally fund activities germane to those goals out of the mandatory dues of all members," but "may not . . . fund activities of an ideological nature which fall outside of those areas of activity." *Id.* at 13-14. These principles extend to other professional associations outside the state-bar context. *See Menkes v. U.S. Dep't of Homeland Sec'y*, 637 F.3d 319, 334-35 (D.C. Cir. 2011) (affirming the dismissal of a First Amendment right-of-association challenge to a Coast Guard policy requiring a pilot to become a member of the St. Lawrence Seaway Pilots' Association to be dispatched as a pilot because there were no allegations that the

association "used, or threatened to use, any of [the challenger's] funds for political or ideological activities unrelated to pilotage").

Plaintiffs do not allege that FINRA is using its membership dues for *any* "ideological activities"—let alone ideological activities that are not germane to FINRA's regulatory mission of "protect[ing] investors and the public interest." 15 U.S.C. § 78o-3(b)(6). Under *Keller* and *Menkes*, that is fatal to Plaintiffs' First Amendment claim.

Moreover, as this Court has already recognized, *Scottsdale IV*, 678 F. Supp. 3d at 108, FINRA's regulatory mission—together with the statutory requirement that broker-dealers join a registered national securities association and subject themselves to its oversight—advances multiple public-interest objectives identified by Congress, including "prevent[ing] fraudulent and manipulative acts and practices," "promot[ing] just and equitable principles of trade," "remov[ing] impediments to and perfect[ing] the mechanism of a free and open market and a national market system," and "protect[ing] investors." 15 U.S.C. § 78o-3(b)(6). Those compelling public-interest considerations—foundational to ensuring the smooth operation of the U.S. securities markets—are more than sufficient to justify any theoretical imposition on Plaintiffs' First Amendment rights attributable to the statutory requirement to join a securities association.

## V. CONCLUSION

Despite four iterations of their Complaint, Plaintiffs still have not pleaded a plausible claim for relief. The Court should accordingly dismiss the Third Amended Complaint with prejudice under Rule 12(b)(6). To the extent the Third Amended Complaint raises claims that are subject to the Exchange Act's exclusive review framework, the Court should dismiss those claims for lack of subject matter jurisdiction under Rule 12(b)(1).

Dated: September 2, 2025

Respectfully submitted,

*/s/ Amir C. Tayrani*

Amir C. Tayrani, DC Bar No. 490994
Alex Gesch, DC Bar No. 1012422
Amalia Reiss, DC Bar No. 241775
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C. 20036-4504
T: (202) 887-3692
F: (202) 530-9645
ATayrani@gibsondunn.com
AGesch@gibsondunn.com
AReiss@gibsondunn.com

Michael W. McConnell
Steffen N. Johnson
Paul Harold
WILSON, SONSINI,
GOODRICH & ROSATI, P.C.
1700 K Street, N.W.
Washington, D.C. 20006
T: (202) 973-8800
F: (202) 973-8899
MMcConnell@wsgr.com
SJohnson@wsgr.com
PHarold@wsgr.com

*Attorneys for Defendant Financial Industry Regulatory Authority, Inc.*