**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| Scottsdale Capital Advisors Corporation and Alpine Securities Corporation, )<br><br>            Plaintiffs, )<br><br>    v. )<br><br><br>Financial Industry Regulatory Authority, Inc., )<br><br>        Defendant, )<br><br><br>United States of America, )<br><br>        Intervenor Defendant. )<br>———————————————— ) | Case No. 1:23-cv-01506-BAH<br><br>**ORAL ARGUMENT REQUESTED** |

————————————————

**REPLY IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFFS' THIRD AMENDED COMPLAINT**

————————————————

Michael W. McConnell
Steffen N. Johnson
Paul Harold
WILSON, SONSINI,
GOODRICH & ROSATI, P.C.
1700 K Street, N.W.
Washington, D.C.  20006
T: (202) 973-8800
F: (202) 973-8899
MMcConnell@wsgr.com
SJohnson@wsgr.com
PHarold@wsgr.com

Amir C. Tayrani, DC Bar No. 490994
Alex Gesch, DC Bar No. 1012422
Amalia Reiss, DC Bar No. 241775
GIBSON, DUNN & CRUTCHER LLP
1700 M Street, N.W.
Washington, D.C.  20036-4504
T: (202) 887-3692
F: (202) 530-9645
ATayrani@gibsondunn.com
AGesch@gibsondunn.com
AReiss@gibsondunn.com

*Attorneys for Defendant Financial Industry Regulatory Authority, Inc.*

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.  INTRODUCTION ................................................................................................1

II.  ARGUMENT .....................................................................................................2

    A.  The Constitution's Appointment And Removal Requirements Do Not Apply
        To FINRA (Counts 1 & 3) .........................................................................2

    B.  There Is No Vesting Clause, Take Care Clause, Or Private Nondelegation Violation
        Because FINRA Functions Subordinately To, And Under The Authority And
        Surveillance Of, The SEC (Counts 2 & 4) ...............................................11

    C.  The Exchange Act Does Not Improperly Delegate Legislative Power (Count 5)..........14

    D.  Plaintiffs' Fifth And Seventh Amendment Claims Are Jurisdictionally Barred
        And Fail To State A Claim (Counts 6 & 7) ...............................................15

        1.  This Court Lacks Jurisdiction Over Plaintiffs' Fifth And Seventh Amendment
            Claims .............................................................................................16

        2.  Plaintiffs' Fifth And Seventh Amendment Claims Fail As A Matter Of Law ......19

    E.  Plaintiffs Have Not Been Compelled To Forgo Their Constitutional Rights
        (Count 8) ...................................................................................................22

III.  CONCLUSION ................................................................................................24

# TABLE OF AUTHORITIES[*]

**Page(s)**

**Cases**

*Alpine Sec. Corp. v. FINRA*,
2021 WL 4060943 (D. Utah Sept. 7, 2021) ........................................................................18

\* *Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314 (D.C. Cir. 2024) ...................................6, 9, 11, 12

*Alpine Sec. Corp. v. Nat'l Sec. Clearing Corp.*,
2025 WL 901847 (D. Utah Mar. 25, 2025) ..................................................................15, 17

*Am. Power & Light Co. v. SEC*,
329 U.S. 90 (1946) ........................................................................................................14

*Aslin v. FINRA*,
704 F.3d 475 (7th Cir. 2013) ..........................................................................................14

\* *Axon Enter., Inc. v. FTC*,
598 U.S. 175 (2023) .............................................................................................16, 17, 18

*Blankenship v. FINRA*,
2024 WL 4043442 (E.D. Pa. Sept. 4, 2024) .......................................................................16

*Blount v. SEC*,
61 F.3d 938 (D.C. Cir. 1995) ........................................................................................6, 7

*Boy Scouts of Am. v. Dale*,
530 U.S. 640 (2000) .......................................................................................................24

*Buckley v. Valeo*,
424 U.S. 1 (1976) ............................................................................................................3

*Carter v. Carter Coal Co.*,
298 U.S. 238 (1936) ..................................................................................................13, 20

*Cody v. SEC*,
693 F.3d 251 (1st Cir. 2012) ............................................................................................21

*Elgin v. Dep't of Treasury*,
567 U.S. 1 (2012) ..........................................................................................................18

\* *FCC v. Consumers' Rsch.*,
145 S. Ct. 2482 (2025) ................................................................................3, 6, 11, 14, 15

---

[*] Authorities on which we chiefly rely are marked with asterisks.

*Fin. Oversight & Mgmt. Bd. for P.R. v. Aurelius Inv., LLC,*
    590 U.S. 448 (2019) ..................................................................................................4

*Free Enter. Fund v. PCAOB,*
    561 U.S. 477 (2010) ..............................................................................................9, 10

*Freytag v. Comm'r,*
    501 U.S. 868 (1991) ..................................................................................................7

*Herron v. Fannie Mae,*
    861 F.3d 160 (D.C. Cir. 2017) ...............................................................................8, 9

*Jarkesy v. SEC,*
    803 F.3d 9 (D.C. Cir. 2015) .....................................................................................18

*Kerpen v. Metro. Wash. Airports Auth.,*
    907 F.3d 152 (4th Cir. 2018) ....................................................................................4

 *  *Kim v. FINRA,*
    698 F. Supp. 3d 147 (D.D.C. 2023) ...........................................................4, 5, 10, 12

 *  *Lebron v. Nat'l R.R. Passenger Corp.,*
    513 U.S. 374 (1995) .........................................................................3, 4, 5, 6, 7, 8, 9, 10

*Lemelson v. SEC,*
    2025 WL 1503815 (D.D.C. May 27, 2025) ............................................................17

*Lucia v. SEC,*
    585 U.S. 237 (2018) ...........................................................................................3, 5, 7

*Lugar v. Edmondson Oil Co.,*
    457 U.S. 922 (1982) .................................................................................................19

*Manhattan Cmty. Access Corp. v. Halleck,*
    587 U.S. 802 (2019) .........................................................................................6, 9, 19

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) .................................................................................................21

*McCulloch v. Maryland,*
    17 U.S. (4 Wheat.) 316 (1819) ..................................................................................8

*NASD v. SEC,*
    431 F.3d 803 (D.C. Cir. 2005) ...................................................................................5

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black,*
    672 F. Supp. 3d 220 (N.D. Tex. 2023) .......................................................................5

*Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*,
107 F.4th 415 (5th Cir. 2024) ........................................................................3, 6

*In re NYSE Specialists Sec. Litig.*,
503 F.3d 89 (2d Cir. 2007)....................................................................................5

*Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*,
584 U.S. 325 (2018)......................................................................................21, 22

*Oklahoma v. United States*,
62 F.4th 221 (6th Cir. 2023) .........................................................................12, 14

*PennEast Pipeline Co. v. New Jersey*,
594 U.S. 482 (2021)...............................................................................................8

\* *Scottsdale Cap. Advisors Corp. v. FINRA (Scottsdale IV)*,
678 F. Supp. 3d 88 (D.D.C. 2023) ...................................................6, 10, 14, 24

*SEC v. Jarkesy*,
603 U.S. 109 (2024).......................................................................................16, 22

*In re Series 7 Broker Qualification Exam Scoring Litig.*,
548 F.3d 110 (D.C. Cir. 2008) ..............................................................................5

*Sparta Surgical Corp. v. NASD*,
159 F.3d 1209 (9th Cir. 1998) ..............................................................................5

*Thunder Basin Coal Co. v. Reich*,
510 U.S. 200 (1994)......................................................................................16, 19

*Trump v. United States*,
603 U.S. 593 (2024).............................................................................................11

*U.S. Inst. of Peace v. Jackson*,
783 F. Supp. 3d 316 (D.D.C. 2025) ......................................................................4

*United States v. Ackerman*,
831 F.3d 1292 (10th Cir. 2016) ............................................................................9

*United States v. Arthrex, Inc.*,
594 U.S. 1 (2021).................................................................................................11

*Vape Cent. Grp. v. FDA*,
2025 WL 637416 (D.D.C. Feb. 27, 2025) ..........................................................19

*Walmsley v. FTC*,
117 F.4th 1032 (8th Cir. 2024) .........................................................................3, 4

*Williams v. Pennsylvania,*
    579 U.S. 1 (2016) ...................................................................................................20, 21

*Withrow v. Larkin,*
    421 U.S. 35 (1975) ...................................................................................................20, 21

**Statutes**

15 U.S.C. § 78o(a)(2) .......................................................................................................23

15 U.S.C. § 78o(b)(9) .......................................................................................................23

15 U.S.C. § 78o-3(b)(5) .......................................................................................................9

15 U.S.C. § 78o-3(b)(6) .............................................................................................14, 24

15 U.S.C. § 78o-3(b)(8) ...................................................................................................19

15 U.S.C. § 78s(b)(2)(C)(i) .............................................................................................13

15 U.S.C. § 78s(c) .......................................................................................................12, 13

15 U.S.C. § 78s(d)(2) .......................................................................................................12

15 U.S.C. § 78s(h) .............................................................................................................13

15 U.S.C. § 3052(a) .............................................................................................................4

**Regulations**

17 C.F.R. § 240.15a-6 .......................................................................................................23

17 C.F.R. § 240.15a-10 .....................................................................................................23

17 C.F.R. § 240.15b9-1 .....................................................................................................23

17 C.F.R. § 240.15b9-2 .....................................................................................................23

**Rules**

FINRA Rule 9232(d)(2) ...................................................................................................20

FINRA Rule 9263(a) .........................................................................................................21

**Other Authorities**

Delegation of Authority to the Director of the Division of Market Regulation,
    51 Fed. Reg. 738, 739 (Jan. 8, 1986) .......................................................................23

Exemption for Certain Exchange Members,
   87 Fed. Reg. 49,930 (Aug. 12, 2022)........................................................................23

Frequently Asked Questions for Respondents in FINRA Disciplinary Proceedings ...................20

Gillian E. Metzger, *The Constitutional Duty to Supervise*,
   124 Yale L.J. 1836 (2015) ........................................................................................8

OLC, *The Test for Determining "Officer" Status Under the Appointments Clause*
   (Jan. 16, 2025)..........................................................................................................7

Order Granting a Temporary Conditional Exemption from the Broker Registration
   Requirements of Section 15(a) of the Securities Exchange Act of 1934 for
   Certain Activities of Registered Municipal Advisors,
   85 Fed. Reg. 37,133 (June 19, 2020) ......................................................................23

*In re Scottsdale Cap. Advisors Corp.*,
   Exchange Act Release No. 93052, 2021 WL 4242630 (Sept. 17, 2021)................................12

## I.    INTRODUCTION

After three years and four iterations of their Complaint, Plaintiffs are still unable to state a plausible claim against FINRA.  Plaintiffs' opposition almost entirely ignores this Court's reasoning in denying their motion for a preliminary injunction—as well as the decisions of other courts repeatedly rejecting indistinguishable constitutional challenges to FINRA and other private self-regulatory organizations—which provide overwhelming support for granting FINRA's motion to dismiss.  The responses that Plaintiffs attempt to muster are uniformly unconvincing.

Plaintiffs' appointment and removal claims fail because FINRA's private employees are not federal officers holding continuing positions established by law.  Plaintiffs' arguments that the Constitution's appointment and removal requirements apply to private individuals so long as they exercise significant executive authority—or, alternatively, that FINRA should be considered part of the government despite its entirely private creation, governance, and funding—are foreclosed by the plain language of the Constitution, extensive case law, and centuries of history.

Plaintiffs' private nondelegation, Vesting Clause, and Take Care Clause claims likewise fail because FINRA's enforcement activities and rulemaking are subject to the SEC's comprehensive oversight.  Plaintiffs ignore the SEC's robust regulatory tools, which include rulemaking powers that the SEC can deploy to regulate FINRA's investigatory and disciplinary actions even before they culminate in an SEC-reviewable final decision.  And Plaintiffs' public nondelegation claim not only is entirely inapplicable to a private entity like FINRA, but fails in any event because the Exchange Act supplies an "intelligible principle."

Plaintiffs fare no better in invoking various individual-rights provisions of the Constitution.  By acknowledging that Alpine is currently "pressing similar claims on direct review of a FINRA order" before the SEC, Opp. 42—which provides a meaningful path to review in a U.S. Court of

Appeals—Plaintiffs confirm the absence of subject matter jurisdiction over their Fifth and Seventh Amendment claims. Those claims also fail on the merits because, as courts in this District and elsewhere have repeatedly held, the Constitution's due process and jury trial requirements do not apply to FINRA's private proceedings. Plaintiffs' back-of-the-hand treatment of that admittedly "lengthy" list of authorities, *id.* at 29, provides no basis for departing from that consensus, and, in any event, Plaintiffs fail to identify procedural deficiencies in FINRA's disciplinary proceedings.

Finally, Plaintiffs' novel attempt to repackage their allegations as an unconstitutional conditions claim fails because Plaintiffs do not identify any constitutional rights they have supposedly been compelled to forgo, and because they were not required to join FINRA. Further, Plaintiffs' assertion that FINRA impermissibly infringes on their First Amendment associational rights contravenes both settled precedent and this Court's prior conclusion that FINRA's regulatory mission furthers compelling governmental interests.

The Court should dismiss the Third Amended Complaint in its entirety.

## II.    ARGUMENT

### A.    The Constitution's Appointment And Removal Requirements Do Not Apply To FINRA (Counts 1 & 3).

The Appointments Clause and the Constitution's corresponding removal requirements apply only to *public* officials who occupy continuing positions *established by law*. FINRA officials are private employees of a private company who do not hold positions created by statute. Plaintiffs' attempt to extend these structural constitutional requirements to private individuals employed by private companies and holding privately created offices disregards the Constitution's text, uniform precedent, and historical practice.

***The Constitution's appointment and removal requirements do not apply to private employees of a private corporation.*** According to Plaintiffs, whether FINRA is a public agency or a

2

private company, Plaintiffs need only show that FINRA officials "wield[] significant authority pursuant to the laws of the United States" to establish that they are subject to the Constitution's appointment and removal requirements.  Opp. 16.  Not so.

Both the Fifth and Eighth Circuits have recently considered and rejected this exact argument.  *See Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 107 F.4th 415, 440 (5th Cir. 2024), *vacated and remanded*, 145 S. Ct. 2837 (2025); *Walmsley v. FTC*, 117 F.4th 1032, 1041 (8th Cir. 2024) (same), *vacated and remanded*, 145 S. Ct. 2870 (2025).[1]  In *Black*, the plaintiffs "urge[d]" the Fifth Circuit "to extend" the "significant authority" test "well beyond the[] facts" of *Buckley v. Valeo*, 424 U.S. 1 (1976) (per curiam), and *Lucia v. SEC*, 585 U.S. 237 (2018)—where the Supreme Court applied the test to determine whether federal officials were "Officers of the United States"—"to analyze whether persons in a *private* entity are 'Officers.'"  *Black*, 107 F.4th at 439.  Citing the "insuperable hurdle" posed by *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374 (1995), the Fifth Circuit refused.  *Black*, 107 F.4th at 439.  As the court explained, *Lebron* "addressed when a private entity qualifies as part of the government for constitutional purposes"—a standard that the plaintiffs in *Black* could not meet as to the Horseracing Integrity and Safety Authority ("HISA"), *id.* at 439, and that Plaintiffs here cannot meet as to FINRA, *see* Mot. 20-23.  "Post-*Lebron*," the court emphasized, "no case has applied *Buckley*['s]" "significant authority" test to "private actors."  *Black*, 107 F.4th at 439.

The Eighth Circuit reached the same conclusion in *Walmsley*, where the court contrasted *Lucia*'s application of the "'significant authority'" test to SEC administrative law judges—who

---

[1]  The U.S. Supreme Court granted petitions for writs of certiorari in *Black* and *Walmsley*, vacated the opinions, and remanded the cases for further consideration in light of the Court's opinion in *FCC v. Consumers' Research*, 145 S. Ct. 2482 (2025), which addressed a private nondelegation challenge and thus did not call into question the lower courts' Appointments Clause analysis.

are "career appointees of a federal agency"—with the plaintiffs' attempted application of the test

to board members of HISA, a "'private, independent, self-regulatory, nonprofit corporation.'"

*Walmsley*, 117 F.4th at 1041 (quoting 15 U.S.C. § 3052(a)).  There was no need to apply the "sig-

nificant authority" test because "[t]he *Lebron* standard is not satisfied" as to HISA, which estab-

lished that "[t]he members of [HISA's] Board . . . are not officers of the United States."  *Id.*

The Supreme Court's decision in *Financial Oversight & Management Board for Puerto*

*Rico v. Aurelius Investment, LLC*, 590 U.S. 448 (2019), confirms that exercising "significant au-

thority pursuant to the laws of the United States," Opp. 16, is not sufficient to make someone an

"Officer[] of the United States."  As the Court there explained, even though Puerto Rico's Finan-

cial Oversight and Management Board was created by federal law and exercised "significan[t] . . .

duties," the analysis of whether the Appointments Clause applied to its members "cannot stop

there."  *Aurelius*, 590 U.S. at 468.  Despite their exercise of "considerable power" under federal

law, the board members still were not "Officers of the United States" subject to the Appointments

Clause because those powers were "primarily local," not federal.  *Id.* at 465, 467.

That analysis yields the same result here.  The appointment and removal analysis as to

FINRA's board members, hearing officers, and other employees "cannot stop" with whether they

exercise "significan[t] . . . duties," *Aurelius*, 590 U.S. at 468, but must instead encompass whether

they are *federal* officials—rather than state, local, or private ones—because if "individuals 'are

not officers of the United States, but instead are some other type of officer, the Appointments

Clause says nothing about them.'"  *Kim v. FINRA*, 698 F. Supp. 3d 147, 163-64 (D.D.C. 2023)

(quoting *Aurelius*, 590 U.S. at 468); *see also Kerpen v. Metro. Wash. Airports Auth.*, 907 F.3d 152,

160 (4th Cir. 2018) (Appointments Clause only "appl[ies] to federal entities"); *U.S. Inst. of Peace*

*v. Jackson*, 783 F. Supp. 3d 316, 342, 346 (D.D.C. 2025) (beginning with the "threshold inquiry

4

whether an entity should properly be considered part of the federal government" under the *Lebron* analysis that "applies to constitutional separation-of-powers questions"). In cases involving private companies, "'*Lebron*—rather than *Lucia*—supplies the appropriate standard'" for that aspect of the Appointments Clause inquiry. *Kim*, 698 F. Supp. 3d at 164-65 (quoting *Nat'l Horsemen's Benevolent & Protective Ass'n v. Black*, 672 F. Supp. 3d 220, 240 (N.D. Tex. 2023)).

Accordingly, Plaintiffs' lengthy discussion of (1) the functions performed by various FINRA officials, Opp. 19-22—designed to show that those officials supposedly exercise "significant authority"—and (2) "[s]tate-action precedent" and "governmental immunity," *id.* at 17-19— designed to show that the authority is exercised "pursuant to the laws of the United States"— cannot salvage Plaintiffs' appointment and removal claims. Those claims fail at the outset because FINRA is a private company under *Lebron* and its officials are therefore categorically ineligible to be "Officers of the United States." *See* Mot. 20-23.[2]

According to Plaintiffs, limiting the reach of the Constitution's appointment and removal requirements to government officials holding positions established by law could produce

---

[2] In any event, Plaintiffs have not shown that FINRA engages in state action when it exercises its self-regulatory powers. Opp. 18-19. *In re Series 7 Broker Qualification Exam Scoring Litigation*, 548 F.3d 110 (D.C. Cir. 2008), did not address state action at all, only the distinct question of self-regulatory immunity. And Plaintiffs' citation to *NASD v. SEC*, 431 F.3d 803 (D.C. Cir. 2005), which also did not address state action, merely excerpts background passages summarizing the NASD's role under the Exchange Act. Plaintiffs further fail to grapple with the extensive body of case law confirming that FINRA's exercise of its self-regulatory responsibilities is not state action. *See* Mot. 35-37; *see also* U.S. Br. 28. Nor does FINRA's entitlement to immunity when performing self-regulatory functions indicate that it is engaged in state action. *See* Opp. 19. As courts have recognized, "'[i]mmunity doctrines protect *private* actors when they perform important governmental functions.'" *Sparta Surgical Corp. v. NASD*, 159 F.3d 1209, 1213 (9th Cir. 1998) (emphasis added; citation omitted), *abrogated in part on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374 (2016). The standard for affording regulatory immunity turns on "whether [the] specific [challenged] acts and forbearances were incident to the exercise of regulatory power," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 98 (2d Cir. 2007), which is analytically distinct, and governed by a different legal standard, from whether a private entity's regulatory conduct amounts to state action, *see* Mot. 34-38.

"troubling results"—such as the creation of a private "tax czar"—but they ignore the availability of other constitutional safeguards. Opp. 24. In particular, Plaintiffs' accountability concerns are addressed not by Article II, but by the "private nondelegation doctrine," which "corrals any attempts to evade *Lebron* by giving unaccountable governmental power to a pre-existing private entity." *Black*, 107 F.4th at 440. Far from being "irrelevant," Opp. 25, the Supreme Court has recently confirmed that the private nondelegation doctrine provides meaningful constitutional safeguards that require private parties exercising delegated powers to "function[] subordinately to the agency" and "subject to its authority and surveillance." *Consumers' Rsch.*, 145 S. Ct. at 2508 (internal quotation marks omitted). Thus, the far more troubling result, as this Court has already recognized, would be to extend inapplicable structural constitutional requirements to private entities like FINRA, impairing FINRA's regulatory functions and "resulting in a potentially dramatic increase to the SEC's workload." *Scottsdale Cap. Advisors Corp. v. FINRA (Scottsdale IV)*, 678 F. Supp. 3d 88, 104-05 (D.D.C. 2023) (explaining that "policy considerations militate strongly against accepting Alpine's" arguments), *rev'd in part on other grounds sub nom. Alpine Sec. Corp. v. FINRA*, 121 F.4th 1314 (D.C. Cir. 2024). And the implications of Plaintiffs' argument are not limited to the securities industry—their position risks expanding the Constitution's reach to vast swaths of private conduct, "significantly endanger[ing] individual liberty and private enterprise." *Manhattan Cmty. Access Corp. v. Halleck*, 587 U.S. 802, 816 (2019).

Plaintiffs are unable to identify a single case applying the Constitution's appointment and removal requirements to officials of a private corporation that is not part of the government under *Lebron*. There is none. Plaintiffs repeatedly invoke *Blount v. SEC*, 61 F.3d 938 (D.C. Cir. 1995), but that case addressed a "challenge[] [to] the SEC's order approving" a rule promulgated by the Municipal Securities Rulemaking Board under the First and Tenth Amendments, not under Article

II.  *Id.* at 940.  And while the court referred in passing to the "rule" as government action for First Amendment purposes, that reasoning sheds no light on the constitutional definition of "Officer[] of the United States"—it clearly refers, in context, to the SEC's "approval" of that rule, not to the Board's action in proposing it.  *Id.* at 942.

The Supreme Court's discussion of the difference between officers subject to the Appointments Clause and other government employees in *Freytag v. Commissioner*, 501 U.S. 868 (1991), is equally inapposite.  *See* Opp. 25.  As with all of Plaintiffs' appointment and removal cases, *Freytag* concerned officials who were indisputably government employees—Tax Court special trial judges—not private individuals employed by a private company.  501 U.S. at 870-71; *see also Lucia*, 585 U.S. at 241 (holding that SEC ALJs are subject to the Appointments Clause, which "lays out the permissible methods of appointing 'Officers of the United States,' a class of *government officials* distinct from *mere employees*" (emphases added)).

Plaintiffs also claim support from the Office of Legal Counsel ("OLC"), Opp. 25, but they fail to discuss OLC's most recent opinion on this topic, which confirms that the Appointments Clause does not apply to officers of a private entity unless a nominally private entity is actually "part of the government" under *Lebron*.  OLC, *The Test for Determining "Officer" Status Under the Appointments Clause* 7 (Jan. 16, 2025), https://www.justice.gov/olc/media/1385406/dl.  Plaintiffs instead misread a 2007 OLC opinion as supposedly supporting their view that the Appointments Clause can apply to private employees.  But as the 2025 OLC opinion explains, the 2007 opinion is "largely consistent" with both OLC's earlier (1996) and later (2025) opinions on this topic, "and with the Supreme Court's view that the Appointments Clause only applies to persons and entities that are part of the federal government for constitutional purposes."  *Id.* at 8.

Plaintiffs also claim that the Bank of the United States does not provide historical support for FINRA's position, arguing that the Bank's officials were not officers subject to Article II because they "did not wield sovereign power" (rather than because they were employees of a private corporation). Opp. 26. But as the Supreme Court explained in *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819), the Bank was "an instrument of the government for fiscal purposes" and "proceed[ed] from the supreme power" of the government. *Id.* at 396; *see also* Gillian E. Metzger, *The Constitutional Duty to Supervise*, 124 Yale L.J. 1836, 1883 (2015) (discussing Congress's historically "widespread delegation of responsibility to nongovernmental actors, such as the . . . reliance on the Bank of the United States to control the money supply"). Plaintiffs also ignore Congress's long historical practice of delegating the eminent domain power to private parties without subjecting them to the Constitution's appointment and removal requirements. *See* Mot. 18 n.3; *PennEast Pipeline Co. v. New Jersey*, 594 U.S. 482, 495, 497 (2021).

***FINRA is not part of the government under* Lebron*.** Plaintiffs also contend that FINRA actually *is* part of the government and thus subject to constitutional appointment and removal requirements under *Lebron*. *See* Opp. 27-29. But that argument is foreclosed by their Complaint's repeated acknowledgment of FINRA's private status—a point that also runs throughout their opposition. *See*, *e.g.*, TAC ¶¶ 5, 14, 153, 157; Opp. 1, 37, 39.

Beyond that, Plaintiffs fail to show that FINRA has any of the relevant features that would make it part of the government under *Lebron*. As the D.C. Circuit has held, "a corporation is part of the Government for constitutional purposes when: (1) the Government creates the corporation by special law, (2) for the furtherance of governmental objectives, and (3) retains for itself permanent authority to appoint a majority of the directors of that corporation." *Herron v. Fannie Mae*, 861 F.3d 160, 167 (D.C. Cir. 2017) (alterations and internal quotation marks omitted). It is

undisputed that "Congress did not create FINRA," that the "government does not appoint the members of FINRA's board," and that the government "does not fund FINRA." Opp. 28. Rather, "FINRA is organized as a Delaware nonprofit corporation operated by private individuals and receives no funding from the federal government." *Alpine*, 121 F.4th at 1321.

Plaintiffs nevertheless argue that the SEC's oversight of FINRA "make[s] clear" that it is "part of the government" and that the government supposedly authorized FINRA to collect fees from its members. Opp. 27-28. But as the Supreme Court has made clear, "being regulated by the State does not make one a state actor." *Halleck*, 587 U.S. at 816. Moreover, Congress did not "authorize[] FINRA to collect fees from its members," Opp. 28, but instead mandated that there be an "equitable allocation" of any fees or other charges that self-regulatory organizations decide to charge, *see* 15 U.S.C. § 78o-3(b)(5). And even if Congress had authorized FINRA to collect fees, that would have no constitutional significance under *Lebron*. *See Herron*, 861 F.3d at 167.

*United States v. Ackerman*, 831 F.3d 1292 (10th Cir. 2016), does not help Plaintiffs, either. There, the Tenth Circuit held that the National Center for Missing and Exploited Children qualifies as a "governmental entity" because "Congress passed statutes to fund and mandate various of" the Center's functions, the Center is "statutorily required to perform over a dozen separate functions," "[l]aw enforcement agents participate at varying levels in its daily operations," "government officials enjoy a sizeable presence on its board," and "[a]s much as 75 percent of its budget . . . comes from the federal government." *Id.* at 1297-98. None of these features is shared by FINRA.

Plaintiffs also attempt to limit the significance of the Supreme Court's distinction in *Free Enterprise Fund v. PCAOB*, 561 U.S. 477 (2010), between "private self-regulatory organizations in the securities industry—such as the New York Stock Exchange—that investigate and discipline their own members subject to Commission oversight," and the PCAOB, which, "[u]*nlike the self-*

9

*regulatory organizations*," is a "Government-created, Government-appointed entity" that is therefore subject to the Constitution's appointment and removal requirements. *Id.* at 484-85 (emphasis added).  According to Plaintiffs, because the Court mentioned the New York Stock Exchange, this reasoning is inapplicable to FINRA.  Opp. 28-29.  But the opposite is true:  FINRA was created by a merger of the New York Stock Exchange's regulatory arm with the NASD, and it shares all of the New York Stock Exchange's relevant characteristics for purposes of *Lebron*.  *See* Mot. 6-7.

Plaintiffs also brush off the courts' uniform agreement that FINRA is not part of the government, suggesting that "few" courts "consider FINRA's features or engage in meaningful state-action analysis."  Opp. 29.  But that argument ignores many examples to the contrary, including this Court's prior analysis in this case.  *See Scottsdale IV*, 678 F. Supp. 3d at 103-04.  Similarly, Plaintiffs' suggestion that Judge Reyes's opinion in *Kim* "contains no analysis—just a single sentence stating courts have held that FINRA is not a state actor," Opp. 29—ignores the opinion's careful and extensive discussion of the *Lebron* factors and the history of private self-regulation in the securities industry, *see Kim*, 698 F. Supp. 3d at 155-57, 161-64.  Plaintiffs provide no reason for this Court to reconsider its prior analysis or to break from the uniform body of precedent holding that FINRA is not part of the government for constitutional purposes.

**FINRA employees do not hold offices established by law.**  Finally, even if Article II's appointment and removal requirements did apply to private companies, or if FINRA were part of the government for constitutional purposes, Plaintiffs' claims would still fail because FINRA employees do not hold positions "established by Law."  *See* Mot. 23-24; U.S. Br. 25-26.

Plaintiffs' argument would excise these words from Article II.  They concede that "FINRA officials do not occupy positions established by law," but nevertheless contend that this fact weighs *in favor of applying* the Appointments Clause.  Opp. 22 (bold text omitted).  Plaintiffs cite no case

law supporting their position.  They rely primarily on Justice Thomas's concurrence in *Trump v. United States*, 603 U.S. 593 (2024).  But Justice Thomas did not argue that the "established by Law" requirement was irrelevant to the constitutional definition of "Officers of the United States." Rather, he stated that "'established by law' refers to an office that Congress creates 'by statute'" and emphasized that the question of "*who* creates a federal office"—between the Executive and Congress—is a key consideration in determining whether the government employee holding that office is an "Officer[] of the United States."  *Id.* at 645, 647-48.

Nor does limiting the appointment and removal requirements to positions established by law "contravene[]" *United States v. Arthrex, Inc.*, 594 U.S. 1 (2021).  Opp. 23.  *Arthrex* addressed only whether Patent Trial and Appeal Board administrative patent judges—government employees whose positions were established by statute—could constitutionally render decisions absent the opportunity for review by a principal officer.  594 U.S. at 23.  It nowhere suggested that private individuals holding positions not established by statute are subject to Article II's appointment and removal requirements.

**B.**     **There Is No Vesting Clause, Take Care Clause, Or Private Nondelegation Violation Because FINRA Functions Subordinately To, And Under The Authority And Surveillance Of, The SEC (Counts 2 & 4).**

Plaintiffs' private nondelegation and Vesting and Take Care Clause claims fail because FINRA "function[s] subordinately to," and under the "authority and surveillance" of, the government.  *Consumers' Rsch.*, 145 S. Ct. at 2508.  That conclusion follows from the D.C. Circuit's decision in this case, which held that a preliminary injunction was warranted *only* insofar as FINRA's expedited disciplinary proceeding could lead to Alpine's immediate expulsion from FINRA "with no opportunity for SEC review" but otherwise permitted FINRA's disciplinary proceeding to move forward over Alpine's private nondelegation objection.  *Alpine*, 121 F.4th at 1319. As the D.C. Circuit explained, "a delegation of governmental authority to a private entity [is]

constitutional" as long as the government "retains the ultimate authority to approve, disapprove, or modify the private entity's actions and decisions on delegated matters." *Id.* at 1325 (alterations and internal quotation marks omitted). That is precisely the case in the SEC-FINRA relationship. Mot. 26-28; *see, e.g.*, *In re Scottsdale Cap. Advisors Corp.*, Exchange Act Release No. 93052, 2021 WL 4242630 (Sept. 17, 2021) (overturning a FINRA disciplinary sanction against Scottsdale). Indeed, "in case after case, the courts have upheld this arrangement against private nondelegation challenges." *Kim*, 698 F. Supp. 3d at 166 (alteration and internal quotation marks omitted). Plaintiffs largely ignore—and offer no persuasive reason to depart from—this uniform body of private nondelegation case law expressly approving the SEC-FINRA relationship.

Plaintiffs acknowledge that FINRA's final disciplinary decisions are reviewable by the SEC, but maintain that its initial investigatory and enforcement activities are beyond the SEC's oversight. Opp. 31-33. Those nonfinal actions, however, will be subject to de novo SEC review if they ever culminate in a final FINRA decision imposing sanctions on a member. 15 U.S.C. § 78s(d)(2). Plaintiffs also downplay the SEC's power to "abrogate, add to, and delete from" FINRA's rules, 15 U.S.C. § 78s(c), which the SEC can use to impose meaningful constraints on FINRA's regulatory activities even *before* they culminate in a final disciplinary decision, *see* Mot. 26-27; U.S. Br. 18 (explaining that the SEC's oversight power extends to "FINRA rules governing FINRA's investigation and enforcement powers"). For example, if the SEC believes that FINRA should not be targeting particular classes of conduct in its regulatory activities, it could promulgate a rule prohibiting FINRA from beginning investigations or initiating disciplinary proceedings in those areas or under particular FINRA rules or statutory provisions. Or, even more broadly, the SEC could use its rulemaking power to require that FINRA pre-clear all, or a subset, of its investigations or disciplinary actions with the SEC. *See Oklahoma v. United States*, 62 F.4th 221, 231

(6th Cir. 2023) (identifying a preclearance rule as a regulatory tool available to the FTC in over-seeing a self-regulatory organization modeled on FINRA), *vacated and remanded*, 145 S. Ct. 2836 (2025).  In addition, the SEC regularly examines FINRA to ensure that it is carrying out its disciplinary functions in accordance with statutory and regulatory requirements and can sanction FINRA for deficiencies in its disciplinary process.  15 U.S.C. § 78s(h).  As a last resort, the SEC could even revoke FINRA's status as a self-regulatory organization, *id.*—which meaningfully distinguishes FINRA from the private coal producers in *Carter v. Carter Coal Co.*, 298 U.S. 238 (1936), *see* Opp. 33, whose powers to set minimum wages and maximum hours could not be eliminated by any federal agency, *see Carter Coal*, 298 U.S. at 310-11.

Plaintiffs suggest that the "SEC may amend FINRA rules for only limited purposes," but the Exchange Act's language is broad:  the Commission may amend FINRA's rules "*as* [*it*] *deems necessary or appropriate* to insure the fair administration of the self-regulatory organization, to conform its rules to requirements of [the Exchange Act] . . . , or otherwise in furtherance of the purposes of" the Act.  15 U.S.C. § 78s(c) (emphasis added).  At the same time, Plaintiffs overstate FINRA's enforcement powers, equating them to the authority to "prosecute alleged violations of federal law."  Opp. 31.  But FINRA, in contrast with the SEC, cannot bring enforcement actions in court or subpoena witnesses or documents to further an investigation.  *See* Mot. 7-8; U.S. Br. 26-27.

Plaintiffs also contend that the SEC's oversight of FINRA's rulemaking power is constitutionally inadequate, seizing on statutory language stating that the SEC must approve proposed rule changes that are "consistent with the requirements of this chapter and the rules and regulations issued under" it.  15 U.S.C. § 78s(b)(2)(C)(i).  But the statutory requirements specified in the Exchange Act—for instance, that a national securities association's rules must "prevent fraudulent

and manipulative acts and practices," "promote just and equitable principles of trade," and "protect investors and the public interest," *id.* § 78o-3(b)(6)—afford the SEC ample authority to disapprove proposed rules on policy grounds.  That is one of the reasons that courts have consistently concluded that FINRA's rulemaking power is subject to "significant SEC oversight." *Aslin v. FINRA*, 704 F.3d 475, 476 (7th Cir. 2013); *see also Oklahoma*, 62 F.4th at 231-32 (concluding that the FTC's authority to modify HISA's rules "for any reason at all, including policy disagreements," "parallels similar authority exercised by the SEC" over self-regulatory organizations); Mot. 26-27; U.S. Br. 18-19.

**C.    The Exchange Act Does Not Improperly Delegate Legislative Power (Count 5).**

Plaintiffs ignore the threshold defect in their public nondelegation claim—FINRA is a *private* entity, not part of the government, and thus is not subject to the public nondelegation doctrine. FINRA's private status alone dooms Plaintiffs' public nondelegation claim.  *See* Mot. 6-7, 28.

Even if the public nondelegation doctrine did apply to FINRA, Plaintiffs' claim would still fail because the Exchange Act makes "clear both 'the general policy' that [FINRA] must pursue and 'the boundaries of [its] delegated authority.'" *Consumers' Rsch.*, 145 S. Ct. at 2497 (quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 105 (1946)) (second alteration in original).  As this Court previously concluded (and Plaintiffs fail to address), "assuming, *arguendo*, that FINRA qualifies as a state actor" subject to the public nondelegation doctrine, "in describing the duties of SROs, Congress delineated specific objectives that SROs should strive to accomplish, providing an 'intelligible principle.'" *Scottsdale IV*, 678 F. Supp. 3d at 107 n.9; *see* 15 U.S.C. § 78o-3(b)(6) (a self-regulatory organization's rules must be designed, among other things, to "prevent fraudulent and manipulative acts and practices, to promote just and equitable principles of trade, . . . [and] to protect investors and the public interest," and cannot be designed to "permit unfair discrimination" or "regulate . . . matters not related to the purposes" of the Exchange Act).  Plaintiffs' bald

14

assertion that the Exchange Act "supplies no boundaries at all to cabin FINRA's authority" is impossible to reconcile with this Court's reasoning or the plain language of the statute.  Opp. 37.

Nor do Plaintiffs' citations of various Justices' concurring or dissenting opinions call into question the numerous cases finding an intelligible principle in language similar to the Exchange Act's provisions.  *See* Mot. 29; U.S. Br. 23 (collecting opinions).  As the Supreme Court noted this past Term, it has "affirmed authorizations to regulate in the 'public interest' and to set 'just and reasonable' rates, because [it] thought the discretion given was not unbridled" based on the "broader statutory contexts, which . . . supplied the content necessary to satisfy the intelligible-principle test."  *Consumers' Rsch.*, 145 S. Ct. at 2503.  The Exchange Act's requirements are thus "more than adequate to meet the tremendously low hurdle for Congress to clear" under the public nondelegation doctrine.  *Alpine Sec. Corp. v. Nat'l Sec. Clearing Corp.*, 2025 WL 901847, at *6 (D. Utah Mar. 25, 2025).

Plaintiffs' argument that the Supreme Court has not addressed "a delegation of (1) core legislative power (2) to a nominally private entity (3) comprised of officials insulated from at-will removal by the President," Opp. 37, is not a public nondelegation argument at all—it is a repackaging of Plaintiffs' private nondelegation and removal claims, *see* U.S. Br. 23-24.  Those claims fail for the reasons discussed above, *see supra* at 2-14, and have no bearing on Plaintiffs' equally flawed public nondelegation claim.

**D.    Plaintiffs' Fifth And Seventh Amendment Claims Are Jurisdictionally Barred And Fail To State A Claim (Counts 6 & 7).**

This Court's jurisdiction over Plaintiffs' Fifth and Seventh Amendment claims is foreclosed by the Exchange Act's exclusive review scheme, which Alpine is currently invoking in pressing identical challenges before the SEC.  But even if this Court had jurisdiction, Plaintiffs' claims would fail as a matter of law.

1.    **This Court Lacks Jurisdiction Over Plaintiffs' Fifth And Seventh Amendment Claims.**

Plaintiffs do not dispute that the Exchange Act presumptively "preclude[s] district courts from exercising jurisdiction" over their Fifth and Seventh Amendment challenges "by specifying a different method to resolve [those] claims" under the Exchange Act's administrative-review process. *Axon Enter., Inc. v. FTC*, 598 U.S. 175, 185 (2023). Instead, Plaintiffs provide a cursory argument that their claims meet each of the factors laid out in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), for securing an exception to the Exchange Act's exclusive review scheme. Plaintiffs' argument is unconvincing.

*First*, Plaintiffs argue that their alleged "subjection to illegitimate proceedings led by decisionmakers who are illegitimate because they are unduly biased" and to non-jury proceedings before FINRA are "here and now injur[ies]" from a FINRA disciplinary proceeding that cannot be remedied through appellate review. Opp. 43-44. But Plaintiffs are not parties to any ongoing FINRA disciplinary proceedings and therefore cannot possibly be incurring "here-and-now injur[ies]" entitling them to bypass the Exchange Act's review framework under *Axon*. 598 U.S. at 191 (internal quotation marks omitted). And even beyond that fatal flaw in their jurisdictional argument, Plaintiffs do not address the fact that *SEC v. Jarkesy*, 603 U.S. 109 (2024)—Plaintiffs' principal Seventh Amendment authority—"came up on direct review" under the Exchange Act, "not collateral attack" in district court. *Blankenship v. FINRA*, 2024 WL 4043442, at *2 n.3 (E.D. Pa. Sept. 4, 2024); *see* Mot. 33. Plaintiffs concede that Alpine is currently pursuing the same statutory path—"pressing similar claims on direct review of a FINRA order" before the SEC— that would enable meaningful appellate review of any adverse SEC ruling. Opp. 42.

Plaintiffs also "acknowledge" the decisions of "several courts" that have "dismissed comparable claims on jurisdictional grounds." Opp. 42. Yet Plaintiffs make no attempt to distinguish

this "chorus" of contrary case law. *Lemelson v. SEC*, 2025 WL 1503815, at *5 (D.D.C. May 27, 2025).  In fact, at least *nine* decisions—including two from this District—have recently rejected similar Seventh Amendment claims for lack of subject matter jurisdiction, reasoning that such claims, like Plaintiffs' here, could be fully addressed by review in a court of appeals.  *See* Mot. 32 (collecting cases); U.S. Br. 16 (collecting cases dismissing Seventh Amendment and due process claims).  And the District of Utah recently dismissed Alpine's Fifth Amendment challenge to the disciplinary proceedings of other self-regulatory organizations for the same reasons.  *Alpine Sec. Corp.*, 2025 WL 901847, at *3-5.

Nor do Plaintiffs accurately describe their claimed injury, which is the actual (in Alpine's case) or hypothetical (in Scottsdale's case) imposition of sanctions by a FINRA hearing panel. While Plaintiffs try to dress up this alleged injury in the language of *Axon*—claiming due process and Seventh Amendment violations because "Plaintiffs are harmed by subjection to illegitimate proceedings led by decisionmakers who are illegitimate," Opp. 43—Plaintiffs' claimed injuries are not attributable to supposed constitutional defects in a regulatory body's "structure or very existence" that would be "impossible to remedy once the proceeding is over." *Axon*, 598 U.S. at 189, 191.  Their alleged harms can be remedied by a court of appeals decision overturning any sanction imposed by FINRA and upheld by the SEC, just as appellate courts overturn district court judgments where the proceedings failed to afford defendants their Fifth or Seventh Amendment rights.  Indeed, the disciplinary sanctions that FINRA imposed on Alpine are stayed pending the resolution of ongoing SEC review proceedings, *see* Mot. 14, underscoring Alpine's access to meaningful judicial review of those sanctions in the event the SEC sustains them.

*Second*, and relatedly, Plaintiffs argue that their claims "implicate[]" FINRA's "power to proceed at all" and are therefore collateral to the Exchange Act's review provisions.  Opp. 43-44.

Unlike in *Axon*, however, Plaintiffs do not "object to [FINRA's] power generally," 598 U.S. at 193, but instead to how that power could be wielded in specific disciplinary proceedings involving particular allegations and procedures, which are claims that directly "relate to the subject of" those proceedings. *Id.*; *see also* U.S. Br. 12-15.

*Third*, Plaintiffs fail to show that their claims are outside the SEC's expertise simply because they involve questions about due process and the Seventh Amendment as opposed to "securities regulation." Opp. 43-44. Plaintiffs do not dispute that the SEC regularly entertains similar Fifth and Seventh Amendment claims—indeed, Alpine itself is currently "pressing similar claims on direct review of a FINRA order" before the SEC. *Id.* at 42; *see also* Mot. 34; U.S. Br. 11-12. Nor do Plaintiffs address the fact that their constitutional claims are "intertwined with [and] embedded in matters on which the [SEC] is expert"—the procedures applied in FINRA disciplinary proceedings. *Axon*, 598 U.S. at 195. Plaintiffs instead "narrowly focus[] on the Commission's expertise in the securities laws it applies," while "overlook[ing] the Commission's development of concurrent familiarity in [the] issues that regularly arise in the course of its proceedings" and the underlying FINRA proceedings it routinely reviews. *Jarkesy v. SEC*, 803 F.3d 9, 28 (D.C. Cir. 2015); *see also*, *e.g.*, *Alpine Sec. Corp. v. FINRA*, 2021 WL 4060943, at *5 (D. Utah Sept. 7, 2021) (rejecting argument that "neither FINRA nor the SEC have any expertise in resolving [the] allegations of constitutional violation of due process").

In addition to addressing the constitutional claims themselves, the SEC's expertise could "be 'brought to bear'" in a manner especially pertinent to the "threshold questions" that "accompany a constitutional claim," *Elgin v. Dep't of Treasury*, 567 U.S. 1, 22-23 (2012), such as the meaning and contours of FINRA's rules, which, in turn, inform whether the obligations imposed by those rules comport with due process under the Fifth Amendment or have common-law

analogues for Seventh Amendment purposes.  Regarding Plaintiffs' Seventh Amendment claim in particular, because "the constitutional question—that is, whether [Plaintiffs are] entitled to a jury trial—is intertwined with the question" that would be before the SEC—whether Plaintiffs violated FINRA rules and what sanctions may be warranted—the SEC's expertise regarding FINRA's rules "may play a central role in the court of appeals' ultimate resolution of the constitutional argument." *Vape Cent. Grp. v. FDA*, 2025 WL 637416, at \*9 (D.D.C. Feb. 27, 2025).

All three *Thunder Basin* factors therefore weigh decisively against jurisdiction here.

### 2.    Plaintiffs' Fifth And Seventh Amendment Claims Fail As A Matter Of Law.

Even if Plaintiffs could establish this Court's jurisdiction, their Fifth and Seventh Amendment claims would fail for multiple reasons.  As an initial matter, as discussed above, Plaintiffs have failed to establish either that FINRA is part of the government for constitutional purposes or that FINRA's disciplinary proceedings are one of the "few limited circumstances," *Halleck*, 587 U.S. at 809, in which a private entity's conduct is "fairly attributable to" the government and thus treated as state action, *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *see supra* at 5 n.2, 8-10.  Plaintiffs' Fifth and Seventh Amendment claims also fail for additional, claim-specific reasons.

#### a)    FINRA Disciplinary Proceedings Afford Sufficient Due Process.

Plaintiffs' Fifth Amendment claim is legally baseless because FINRA's disciplinary proceedings fully comport with due process.  Indeed, Congress has expressly obligated the SEC to ensure that FINRA's rules "provide a fair procedure for the disciplining of members."  15 U.S.C. § 78o-3(b)(8).

Plaintiffs nevertheless contend that industry members' service on hearing panels, with the ability to sanction other industry participants, creates an "unconstitutional potential for bias."  Opp. 38 (internal quotation marks omitted).  But Plaintiffs have not alleged any facts substantiating any

such potential bias. They offer only the conclusory allegations that FINRA exercises its powers "in a discriminatory manner," TAC ¶ 75, and that FINRA has "targeted" entities and individuals "operating in the microcap markets," *id.* ¶ 92, without any plausible *factual* allegations substantiating those assertions. The SEC's decision overturning a FINRA sanction imposed on Scottsdale does not show that FINRA's adjudicators were unconstitutionally biased. Opp. 38. If it did, every judge who ruled against a party and whose decision was later overturned on appeal would automatically be disqualified.

Moreover, FINRA Rule 9232(d)(2) provides that FINRA panel members cannot have "any conflict of interest or bias, [or] any appearance thereof." *See also* Frequently Asked Questions for Respondents in FINRA Disciplinary Proceedings, https://tinyurl.com/yc5acp4p (industry panelists are evaluated to ensure they are "free of conflicts of interest and that no circumstances exist where the candidate's fairness might reasonably be questioned"). This case is thus far different from *Carter Coal*, where the Supreme Court determined, based on the record before it, that it was impermissible to grant some coal-industry participants regulatory authority over others because the specific competitive conditions in the industry created adverse and antagonistic interests. 298 U.S. at 311. Unlike here, *Carter Coal* involved no agency-approved rules to ensure procedural fairness and no vetting procedures to root out biased decision-makers. In fact, all members of the securities industry share a common interest in the fair and consistent enforcement of standards of ethical conduct.

Nor have Plaintiffs shown "special . . . circumstances" demonstrating that FINRA's combination of rulemaking, enforcement, and adjudicative functions is unconstitutional. *Withrow v. Larkin*, 421 U.S. 35, 58 (1975). Plaintiffs point to *Williams v. Pennsylvania*, 579 U.S. 1 (2016), Opp. 39, but the Court there held only that "there is an impermissible risk of actual bias when a

20

judge . . . had significant, personal involvement as a prosecutor." *Williams*, 579 U.S. at 8. No such risk is present here, where Plaintiffs do not allege that FINRA's enforcement personnel have any personal involvement in adjudicating claims in FINRA's disciplinary proceedings. Nor does the involvement of industry panelists rise to the level of "special circumstances." On the contrary, in *Withrow*, an analogous situation, the Court found that the combination of functions in a state medical licensing board "composed of practicing physicians" did not, without more, violate due process. 421 U.S. at 37, 58.

Further, while Plaintiffs claim that FINRA "abjures any evidentiary safeguards," Opp. 39, they ignore the extensive procedures mandated under FINRA's rules, *see* Mot. 39. Those SEC-approved procedures—which, among other protections, authorize the hearing officer to "exclude all evidence that is irrelevant, immaterial, unduly repetitious, or unduly prejudicial," FINRA Rule 9263(a)—fully comply with "[t]he fundamental requirement of due process" to allow an "opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976). Other courts have so held. *E.g.*, *Cody v. SEC*, 693 F.3d 251, 257-58 (1st Cir. 2012) (rejecting due-process challenge to FINRA procedures).

> ### b)    FINRA Disciplinary Proceedings Do Not Implicate The Seventh Amendment.

Plaintiffs' Seventh Amendment claim fails because FINRA's private disciplinary proceedings have no common-law analogue and are therefore categorically outside the scope of Article III and, in turn, the Seventh Amendment. Mot. 40-41; *see Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 345 (2018) ("[W]hen Congress properly assigns a matter to adjudication in a non-Article III tribunal, 'the Seventh Amendment poses no independent bar to the adjudication of that action by a nonjury factfinder.'").

In response, Plaintiffs argue that Article III applies to FINRA disciplinary proceedings because, at the time of the Founding, "true SROs were voluntary membership associations" and "FINRA, in contrast, wields delegated federal power to seek regulatory fines for violations of federal law." Opp. 41. But Congress's imposition of a federal regulatory overlay on the centuries-old private self-regulatory framework does not transform FINRA's private disciplinary proceedings into the stuff of "traditional actions at common law." *Jarkesy*, 603 U.S. at 128. FINRA remains a private membership organization that, when appropriate, brings private disciplinary proceedings against its private members—just as its predecessors did in the 1790s. These self-regulatory proceedings have no analogue to the types of matters heard in common-law courts at the time of the Founding. Mot. 41. And even if a government requirement to join a private organization were sufficient to bring the organization's private proceedings within Article III (it is not), Plaintiffs did not join FINRA under compulsion: They were free to apply for an exemption from the SEC, trade securities only on exchanges of which they are members, provide investment advice as investment advisors rather than broker-dealers, or form a competing national securities association. *Id.* at 42-43. None of those alternatives would have required joining FINRA, which Plaintiffs nevertheless voluntarily elected to do.

Because Article III does not apply to FINRA's private disciplinary proceedings, the Seventh Amendment does not apply to those proceedings, either. *See Oil States*, 584 U.S. at 345.

## E.    Plaintiffs Have Not Been Compelled To Forgo Their Constitutional Rights (Count 8).

Plaintiffs' attempt to repackage their freestanding constitutional claims as an unconstitutional-conditions claim should be rejected for two reasons already discussed. First, Plaintiffs' constitutional rights are not impaired by joining FINRA (*see supra* at 2-22), and second, Plaintiffs were not compelled to join FINRA.

On the second point, Plaintiffs do not seriously dispute that they have viable alternatives to joining FINRA. They do not explain, for instance, why it is supposedly "implausible" that Plaintiffs and other broker-dealers could register a competing national securities association under the Exchange Act or obtain an exemption from the SEC. Opp. 18 n.2. Plaintiffs never suggest that they have attempted either of those alternatives or that the SEC has a history of denying applications to register new securities associations or exemptions from membership. *See* U.S. Br. 31 n.4 (explaining that these statutory carveouts doom any facial unconstitutional-conditions challenge).

In fact, the SEC has regularly exercised its authority under 15 U.S.C. § 78o(b)(9) to exempt broker-dealers from the requirement of securities-association membership. Shortly after the Exchange Act was amended in 1983 to eliminate an alternative program of direct SEC regulation, the SEC adopted Exchange Act Rule 15b9-1, which exempts exchange members from the membership requirement, subject to certain conditions that the SEC has amended periodically. 17 C.F.R. § 240.15b9-1; *see* Exemption for Certain Exchange Members, 87 Fed. Reg. 49,930, 49,930-32, 49,935-36 (Aug. 12, 2022) (recounting history). In addition, in 1998, the SEC adopted Exchange Act Rule 15b9-2, which exempts over-the-counter derivatives traders from the requirement of securities-association membership. 17 C.F.R. § 240.15b9-2. The SEC has also issued exemptions by order. *See*, *e.g.*, Delegation of Authority to the Director of the Division of Market Regulation, 51 Fed. Reg. 738, 739 (Jan. 8, 1986). Moreover, the SEC regularly exercises its authority under 15 U.S.C. § 78o(a)(2) to grant exemptions from the antecedent requirement that broker-dealers register with the SEC. *See*, *e.g.*, 17 C.F.R. § 240.15a-6 (exempting from registration certain foreign broker-dealers); *id.* § 240.15a-10 (exempting broker-dealers transacting in security futures products); Order Granting a Temporary Conditional Exemption from the Broker Registration

Requirements of Section 15(a) of the Securities Exchange Act of 1934 for Certain Activities of Registered Municipal Advisors, 85 Fed. Reg. 37,133 (June 19, 2020) (granting a temporary conditional exemption for certain activities in light of the COVID-19 pandemic).

Plaintiffs' invocation of the First Amendment is equally unavailing. They have waived any compelled-speech claim, as neither the Complaint nor Plaintiffs' brief identifies any "messages" they were compelled to "endorse." TAC ¶ 178; *see* Mot. 43. And to the extent that Plaintiffs assert a First Amendment associational claim, they appear to acknowledge that their position is contrary to the overwhelming weight of precedent upholding mandatory membership in professional organizations and merely raise the argument for preservation. *See* Opp. 45. Regardless, as this Court has already recognized, there are several compelling interests that justify FINRA's regulatory mission, including "prevent[ing] fraudulent and manipulative acts and practices," "promot[ing] just and equitable principles of trade," and "protect[ing] investors." 15 U.S.C. § 78o-3(b)(6); *see Scottsdale IV*, 678 F. Supp. 3d at 108. Those substantial interests—which "'cannot be achieved through means [that are] significantly less restrictive,'" *id.* (quoting *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000))—foreclose any claim of compelled association.

## III.    CONCLUSION

The Court should dismiss the Third Amended Complaint with prejudice under Rule 12(b)(6). To the extent that the Third Amended Complaint raises claims that are subject to the Exchange Act's exclusive review framework, the Court should dismiss those claims for lack of subject matter jurisdiction under Rule 12(b)(1).

Dated: November 17, 2025          Respectfully submitted,

         */s/ Amir C. Tayrani*

| | |
|---|---|
| Michael W. McConnell | Amir C. Tayrani, DC Bar No. 490994 |
| Steffen N. Johnson | Alex Gesch, DC Bar No. 1012422 |
| Paul Harold | Amalia Reiss, DC Bar No. 241775 |
| WILSON, SONSINI, | GIBSON, DUNN & CRUTCHER LLP |
| GOODRICH & ROSATI, P.C. | 1700 M Street, N.W. |
| 1700 K Street, N.W. | Washington, D.C. 20036-4504 |
| Washington, D.C. 20006 | T: (202) 887-3692 |
| T: (202) 973-8800 | F: (202) 530-9645 |
| F: (202) 973-8899 | ATayrani@gibsondunn.com |
| MMcConnell@wsgr.com | AGesch@gibsondunn.com |
| SJohnson@wsgr.com | AReiss@gibsondunn.com |
| PHarold@wsgr.com | |

*Attorneys for Defendant Financial Industry Regulatory Authority, Inc.*